UNITED STATES DISTRICTCOURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

CIVIL ACTION NO.

| | |
|---|---|
| HUMAN RESOURCE DEVELOPMENT PRESS, INC., | ) |
| Plaintiff, | ) |
| v. | ) |
| IKON OFFICE SOLUTIONS COMPANY, INC., & | ) |
| IOS CAPITAL, INC. d/b/a/ IKON FINANCIAL SEVICES | ) |
| Defendants | ) |

**COMPLAINT**

## INTRODUCTION

This is an action by Human Resource Development Press, Inc. ("HRD PRESS")
against Ikon Office Solutions Company, Inc. ("IKON") for (i) fraud and
misrepresentation, (ii) violation of M.G.L. ch. 271, § 49, (iii) breach of warranty for a
particular purpose, (iv) failure to dispose of collateral in a commercially reasonable
manner, (v) breach of the covenant of good faith and fair dealing and  (vi) violation of
M.G.L. ch. 93A.  This Complaint arises out of two installment sale contracts for copiers
entered into between the parties.

## PARTIES

1.      The Plaintiff, Human Resource Development Press, Inc., is a corporation
        incorporated under the laws of the Commonwealth of Massachusetts with a

usual place of business at 22 Amherst Road, Amherst, Massachusetts, 01002.

2.    The Defendant, Ikon Office Solutions Company, Inc.("IKON"), is a corporation incorporated under the laws of Ohio with a usual place of business at 855 Winding Brook Drive, Glastonbury, Connecticut 06033.

3.    The Defendant, IOS Capital, Inc. d/b/a Ikon Financial Services ("IKON FINANCIAL"), is, upon information and belief a wholly owned subsidiary of IKON and is a corporation incorporated under the laws of Ohio with a usual place of business in Macon, Georgia.

## JURISDICTION

4.    This matter involves damages in excess of $75,000.00 arising from a dispute between citizens of different states.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

6.    HRD Press is engaged in the business of creating, owning and publishing certain assessment tests, human resource training resources and various training and development materials.

7.    IKON is in the business of providing its customers with copier equipment and printing services, computer networking, print-on-demand services, copy center management, hardware and software product interfaces and electric file conversion. IKON FINANCIAL is in the business of purchasing and

2

servicing finance contracts for equipment sold and/or leased by IKON to third parties such as HRD PRESS.

8.      On or about May 20, 1998, HRD PRESS and IKON entered into a contract entitled *Field Order Form/Security Agreement* ("First Agreement").  A copy of said First Agreement is attached hereto and marked as Exhibit "A".

9.       Pursuant to the First Agreement, IKON provided HRD PRESS with two (2) commercial grade copiers: an Oce 3100 and an Oce 3165 ("First Equipment") and IKON was granted a security interest to and in said equipment.

10.     The contract term of the First Agreement was for sixty (60) months.

11.     Pursuant to the First Agreement, HRD PRESS was obligated to pay FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) per month for the first thirty-six (36) months of the contract term and FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) for the remaining twenty-four (24) months of the contract term (jointly the "First Equipment Monthly Charges").

12.     In exchange for the First Equipment Monthly Charges, HRD PRESS was to receive, inter alia, free service/maintenance and supplies.

13.     HRD PRESS specifically described and identified to IKON HDR PRESS's copying needs. IKON in response to said stated needs, specifically represented to HRD PRESS that the First Equipment would effectively provide HRD PRESS with a minimum of 250,000 copies per month and meet HRD PRESS's copying needs.

3

14.    The First Equipment was delivered to HRD PRESS on or about May 16,

1998.

15.    HRD PRESS began experiencing mechanical problems with the First

Equipment within the first couple of months of said equipment being

delivered.

16.    Despite IKON's prior representations that the First Equipment would meet

HRD PRESS's specified needs, a subsequent IKON agent informed HRD

PRESS that if they wanted high production capacity they would need to

upgrade the First Equipment.

17.    As a result of the failure of the First Equipment to meet HRD PRESS's

specified needs, HRD PRESS was forced to upgrade its First Equipment to

different and more expensive copiers.

18.    On or about June 19, 2000, HRD PRESS and IKON entered into an

agreement entitled *Product Schedule Copy Management* ("Second

Agreement").  A copy of said Second Agreement is attached hereto and

marked as Exhibit "B".

19.    Pursuant to the Second Agreement, IKON agreed to provide HRD PRESS

with four (4)  Canon copiers ("Second Equipment") from IKON.

20.    The contract term of the Second Agreement was for seventy-two (72)

months.

21.    Pursuant to the Second Agreement, HRD PRESS was obligated to pay

EIGHT THOUSAND NINE HUNDRED FORTY-NINE DOLLARS ($8,949.00)

for each of the first thirty-six (36) months of the contract term and TWELVE

4

THOUSAND ONE HUNDRED SIXTEEN DOLLARS ($12,116.00) for each of the remaining thirty-six (36) months of the contract term ("Second Equipment Monthly Charges").

22.    Simultaneous with the delivery of the Second Equipment, HRD PRESS surrendered the First Equipment to IKON.

23.    Despite HRD PRESS's oral and written requests, IKON has failed and refused to disclose to HRD PRESS how IKON disposed of the First Equipment.

24.    IKON has not credited HRD PRESS for any value IKON may have later received from the resale or other disposition of the First Equipment.

25.    HRD PRESS continued to owe for the First Equipment when HRD PRESS leased the Second Equipment.

26.    When HRD PRESS entered into the Second Agreement, it still owed eleven (11) monthly payments of FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) and twenty-four (24) monthly payments of FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) under the First Agreement.

27.    Prior to executing the Second Agreement, IKON specifically represented to HRD PRESS that it was receiving an "excellent deal" pursuant to the terms of the Second Agreement. This representation was materially false. HRD PRESS reasonably relied upon this false representation.

28.    Prior to executing the Second Agreement, IKON specifically represented to HRD PRESS that it was given a significant discount off the list price. This

representation was materially false. HRD PRESS reasonably relied upon this false representation.

29.    In the fall of 2003, IKON informed HRD PRESS that it was provided a discount of at least 15% off the list price of the Second Agreement. This representation was materially false. HRD PRESS reasonably relied upon this false representation.

30.    A traditional discount for transactions similar to the size of the Second Agreement ranges from 20-35% off the list price.

31.    After industry consultants reviewed HRD PRESS' Second Agreement, they concluded that HRD PRESS did not receive an "excellent deal" and that HRD PRESS received less than a 15% discount off the list price.

32.    Prior to executing the Second Agreement, IKON also represented to HRD PRESS that it would no longer be paying any portion of the service/maintenance and supplies costs for the First Equipment. This representation was materially false. HRD PRESS reasonably relied upon this false representation.

33.    The maintenance portion of the charges under the First Agreement were in excess of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00) per month.

34.    Even though pursuant to the terms of the Second Agreement, HRD PRESS was not to be charged for service/maintenance and supplies, IKON consistently sought to impose and collect unjustified fees and charges for service/maintenance and supplies ("Unjustified Charges").  Attached hereto

and marked as Exhibit "C" are copies of some, but not all of the Unjustified Charges.

35.    In November 2003, IKON and IKON FINANCIAL provided HRD PRESS with a "Financial Summary" representing what HRD PRESS was paying for through the Second Equipment Monthly Charges. A copy of said "Financial Summary" is attached hereto and marked as Exhibit "D".

36.    The Financial Summary reveals that notwithstanding the fact that IKON took possession of the First Equipment, HRD PRESS continued to pay for the same even though it has not had use or possession of it since June 2000 and received no credit for IKON'S liquidation of its collateral.

37.    The Financial Summary reveals that the interest component, which was built into the First Equipment Monthly Charges, continues to be assessed and in fact compounded through the seventy-two (72) month period of the Second Equipment Monthly Charges.

38.    IKON has "rolled" into the Second Equipment Monthly Charges thirty-six (36) months at ONE THOUSAND SEVEN HUNDRED SEVENTY TWO DOLLARS and 88/100 ($1,772.88) per month plus thirty-six (36) months at TWO THOUSAND SEVEN HUNDRED FORTY NINE DOLLARS and 12/100 ($2,749.12) per month for a total of ONE HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED AND SIXTY DOLLARS and 32/100 ($162,760.32) in excess of payments for the alleged balance due for the First Equipment.

39.    HRD PRESS has made payments to IKON for the Second Equipment in amounts that are substantially higher than that which HRD PRESS should have paid if the promised significant price discounts had been granted.

40.    HRD PRESS, despite IKON'S specific representations to the contrary, has through the Second Equipment Monthly Charges paid IKON payments for service and/or maintenance charges for the First Equipment.

41.    HRD PRESS, through the Second Equipment Monthly Charges, has paid to IKON payments for the First Equipment even though all financial obligations for the First Equipment have been satisfied and/or waived by IKON'S retention of the First Equipment.

42.    HRD PRESS, through the Second Equipment Monthly Charges, has paid to IKON interest payments for both the First Equipment and the Second Equipment that is in excess of the legal limit.

43.    Neither IKON nor IKON FINANCIAL has registered with the Massachusetts' Attorney General's Office so as to allow IKON and/or IKON FINANCIAL to impose interest charges in excess of the legal limit.

44.    The First and Second Agreements were drafted by IKON.

45.    On or about September 20, 2004, HRD PRESS mailed IKON a demand letter pursuant to M.G.L. ch. 93A (the "Demand Letter"). A copy of said Demand Letter is attached hereto and marked as Exhibit "E".

46.    Neither IKON nor IKON FIANANCIAL has tendered a settlement offer in response to said Demand Letter which is reasonable in light of the facts and law set forth in said Demand Letter.

8

## COUNT I

## (FRAUD AND MISREPRESENTATION)

47.   HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

48.   As an inducement for HRD PRESS to enter into the Second Agreement, IKON intentionally made the material and false representation to HRD PRESS that IKON was providing HRD PRESS with an excellent deal and that HRD PRESS was receiving a significant discount off the list price.

49.   As an inducement for HRD PRESS to execute the Second Agreement, IKON intentionally made the material and false representation to HRD PRESS that IKON was not imposing service/maintenance or supplies charges for the First Equipment through the Second Equipment Monthly Charges.

50.   Since the execution of the Second Agreement, IKON has continuously represented that HRD PRESS was receiving an "excellent deal" on the copiers.

51.   These additional representations were false and are further evidence that IKON attempted to induce HRD PRESS into continuing to maintain a contract with them.

52.   HRD PRESS reasonably relied on these misrepresentations made by IKON in deciding to enter into the Second Agreement.

53.   As a result of these illegal actions by IKON, HRD PRESS has suffered damages in an amount to be determined at trial.

## COUNT II

## (VIOLATION OF M.G.L. ch. 271, § 49)

54.     HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

55.     Pursuant to the First and Second Agreements, IKON and/or IKON FIANANCIAL have impose and collected interest charges excess of the legal limit provided by law rendering all such payments usurious.

56.     As a result of said violation, HRD PRESS seeks to void the First and Second Agreements and collect from IKON and/or IKON FIANANCIAL any and all payments previously paid pursuant to said First and/or Second Agreements, along with the award of any and all attorney fees incurred by HRD PRESS in asserting its rights under M.G.L. ch. 271, § 49.

## COUNT III

## (BREACH OF WARRANTY FOR A PARTICULAR PURPOSE)

57.     HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

58.     Prior to entering into the First Agreement, HRD PRESS disclosed the specific needs it wanted satisfied by any copying equipment which IKON offered to HRD PRESS.

59.     IKON and/or IKON FINANCIAL warranted to HRD PRESS that the First Equipment would meet HRD PRESS's specified needs.

10

60. IKON and/or IKON FINANCIAL breached the warranty for a particular purpose which it provided to HRD PRESS and HRD PRESS has suffered damages in an amount to be determined at trial.

61. As a result of said breach, HRD PRESS entered into the Second Agreement for which HRD PRESS has suffered in damages in an amount to be determined at trial.

## COUNT IV

## (FAILURE TO DISPOSE OF COLLATERAL IN A COMMERCIALLY REASONABBLE MANNER)

62. HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

63. By failing to account for or provide HRD PRESS with any value for the First Equipment IKON and/or IKON FINANCIAL has either failed to liquidate its collateral in a commercially reasonable manner or retained the collateral in satisfaction of any debt related to the same.

64. As a result of said failure any financial obligation sought to be imposed upon HRD PRESS should be deemed satisfied.

## COUNT V

## (BREACH OF COVENANT OF GOOD FAITH & FAIR DEALING IMPLIED )

65. HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

66. The First and Second Agreements between IKON and HRD PRESS are governed by the covenant of good fair and fir dealing impose upon all contractual relationships.

67. By seeking to impose and then collecting charges for HRD PRESS's use of the First Equipment after the same had already been surrendered, IKON A and IKON FINANCIAL have breached the covenant of good faith and fair dealing and the First and Second Agreements should be reformed to comply with said covenant of good faith and fair dealing.

## COUNT VI

## (CHAPTER 93A)

68. HRD PRESS restates and incorporates by reference the allegations contained in paragraphs 1 through 46 of the Complaint.

69. IKON'S actions detailed above took place in the trade or commerce and occurred primarily and substantially in the Commonwealth of Massachusetts.

70. The acts set forth in Exhibit "E" constituted unfair or deceptive acts or practices committed IKON and/or IKON FINANCIAL against HRD PRESS. As a result of these unfair and deceptive acts or practices, HRD PRESS has been injured.

71. Neither IKON no IKON FINANCIAL tendered any reasonable offer of settlement in violation of M.G.L. c. 93A.

72. IKON's and IKON FINANCIAL's conduct constitutes a knowing and willful violation of M.G.L. c. 93A. As a result, HRD PRESS is entitled to treble (3)

its actual and consequential damages, which will be proven at trial, in addition to attorneys' fees, interest, and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, HRD PRESS respectfully requests that this Court:

1) Pursuant to Count I, enter Judgment against the DEFENDANTS in an amount in an amount to be determined at trial plus interest, costs, and attorneys' fees and that execution or other appropriate process issue for the enforcement of same; and

2) Pursuant to Count II, Judgment against the DEFENDANTS voiding the First and Second Agreements and reordering IKON and/or IKON FIANANCIAL to repay to HRD PRESS any and all payments previously paid pursuant to said First and/or Second Agreements, along with the award of any and all attorney fees incurred by HRD PRESS in asserting its rights under M.G.L. ch. 271, § 49 and that execution or other appropriate process issue for the enforcement of same; and

3) Pursuant to Count III, enter Judgment against the DEFENDANTS in an amount in an amount to be determined at trial plus interest, costs, and attorneys' fees and that execution or other appropriate process issue for the enforcement of same; and

4) Pursuant to Count IV, enter Judgment against the DEFENDANTS determining that any financial obligation sought to be imposed upon HRD PRESS is deemed satisfied and that execution or other appropriate process issue for the enforcement of same; and

5. Pursuant to Count V, enter Judgment against the DEFENDANTS determining that the First and Second Agreements are reformed to provide that in compliance with the

covenant of good faith and fair dealing HRD PRESS had no obligation for any payments under the First Agreement as of June 2000 and that execution or other appropriate process issue for the enforcement of same; and

6. Pursuant to Count V, enter Judgment against the DEFENDANTS determining that IKON's and IKON FINANCIAL's conduct constituted a knowing and willful violation of M.G.L. c. 93A and that HRD PRESS is awarded treble (3)  its actual and consequential damages, pursuant to Counts I-V in addition to attorneys' fees, interest, and costs and that execution or other appropriate process issue for the enforcement of same; and

7.  For any such other and further relief as this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Respectfully submitted this the /30th day of March, 2005

                                                The Plaintiff,
                                                HRD PRESS
                                                By Its Attorney,


                                                David J. Noonan, Esq.
                                                228 Triangle Street
                                                Amherst, MA  01002
                                                Tel: (413)  549-5491
                                                Fax:(413)  549-5156
                                                Email: david.noonan@verizon.net
                                                B.B.O. NO. 373260

# IKON
## Office Solutions

SHIP TO CUSTOMER _____ 260 860 _____

NAME _____ Human Resource Develop. ___ ___

ADDRESS _____ 78 Grand PO _____

CITY _____ ___ ST. ___ ZIP _01002_

PHONE (___) 253-3488   CONTACT _____

BILL TO CUSTOMER _____

NAME _____

_____ Same _____

ADDRESS _____

CITY _____ ST. ___ ZIP _____

PHONE (___) _____ CONTACT _____

## EXHIBIT "A"

| ORDER DATE | PURCH. ORDER NUMBER | DIST. CODE | SALE | SHIPPING LOCATION | REP. NUMBER | REQUIRED DATE |
|---|---|---|---|---|---|---|
| | | | CS ☐<br>LS / RN ☐ | | 26/191/DL | |

| QUANTITY | U/M | PRODUCT NO. | DESCRIPTION / SERIAL NUMBER | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|
| | | | Oct 3/00<br>Oct 3/05 | | |

※ HRD has the option of Lease Extension at Month 36
with a minimum savings of $300 over months 1-36
of this current agreement. HRD also has an option
of upgrade based on pricing levels available in
36 months. The lease extension option is based on
a 36 month program.

TAX EXEMPT NUMBER IF APPLICABLE
(CERTIFICATE COPY MUST BE ATTACHED)

AUTHORIZED
SIGNATURE (DEBTOR) _____   DATE _8/30/98_   TITLE _Director_

IKON
ACCT. REP. _____   DATE _____

NO SALESMAN IS AN AUTHORIZED SIGNATORY OF IKON. ALL ORDERS ARE SUBJECT TO APPROVAL BY AN IKON AUTHORIZED REPRESENTATIVE AT A CORPORATE / REGIONAL OFFICE. NO SALES ORDER IS BINDING UPON IKON, UNLESS AND UNTIL APPROVED AS ABOVE STATED.

| | | | |
|---|---|---|---|
| | | | |

**SUB-TOTAL**

FREIGHT, SET-UP AND DELIV. (CT.)

STATE-LOCAL TAXES
CT., MASS., R.I.

TRADE-IN ALLOWANCE

FREIGHT, SET-UP AND DELIVERY
(ALL OTHER STATES)

STATE & LOCAL TAXES
N.Y.

**TOTAL DUE
UPON DELIVERY**

A 1½% per month late charge (18% per annum) will be
applied to all unpaid balances over 17 days.

BY IKON
SECURED PARTY _____

REV 9/97

FURTHER CONDITIONS AND TERMS FORMING A PART OF THE SECURITY AGREEMENT
SET FORTH ON THE FRONT SIDE HEREOF:

The Buyer, hereinafter referred to as DEBTOR, hereby grants to IKON, hereinafter referred to as the SECURED PARTY, a purchase money security interest in the equipment and supplies, hereinafter referred to as the Collateral, listed on the reverse side hereof, to secure the payment of the DEBTOR's indebtedness to the SECURED PARTY.

## WARRANTIES AND AGREEMENTS OF DEBTOR

1. DEBTOR hereby warrants and covenants that he is the sole owner of the Collateral and that there are no liens or encumbrances of any kind thereon or on any part thereof, that he has good right to grant the aforesaid security interest, that he will keep the Collateral free of all liens and other charges, that he will pay all taxes thereon promptly when due, that he will not illegally use or operate the same, that SECURED PARTY may examine and inspect the Collateral at any reasonable time, and that the Collateral is not and shall not be used for personal, family, household, or farming use.

2. DEBTOR will maintain the Collateral in good repair, and be responsible to SECURED PARTY for any loss or damage thereto. DEBTOR will maintain and pay promptly all premiums for insurance coverage on the Collateral against fire (including extended coverage), theft and such other risks as SECURED PARTY may require, in form, for a term and issued by an insurance carrier satisfactory to SECURED PARTY, the loss under each policy to be payable to SECURED PARTY and DEBTOR, as their interests may appear, and such policies to provide for ten days, minimum written cancellation notice to SECURED PARTY. DEBTOR will deliver such policies or certificates thereof to SECURED PARTY or to agents until the indebtedness secured by this Agreement... DEBTOR hereby agrees to request that all insurance carriers involved pay all insurance claims directly to SECURED PARTY, and appoints SECURED PARTY attorney-in-fact to collect the same on his behalf. DEBTOR agrees that in the event of his failure to secure and maintain the insurance herein referred to, SECURED PARTY may secure and/or pay for such insurance, and all sums advanced for such purpose shall be added to the indebtedness secured by this Agreement.

3. DEBTOR will not sell, lease, encumber, lend or otherwise dispose of the Collateral, or move the Collateral from the location named as "Shipping Address" on the reverse side hereof, without the prior written consent of the SECURED PARTY.

4. DEBTOR hereby warrants that the Collateral is now and shall remain personal property, notwithstanding the manner in which the Collateral shall be now or hereafter affixed or attached to real estate.

5. DEBTOR assumes all responsibility and liability arising from the use of the Collateral, either for negligence or otherwise, and will indemnify and hold harmless SECURED PARTY from any and all loss or damage to persons or property caused by the Collateral.

6. DEBTOR hereby authorizes SECURED PARTY to (a) pay any amount or to any act which is required to be paid or done by the DEBTOR, and which the DEBTOR fails to pay or do as herein required, and (b) pay or discharge any lien or encumbrance in favor of anyone other than SECURED PARTY which covers or affects the Collateral or any part thereof. DEBTOR agrees to promptly reimburse and pay SECURED PARTY for any and all sums, costs and expenses which SECURED PARTY may pay or incur by reason of defending, protecting or enforcing the security interest herein granted or in enforcing payment of the indebtedness secured by this Agreement, or in discharging any lien or claim against the Collateral, or in the care or repair of the Collateral. DEBTOR agrees that all sums paid and all costs, expenses and liabilities incurred by SECURED PARTY pursuant to this provisions, together with interest thereon at the rate of 18% per annum, shall be added to and become part of the indebtedness secured hereby.

## DEFAULT BY DEBTOR

The happening of any one or more of the following events shall constitute an event of default by the DEBTOR under the terms of this Agreement:

- Upon default in whole or in part by the DEBTOR in the observance or performance of any term, covenant or agreement contained herein, including but not limited to payment or payments due on the indebtedness secured by the terms of this agreement.
- If any warranty, representation, or statement made or furnished to SECURED PARTY by or on behalf of the DEBTOR proves to have been false in any material respect when made or furnished.
- Upon the loss, theft, substantial damage, destruction, sale or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or thereon.
- Upon the insolvency or bankruptcy of the DEBTOR, or the appointment of a receiver over any of his property, or the institution of any proceeding for the liquidation of the books of the DEBTOR, or any Stay or Federal Court.
- Upon the death or incompetency of existence of the DEBTOR.
- Upon removal of the Collateral from the location named as "Shipping Address" on the reverse side or without written notice in writing consent of the SECURED PARTY.

## REMEDIES OF THE SECURED PARTY ON DEFAULT

Upon the occurrence of any one or more of the foregoing events of default and at any time thereafter, in all or any part, SECURED PARTY, at its sole election, SECURED PARTY may, without notice or demand upon DEBTOR, declare all obligations secured hereby immediately due and payable and the SECURED PARTY shall have the following rights and remedies in addition to all rights and remedies of a SECURED PARTY under the Uniform Commercial Code:

- SECURED PARTY may, at any time and from time to time, with or without process of law and with or without aid and assistance of others, enter upon any premises in which the Collateral or any part thereof may be located, and without resistance or interruption, take possession of the Collateral. DEBTOR hereby authorizes and it provides its consent to SECURED PARTY in its agents, to enter upon such premises to aid in the possession of the Collateral to take such further action as is necessary to gain entry to such premises.
- SECURED PARTY may, without notice, render the Collateral unusable, or may require DEBTOR to assemble the Collateral and make it available to SECURED PARTY at a place to be designated by SECURED PARTY which is reasonably convenient to both parties.
- SECURED PARTY may, upon the repossession or any Collateral or resale of the Collateral purchased by DEBTOR, Take IKON hereby waives the right to object to such repossession by Collateral of SECURED PARTY.
- SECURED PARTY hereby warrants that, to inspect the Collateral after the acceptance of any of the obligations secured by default...
- SECURED PARTY may sell, lease, deliver, assign, and collect or order the Collateral in any part thereof in the existing condition or following any preparation for processing, by public or private proceedings by providing DEBTOR reasonable notice of the time and place of any such sale and thereof, or in the one after either way of the sale upon any other intended disposition thereof at a public sale. The minimum of the sale at public sale, shall be not less than ten days (including the expenses of SECURED PARTY that may agree. On the acceptance to be resold at any sale or sale other disposition at a reasonable amount of reasonable handling, preparing for resale and such at the like. Proceeds derived from such sale shall be applied, as determined in compliance with the rule provisions, shall extend and authorize charges that may be incurred for such for any surplus shall be returned to the DEBTOR.
- If there shall be any default under the terms of this Agreement, and for reason of such default, the entire indebtedness secured hereunder be declared immediately due and payable, then from the date which such event become due and payable, DEBTOR agrees to pay SECURED PARTY interest on the entire unpaid balance at the rate of 18% per month, which interest shall be payable in such installments as provided herein until the entire indebtedness secured has been paid.
- SECURED PARTY shall have the right to have DEBTOR pay the costs and expenses of collection, including reasonable attorney's fees noted in the case of any and all claims of SECURED PARTY on any such default.
- DEBTOR shall be liable for, remain fully for the charges, costs and expenses incurred for the application during such time as the equipment and supplies being used by the purchaser.

## GENERAL

- ... statement of release of Collateral, and any statement of assignment may be directed in any entity and terms through action termination or imputation or any such other documents through action or other simultaneous impressions or imputation of the proceeding disclosures thereof. Each of such impressions or unexecuted, shall be presumed fully executed purchase originals.

- SECURED PARTY and DEBTOR to be in force or equal in any way or in any days... DEBTOR... and neither party on behalf of SECURED PARTY in the part of SECURED PARTY...

- DEBTOR agrees that SECURED PARTY and this Agreement shall inure and inure to the benefit of and be binding upon the respective successors and assigns and assigns, and that DEBTOR shall be bound and all programs referring thereto shall include masculine, feminine and/or neuter gender, singular or plural, as the context may require.

- If there are more than one DEBTOR, their obligations hereunder shall be joint and several.

- This Agreement shall be modified, waived or limited except by a written instrument expressly referring to this Security Agreement and to the provisions so modified or limited, and executed by the party to be bound.

- DEBTOR declares that he has read this Agreement and that he understands the terms and import of the same and acknowledges receipt from SECURED PARTY of a copy of this document signed by him, and agrees that this Agreement contains the entire agreement between the DEBTOR and the SECURED PARTY.

- If any part of this Security Agreement shall be held to be invalid, illegal or unenforceable, the validity of other terms shall in no way be affected thereby.

- This Agreement and the security interest in the Collateral created hereby shall remain until the indebtedness secured by the Agreement has been paid in full.

- This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Connecticut.



EXHIBIT "B"

# IOS

an IKON Office Solutions Company
P.O. Box 9115, Macon, GA 31208-9115

## PRODUCT SCHEDULE
### Copy Management
Product Schedule Number: 00787
To Master Agreement Number: ____

This Schedule is made part of the Master Agreement ( Master Agreement ) identified on this Schedule between IOS Capital, Inc. ( we or us ) and
_Human Resource Development Press_, as Customer ( you ). All terms and conditions of the Master Agreement are incorporated into this Schedule and made a part hereof. I
is the intent of the parties that this Schedule be separately enforceable as a complete and independent agreement, independent of all other Product Schedules to the Master Agreement.

## CUSTOMER INFORMATION

| Human Resource Development Press | | | | Product Location | | | EXHIBIT "B" | |
|---|---|---|---|---|---|---|---|---|
| Customer (Bill To) | | | | | | | | |
| 22 Amherst Road | | | | Address | | | | |
| Address | | | | | | | | |
| Amherst Hampshire MA 01002 | | | | City | County | State | Zip | |
| City | County | State | Zip | | | | | |
| Customer Contact Name: | | Customer Telephone Number: 413-253-3488 | | Marketplace: Hartford/Western Mass | | | | |

## PRODUCT DESCRIPTION

| Quantity | Description: Make, Model & Serial Number | Quantity | Description: Make, Model & Serial Number |
|---|---|---|---|
| | Please See Addendum A-1 | | |
| | | | |
| | | | |
| | | | |

## PAYMENT SCHEDULE

| Minimum Term (mos.) | Cost Per Copy | Additional Copies | Guaranteed Minimum Monthly Copies | Meter Reading/Billing For Additional Copies |
|---|---|---|---|---|
| 72 | $ | $ 0.00783 | 300,000 | ☐ Monthly  ✓ Quarterly  ☐ Other |

| Minimum Payment (without tax) | Payment Due: | Advance Payment (with tax) | |
|---|---|---|---|
| $ | ✓ Monthly  ☐ Annually  ☐ Quarterly  ☐ Other | ✓ none  ☐ apply to 1ST Payment  ☐ apply to other | |

Sales Tax Exempt ☐ Yes (Attach Exemption Certificate)    Customer Billing Reference Number (P.O.#, etc.)

Addendum Attached ☒ Yes (Check if yes and indicate total number of pages: _2_ )

## TERMS AND CONDITIONS

1. The first Payment will be due on the Effective Date. The delivery date is to be indicated by signing a separate acceptance form.

2. You, the undersigned Customer, have applied to us, IOS Capital, Inc., to rent the above described items ( Products ) for commercial (non-consumer) purposes. **THIS IS AN UNCONDITION-AL, NON-CANCELABLE AGREEMENT FOR THE MINIMUM TERM INDICATED ABOVE.** If we accept this Product Schedule, you agree to rent the above Product(s) from us, and we agree to rent such Product(s) to you, on all the terms hereof, including the Terms and Conditions on the Master Agreement. **THIS WILL ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND THIS SCHEDULE AND THE MASTER AGREEMENT AND HAVE RECEIVED A COPY OF THIS SCHEDULE AND THE MASTER AGREEMENT.**

3. Copy Charges/Meters: In return for the Minimum Monthly Payment, you are entitled to use the number of Guaranteed Minimum Monthly Copies. If you use more than the Guaranteed Minimum Monthly Copies in any month, you will additionally pay a charge equal to the number of additional metered copies times the Cost of Additional Copies. If you use more than 20% over the manufacturer's recommended specifications for supplies, you agree to pay reasonable charges for those excess supplies. The meter reading frequency is the period of time (monthly, quarterly, semi-annually or annually) for which the number of copies used will be reconciled. The meter reading frequency and corresponding additional charges may be different than the Minimum Monthly Payment frequency. You will provide us or our designee with the actual meter reading upon request. If such meter reading is not received within 7 days, we may estimate the number of copies used. Adjustments for estimated charges for additional copies will be made upon receipt of actual meter readings. Notwithstanding any adjustment, you will never pay less than the Minimum Monthly Payment.

4. Additional Payments Terms (if any) are : ____

Printed Name of Authorized Signer: R W Carkhoff

X _signature_  Authorized Signer    Date: 6/19/02
*[Tear on perforation]*

Accepted in Macon, Georgia by:
IOS Capital, Inc.

X ____    Date: ____
Authorized Signer

## DELIVERY AND ACCEPTANCE
With respect to Product Schedule Number ____ to Master Agreement Number ____ between IOS Capital, Inc. and
____, as customer ( you ), you hereby certify that each Product described on such Product Schedule has been delivered, installed and accepted and you
agree that each such Product is in good condition and satisfactory for all purposes of the Product Schedule and the Master Agreement.

CUSTOMER X ____    Date: ____
Authorized Signer

Case 8:09-cv-01808-KR... Document 1-2 Filed 12/4/... Page 1 of 2...

# MASTER AGREEMENT  Number: _____

**IOS** Capital℠

CUSTOMER:

Full Legal Name: Human Resource Development Press

Address: 22 Amherst Road

City: Amherst State: MA Zip: 01002 Contact: Jim Gelwonak Phone: _____

This Master Agreement has been written in clear, easy to understand English. When we use the words "you", "your" or "Customer" in this Master Agreement, we mean you, our customer, as indicated above. When we use the words "we", "us", "our" or "IOS Capital" in this Master Agreement, we mean iOS Capital, Inc., a wholly-owned subsidiary of IKON Office Solutions, Inc. ("IKON"), located at P.O. Box 9115, Macon, GA 31208-9115.

1. **Agreement.** We agree to rent to you, and you agree to rent from us, subject to the terms of this Master Agreement, the personal and intangible property described in any equipment schedule (a "Schedule") executed by you and us and incorporating the terms of this Master Agreement by reference (the "Agreement"). The personal and intangible property described on a Schedule (together with all attachments, replacements, parts, substitutions, additions, repairs, and accessories incorporated in or affixed to the property and any license or subscription rights associated with the property will be collectively referred to as "Product"). The manufacturer and/or vendor of the tangible Product shall be referred to as the "Vendor." To the extent the Product includes intangible property or associated services such as periodic software licenses and prepaid data base subscription rights, such intangible property shall be referred to as the "Software".

2. **Schedules; Delivery and Acceptance.** Each Schedule that incorporates this Master Agreement shall be governed by the terms and conditions of this Master Agreement, as well as the terms and conditions set forth in such individual Schedule. Each Schedule shall constitute a complete agreement separate and distinct from this Master Agreement and any other Schedule. The termination of this Master Agreement will not affect any Schedules executed prior to the effective date of such termination. When you receive the Product, you agree to inspect it to determine it is in good working order. Scheduled Payments (as specified in the applicable Schedule) will begin on the Product delivery date ("Effective Date"). You agree to sign and return to us a delivery and acceptance certificate within three business days after any Product is installed.

3. **Term; Payments.** The first scheduled Payment (as specified in the applicable Schedule) ("Payment") will be due on or before the Effective Date. The remaining Payments will be due on the same day of each subsequent month, unless otherwise specified on the applicable Schedule. If any Payment or other amount payable under any Schedule is not paid within ten days of its' due date, you will pay to us, in addition to that payment, a late charge of 5% of the overdue payment. You agree to pay $25.00 for each check that the bank returns for insufficient funds or for any other reason. You also agree that THIS IS AN UNCONDITIONAL, NON-CANCELABLE AGREEMENT FOR THE MINIMUM TERM INDICATED ON ANY SCHEDULE TO THIS MASTER AGREEMENT. All payments to us are "net" and are not subject to set off or reduction.

4. **Product Location; Use and Repair.** You will keep and use the Product only at the Product Location shown in the applicable Schedule. You will not move the Product from the location specified in the applicable Schedule or make any alterations, additions or replacements to the Product without our prior written consent, which consent will not be unreasonably withheld. At your own cost and expense, you will keep the Product eligible for any manufacturer's certification and in compliance with applicable laws and in good condition, except for ordinary wear and tear. All alterations, additions or replacements will become part of the Product and our property at no cost or expense to us. We may inspect the Product at any reasonable time.

5. **Taxes and Fees.** In addition to the payments under this Master Agreement, you agree to pay all taxes, fees, and filing costs related to the use of the Product, even if billed after the end of the term of this Master Agreement or any Schedules. We will file property tax returns and bill you as soon as an invoice from the local jurisdiction is received. If we are required to pay property tax, you agree to reimburse us. If you are required to file and pay the taxes directly to the tax collector, we will notify you in advance in writing.

6. **Warranties.** We transfer to you, without recourse, for the term of each Schedule, any warranties made by the Vendor or Supplier (as defined in Section 10 of this Master Agreement) with respect to the Product rented pursuant to such Schedule. We warrant that we will not interfere with your quiet enjoyment of the use of the Product so long as no event of default under this Master Agreement or any Schedule shall have occurred and be continuing. The parties to this Master Agreement each acknowledge that IOS Capital is a wholly owned subsidiary of IKON. YOU ACKNOWLEDGE THAT WE DO NOT MANUFACTURE OR DESIGN THE PRODUCT. YOU ACKNOWLEDGE THAT WE DO NOT REPRESENT THE MANUFACTURER, VENDOR OR EQUIPMENT SUPPLIER AND THAT YOU HAVE SELECTED THE PRODUCT AND THE VENDOR BASED ON YOUR OWN JUDGMENT. However, notwithstanding anything to the contrary, if you enter into any maintenance agreement ("Maintenance Agreement") with IKON with respect to any Product, no provision, clause or paragraph of this Master Agreement shall alter, restrict, diminish or waive the rights, remedies or benefits that (i) you may have against IKON as a vendor of the Product or in connection with the Maintenance Agreement or (ii) you may have against IKON under Article 2A of the UCC. EXCEPT FOR OUR WARRANTY OF QUIET ENJOYMENT, WE MAKE NO WARRANTY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. AS TO US, YOU RENT THE PRODUCT (S) "AS-IS". The only warranties, express or implied, made to you are the warranties (if any) made by the Vendor to you in any documents executed by and between the Vendor and you. YOU AGREE THAT, NOTWITHSTANDING ANYTHING TO THE CONTRARY, WE ARE NOT RESPONSIBLE FOR, AND YOU WILL NOT MAKE ANY CLAIM AGAINST US FOR, ANY DAMAGES, WHETHER CONSEQUENTIAL, DIRECT, SPECIAL, OR INDIRECT.

7. **Loss or Damage.** You are responsible for any theft, destruction of, or damage to, the Product (collectively, "Loss") from any cause at all, whether or not insured, from the time of Product delivery to you until it is delivered to us at the end of the Schedule. You are required to make all Payments even if there is a Loss. You must notify us in writing immediately of any Loss. Then, at our option, you will either (a) repair the Product so that it is in good condition and working order, eligible for any manufacturer's certification, (b) pay us the amount specified in Section 12 below; or (c) replace the Product with equipment of similar age and capacity from IKON.

8. **Indemnity, Liability and Insurance.** (a) The parties to this Master Agreement will indemnify, defend and hold each other harmless from all losses, damages, claims, suits and actions (including court costs and reasonable attorneys' fees) ("Claims") arising out of any breach of this Master Agreement except to the extent caused by the negligence or intentional acts or omissions of the other. (b) Because you have sole possession and control of the Product, you are fully responsible for any Claim, or other damage, injury or loss caused by (or to) the Product resulting from the use, misuse or possession of the Product or any accident or other casualty relating to the Product. We are responsible for damage or injury to third person when the damage or injury is caused exclusively by our negligent acts or omissions. You agree to maintain insurance to cover the Product and will name us as an additional insured and loss payee on your insurance policy. Such insurance will provide that we will be given 30 days advance notice of any cancellation. If you fail to provide evidence of insurance reasonably satisfactory to us, you authorize us to obtain coverage on your behalf and you agree to pay for this coverage. In the event of loss or damage to the Product, you agree to remain responsible for the payment obligations under this Master Agreement until the payment obligations are fully satisfied.

9. **Title; Recording.** We are the owner of and will hold title to the Product (except for any Software). You will keep the Product free of all liens and encumbrances. Except as reflected on any Schedule, you agree that this Master Agreement is a true rental. However, if any Schedule is deemed to be intended for security, you hereby grant to us a purchase money security interest in the Product covered by the applicable Schedule (including any replacements, substitutions, additions, attachments and proceeds) as security for the payment of the amounts under each Schedule. You authorize us to file a copy of this Master Agreement and/or any Schedule as a financing statement and appoint us or our designee as your attorney-in-fact to execute and file, on your behalf, financing statements covering the Product.



10. **Software or Intangibles.** To the extent that the Product includes Software or other Intangibles, you understand and agree that we have no right, title or interest in the Software and you will comply throughout the term of this Master Agreement with any license and/or other agreement ("Software License") entered into with the supplier of the Software ("Supplier"). You are responsible for entering into any Software License with the Software Supplier no later than the Effective Date.

11. **Default.** Each of the following is a "Default" under this Master Agreement and all Schedules: (a) you fail to pay any Payment or any other payment within 30 days of its due date; (b) any representation or warranty made by you in this Master Agreement is false or incorrect and/or you do not perform any of your other obligations under this Master Agreement or any Schedule or in any other agreement with us or with any of our affiliates and this failure continues for 10 days after we have notified you of it; (c) you become insolvent, you dissolve or are dissolved, or you assign your assets for the benefit of your creditors, or you file or have filed against you any bankruptcy or reorganization proceeding, or (d) any guarantor of this Master Agreement or of any Schedule does not perform its obligations under the guaranty, becomes subject to one of the events listed in clause (c) above, or (if a guarantor is an individual) dies.

12. **Remedies.** If a Default occurs, we may do one or more of the following: (a) we may cancel or terminate this Master Agreement and/or any or all Schedules, or any or all other agreements that we have entered into with you; (b) we may require you to immediately pay to us, as compensation for loss of our bargain and not as a penalty, a sum equal to (i) the present value of all unpaid Payments for the remainder of the term of each Schedule plus the present value of our anticipated value of the Product at the end of the initial term of any Schedule (or any renewal of such Schedule), each discounted at a rate equal to 6% per year, compounded monthly, plus (ii) all other amounts then due or that become due under this Master Agreement or any Schedule; (c) we may require you to deliver the Product to us as set forth in Section 14; (d) we or our representative may peacefully repossess the Product without court order and you will not make any claims against us for damages or trespass or any other reason; (e) we may exercise any and all other rights or remedies available to a lender or secured party under the Uniform Commercial Code ("UCC"), including without limit, Article 2A of the UCC, and at law or in equity; (f) immediately terminate your right to use the Software including the disabling on-site or by remote communication) of any Software; (g) demand the immediate return and obtain possession of the Software and reinstate the Software at a public or private sale; and/or (h) cause the Supplier to terminate the Software License, support and other services under the Software License. You agree to pay all of our costs of enforcing our rights against you, including reasonable attorneys' fees. If we take possession of the Product, we agree to sell or otherwise dispose of it with or without notice, at a public or private sale, and to apply the net proceeds (after we have deducted all costs related to the sale or disposition of the Product including reasonable attorneys' fees) to the amounts that you owe us. You agree that if notice of sale is required by law to be given, 5 days notice shall constitute reasonable notice. You will remain responsible for any deficiency that you pay after we have applied such net proceeds.

13. **Assignment.** YOU HAVE NO RIGHT TO SELL, TRANSFER, ENCUMBER, SUBLET OR ASSIGN THE PRODUCT OR THIS MASTER AGREEMENT OR ANY SCHEDULE WITHOUT OUR PRIOR WRITTEN CONSENT. You agree that we may sell or assign any of our interests without notice to you. In that event, the assignee will have such rights as we assign to them but none of our obligations (we will keep any such obligations) and the rights of the assignee will not be subject to any claims, defenses or set-offs that you may have against us.

14. **Renewal; Return of Equipment.** After the minimum term of any Schedule to this Master Agreement, such Schedule will renew on a month-to-month basis unless you notify us in writing at least 30 days prior to the expiration of the minimum term of such Schedule and return the Product to us as specified in this Section 14. At the end of or upon termination of each Schedule, you will immediately return the Product subject to such expired Schedule to us in as good condition as when you received it, except for ordinary wear and tear, to any place in the United States that we tell you. We will bear the shipping charges so long as replacement equipment is selected from IKON. Otherwise, you will bear all expenses of deinstalling, other maintenance service supplier previously approved by us) a certificate stating that the Product qualifies for a maintenance contract and service at the standard rates and terms then in effect. You must pay additional monthly payments, at the same rate as then in effect under a Schedule, until the Product is returned by you and is received in good condition and working order by us or our designee.

15. **Miscellaneous.** You agree that the terms and conditions contained in this Master Agreement and in each Schedule make up the entire agreement between us regarding the rental of the Product and supersede all prior written or oral communications, understandings or agreements between the parties relating to the subject matter contained herein, including without limitation, purchase orders. Any purchase order, or other ordering documents, will not modify or affect this Master Agreement or any Schedule, nor have any other legal effect and shall serve only the purpose of identifying the equipment ordered. You authorize us to supply any missing information in this Master Agreement or any Schedule. You acknowledge that you have not been induced to enter into this Master Agreement by any representation or warranty not expressly set forth in this Master Agreement or any Schedule. Neither this Master Agreement nor any Schedule is binding on us until we sign it. Any change in any of the terms and conditions of this Master Agreement or any Schedule must be in writing and signed by us. If we delay or fail to enforce any of its rights under this Master Agreement with respect to any or all Schedules, we will still be able to enforce those rights at a later time. All notices shall be given in writing by the party sending the notice and shall be effective when deposited in the U.S. Mail, addressed to the party receiving the notice at its address shown on the front of this Master Agreement (or to any other address specified by that party in writing) with postage prepaid. All of our rights and indemnities will survive the termination of this Master Agreement and each Schedule. If more than one customer has signed this Master Agreement or any Schedule, each customer agrees that its liability is joint and several. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess payment will be applied to Payments in inverse order of maturity, and any remaining excess will be refunded to you.

16. **Governing Law; Jurisdiction; Waiver of Trial By Jury and Certain Rights and Remedies Under The Uniform Commercial Code.** YOU AGREE THAT THIS MASTER AGREEMENT AND ANY SCHEDULES WILL BE GOVERNED UNDER THE APPLICABLE LAW FOR THE STATE IN WHICH OUR (OR OUR ASSIGNEE'S) PRINCIPAL CORPORATE OFFICES ARE LOCATED. YOU ALSO AGREE TO SUBMIT TO THE NON-EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE IN WHICH OUR (OR OUR ASSIGNEE'S) PRINCIPAL CORPORATE OFFICES ARE LOCATED. THE PARTIES TO THIS MASTER AGREEMENT EACH WAIVE THE RIGHT TO A TRIAL BY JURY IN THE EVENT OF A LAWSUIT. By signing each Schedule, you agree that either (a) you have reviewed, approved, and received, a copy of the Vendor contract and/or the Supplier software license agreement, or (b) that we have informed you of the identity of the Vendor and Supplier, that you may have rights under the Vendor contract and/or the Supplier license agreement, and that you may contact the Vendor or Supplier for a description of those rights. TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU WAIVE ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A CUSTOMER OR LESSEE BY ARTICLE 2A OF THE UCC THAT YOU MAY HAVE AGAINST US (BUT NOT AGAINST ANY VENDOR OR SUPPLIER)

17. **Counterparts; Facsimiles.** Each Schedule may be executed in counterparts. The counterpart which has our original signature and/or is in our possession shall constitute chattel paper as that term is defined in the Uniform Commercial Code ("UCC") and shall constitute the original agreement for all purposes, including, without limitation, (i) any hearing, trial or proceeding with respect to such Schedule, and (ii) any determination as to which version of such Schedule constitutes the single true original item of chattel paper under the Uniform Commercial Code. If you transmit a Schedule to us by facsimile, or by "e-commerce" transmission, if applicable, the facsimile copy or e-commerce transmission as received by us shall be binding against you as if it were manually signed. However, no facsimile, e-commerce transmission or other version of a Schedule shall be binding against us until manually signed by us. You agree that the facsimile or e-commerce version of a Schedule manually signed by us shall constitute the original agreement for all purposes, including, without limitation, those outlined above in this Section. You agree to deliver the facsimile or e-commerce version of any counterpart of the Schedule with your original signature upon our request.

IN WITNESS WHEREOF, the parties have executed this Master Agreement as of _____ , 20____.

PRINTED NAME OF AUTHORIZED SIGNER: _____          IOS CAPITAL, INC.

X _____                      Date: 6/19/00        X _____
Authorized Signer Signature  Title:_____                              Authorized Signer Signature  Title:_____          Date:_____

Master Agreement 4.00

Addendum-A2to IOS Lease # 00787
Variable Lease Payment Addendum

*-Customer Agrees that the lease payments will vary as indicated below:*

| Step | Month | Lease Payment |
|------|-------|---------------|
| 1 | 1-36 | $ 8,809.00 $+ \$140.00 = \$8,949.00$ FOR COLOR COPIER |
| 2 | 37-72 | $ 11,876.00 |

*Human Resource Development Press, Inc.*

**Customers Full Legal Name (Please Print)**

_MW[signature]_    6/19/00

**Authorized Signer**              Date

_RW Carkhuff    Publisher_

**Authorized Signer's Printed Name**    Title

Accepted in Macon, Georgia
IOS Capital

By:_____

Date:_____

## Service / Supply Costs

| Equipment | Impressions Included | Monthly Base | Overage |
|---|---|---|---|
| CANON IR330 | 15,000 | $ 235.50 | $ 0.0133 |
| CANON IR210 | 5,000 | $ 119.00 | $ 0.0176 |

# IKON

*Office Solutions*

855 Winding Brook Drive
Glastonbury CT 06033
Phone: 888-845-6005

XN176
*Maint agreement*

**Remit**

**EXHIBIT "C"**

| Total Invoice Amt |
| :---: |
| 340.62 |
| **Payment Amt Enclosed** |
| _____ |

S H I P T O

260860

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA

01002-0000

**INVOICE**

INV# 250248

DATE 01/20/00

Detach

| CUSTOMER/INVOICE NO. | | MODEL/SERIAL NO. | | LEASE ID | REPRESENTATIVE | PROG. TYPE |
| :--- | :--- | :--- | :--- | :--- | :--- | :--- |
| 260860 | 250248 | C6085 | NFD06451 | 9W 250248 | 2K8820 | 310 |

| DATE | | PREV. METER | | | |
| :--- | :--- | :--- | :--- | :--- | :--- |
| | | | | DATE 01/18/00 | CUR. METER |
| INVOICE PERIOD | | FROM | | TO | |

| QUANTITY | CODE NO. | DESCRIPTION | AMOUNT |
| :--- | :--- | :--- | :--- |
| | | *Maint agreemt* | |
| 4 | VA1110 | CHARGEABLE LABOR | 129.00 |
| 1 | 1ACSSP | CAN FILTER OZONE | 14.20 |
| | | NP6085 | |
| | | Vendor # FB3-5236-000 | |
| 1 | 1ACCO2 | CAN FILTER OZONE | 45.26 |
| | | NP6085 | |
| | | Vendor # FB3-5235-000 | |
| 1 | 3AC2J5 | CAN FILTER AIR 1 CLC 1000 | 1.54 |
| | | CLC 1000 | |
| | | Vendor # FA6-4538-000 | |
| 1 | 1ACKOL | CAN TRANSFER/SEP'N CORONA | 145.96 |
| | | NP-6085 | |
| | | Vendor # FG5-8133-060 | |

*DON'T PAY*

4/27/00  Doug Thorton said
Ikon will take care
of this. There is no charge.

C.D. 4/2/00

Please pay from this invoice, overdue
accounts will be charged a late payment
fee of 1 1/2 % per month

TERMS: NET 10 DAYS FROM DATE OF INVOICE

| INVOICE TOTAL | PREV LATE CHARGES | TOTAL DUE |
| :---: | :---: | :---: |
| 335.96 | 4.66 | 340.62 |

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

Reference Service Report # 250248



# IKON
*Office Solutions*

REMIT TO: P.O. BOX 30069
HARTFORD, CT 06150

# IKON
Office Solutions

855 Winding Brook Drive
Glastonbury CT 06033
Phone: 888-645-6005

**Remit This Stub With Payment To:**

**IKON Office Solutions**
**P.O. Box 30069**
**Hartford, CT 06150**

| **Total Invoice Amt** |
|---|
| 692.53 |
| **Payment Amt Enclosed** |
| _____ |

S H I P   T O

260860
BASEMENT
HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA

01002-0000

**INVOICE**

INV# 081936   1

DATE 04/20/00

Detach

| CUSTOMER/INVOICE NO. | | MODEL/SERIAL NO. | | LEASE ID | REPRESENTATIVE | PROG. TYPE |
|---|---|---|---|---|---|---|
| 260860   081936 | O3100 | 179420274 | 9W 081936 | 2A8806 | 2cq |

| DATE | PREV. METER | DATE 04/19/00 | CUR. METER 5493177 |
|---|---|---|---|
| INVOICE PERIOD | FROM | TO | |

| QUANTITY | CODE NO. | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 1 | RAO1Z | OCE MASTERS 2475/2500  1045180 Vendor # 1045180 | 339.34 |
| 1 | 1AOOM7 | OCE ROLL CLNR TTF 2600 Vendor # 2938148 | 0.00 |
| 1 | RAO1Z | OCE MASTERS 2475/2500  1045180 Vendor # 1045180 | 339.34 |
| 1 | 1AO14T | OCE TTF BELT 2600(ONLY) Vendor # 1974422 | 0.00 |
| 2 | 1AO0OX | OCE CONVEYER BELT 2500 Vendor # 5753750 | 0.00 |
| 1 | 1AO30P | OCE BRACKET 2600 Vendor # 1976721 | 0.00 |
| 1 | 1AO0Z3 | OCE BRAKE O:1001743 Vendor # 1900297 | 0.00 |

Please pay from this invoice, overdue
accounts will be charged a late payment
fee of 1 1/2 % per month

TERMS: NET 10 DAYS FROM DATE OF INVOICE

| INVOICE TOTAL | PREV LATE CHARGES | TOTAL DUE |
|---|---|---|
| 678.68 | 13.85 | 692.53 |

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

Reference Service Report # 081936



**REMIT TO: P.O. BOX 30069**
**HARTFORD, CT 06150**

# IKON Office Solutions

## INVOICE

**IKON**

The Way Business Gets Communicated

Northeast District
Customer Service Center
855 Winding Brook Drive
Glastonbury, CT 06033
(888) 645-6005

**Customer Number: 260860**

| | |
|---|---|
| **Invoice** | : 15171241 |
| Invoice Date | : 09/20/2000 |
| Terms | : Net Due Upon Receipt |
| PO | : |
| Rep Id | : 2S8807 |
| Federal Id | : 23-0334400 |

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

| Model | Serial | Id | Cust# | Description | Meter | Date/Prod | Quan | Amount |
|---|---|---|---|---|---|---|---|---|
| CC900 | NJC01109 | XQ904 | 260860 | CURRENT READING | 71261 | 09/20/2000 | | |
| CAN COL COPIER CLC 900 | USED | | | CHARGEABLE LABOR | | VA1110 | 2 | 129.00 |
| HUMAN RESOURCE DEVELOP | | | | Reference Service Report # 171241 | | | | |
| PRESS | | | | | | | | |
| 22 AMHERST RD | | | | | | | | |
| AMHERST MA 01002-0000 | | | | | | Location Total: 129.00 | | |
| 2ND FLOOR | | | | | | | | |

DO NOT PAY O.K
WE HAVE SERVICE AGREEMENT

| | | |
|---|---|---|
| Sub Total | : | 129.00 |
| Late Charges | : | 0.00 |
| Freight | : | 0.00 |
| Taxes | : | 0.00 |
| Total Amount Due | : | 129.00 |

REV. 2/2000

**Important:** Detach and Return This Portion With Your Payment

*To ensure proper credit to your account, please
write your customer and invoice number on your check.*

☐ Address correction requested. (Please complete reverse side)

*Make check payable and remit to:*

1.24/1.00E/452/8A9693/9W/171241   /ZZ1/0.00 /0.00
HUMAN RESOURCE DEVELOP          Inv  #: 15171241
PRESS                          Cust #: 260860
22 AMHERST RD                  IR   #: 80A09693
AMHERST MA 01002-0000

IKON OFFICE SOLUTIONS
P.O. BOX 30069
HARTFORD CT 06150

**Total Amount Due:**

**129.00**

*Thank you for choosing IKON Office Solutions.*

# IKON Office Solutions
## INVOICE

IKON

The Way Business Gets Communicated

Northeast District
Customer Service Center
855 Winding Brook Drive
Glastonbury, CT 06033
(888) 645-6005

**Customer Number:** 260860

| | |
|---|---|
| **Invoice** | : 15114814 |
| Invoice Date | : 09/21/2000 |
| Terms | : Net Due Upon Receipt |
| PO | : |
| Rep Id | : 2S8807 |

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

Federal Id     : 23-0334400

| Model | Serial | Id | Cust# | Description | Meter | Date/Prod | Quan | Amount |
|---|---|---|---|---|---|---|---|---|
| CC900 | NJC01109 | XQ904 | 260860 | CURRENT READING | 71622 | 09/21/2000 | | |
| CAN COL COPIER CLC 900   USED | | | | CHARGEABLE LABOR | | VA1110 | 1 | 129.00 |
| HUMAN RESOURCE DEVELOP | | | | Reference Service Report # 114814 | | | | |
| PRESS | | | | | | | | |
| 22 AMHERST RD | | | | | | | | |
| AMHERST MA 01002-0000 | | | | | | Location Total: 129.00 | | |
| 2ND FLOOR | | | | | | | | |

*DO NOT PAY* *D.A.* *We have a support Agreement*

| | | |
|---|---|---|
| **Sub Total** | : | 129.00 |
| **Late Charges** | : | 0.00 |
| **Freight** | : | 0.00 |
| **Taxes** | : | 0.00 |
| **Total Amount Due** | : | 129.00 |

REV: 2/2000

---

**Important:** Detach and Return This Portion With Your Payment

*To ensure proper credit to your account, please
write your customer and invoice number on your check.*

☐ Address correction requested. (Please complete reverse side)

*Make check payable and remit to:*

**IKON OFFICE SOLUTIONS
P.O. BOX 30069
HARTFORD CT 06150**

1.24/1.00E/382/8B2622/9W/114814   /ZZ1/0.00 /0.00
HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

Inv  #: 15114814
Cust #: 260860
IR  #: 80B02622

## Total Amount Due:

### 129.00

*Thank you for choosing IKON Office Solutions.*

15    0000151148148    00002608602    00000129007    80B026220   000000000

# IKON Office Solutions
## INVOICE

*The Way Business Gets Communicated*

Northeast District
Customer Service Center
855 Winding Brook Drive
Glastonbury, CT 06033
(888) 645-6005

**Customer Number: 260860**

| | |
|---|---|
| **Invoice** | : 15110415 |
| Invoice Date | : 12/27/2000 |
| Terms | : Net Due Upon Receipt |
| PO | : |
| Rep Id | : 2K8819 |
| | |
| Federal Id | : 23-0334400 |

HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

| Model | Serial | Id | Cust# | Description | Meter | Date/Prod | Quan | Amount |
|---|---|---|---|---|---|---|---|---|
| CC900 | NJC01109 | XQ904 | 260860 | CURRENT READING | 80029 | 12/27/2000 | | |
| CAN COL COPIER CLC 900  USED | | | | CHARGEABLE LABOR | | VA1110 | 4 | 129.00 |
| HUMAN RESOURCE DEVELOP | | | | Reference Service Report # 110415 | | | | |
| PRESS | | | | | | | | |
| 22 AMHERST RD | | | | | | Location Total: 129.00 | | |
| AMHERST MA 01002-0000 | | | | | | | | |
| 2ND FLOOR | | | | | | | | |

*Do Not pay. We have service contract. D.D.*

| | | |
|---|---|---|
| **Sub Total** | : | 129.00 |
| **Prior Late Charge** | : | 7.76 |
| **Freight** | : | 0.00 |
| **Taxes** | : | 0.00 |
| **Total Amount Due** | : | 136.76 |

REV. 2/2000

**Important:  Detach and Return This Portion With Your Payment**

*To ensure proper credit to your account, please write your customer and invoice number on your check.*

☐  Address correction requested. (Please complete reverse side)

*Make check payable and remit to:*

1.24/2.01E/370/8t0877/9W/110415   /ZZ1/0.00 /0.00
HUMAN RESOURCE DEVELOP
PRESS
22 AMHERST RD
AMHERST MA 01002-0000

| | |
|---|---|
| Inv  #: | 15110415 |
| Cust #: | 260860 |
| IR   #: | 80T10877 |

**********************
**IKON OFFICE SOLUTIONS**
**P.O. BOX 30069**
**HARTFORD CT 06150**

## Total Amount Due:

### 136.76

*Thank you for choosing IKON Office Solutions.*

# HRD Press
# Executive Financial Summary

**11/07/03**

## Current Situation:

HRD Press is financing an iR 110, iR330, iR210 and CLC 900 on a 72 month Copy Management Agreement that began on 7/25/00 and runs through 7/25/08. For the first 36 months of this agreement your monthly cost was $ 8,949 and included the equipment listed above, all service, parts, labor, toner, developer, fuser oil and 300,000 monthly impressions. From months 37 through 72 your payments are $ 12,116.

In addition you have a separate service and supply agreement for your CLC 900 which bills at $ 450 per quarter and includes 3,000 impressions, all parts, labor, toner, developer and fuser oil. Overage's are @ .15 per impression

The financial breakdown of this Copy Management Program (acct # 434797-121202mlsl) is as follows:

| Term | New Equipment | Service & Supplies | Previous Contract* | Total Contract Payment |
|------|------|------|------|------|
| 1-36 | $ 4,110.37 | $ 3,065.75 | $ 1,772.88 | $ 8,949 |
| 37-72 | $ 6,301.13 | $ 3,065.75 | $ 2,749.12 | $ 12,116 |

\* 11 months remaining on your previous contract @ $ 4,268 and 24 months remaining @ $ 5,825 for an Oce 3100 and an Oce 3165 along with 250,000 monthly impressions included (service and supplies).

As of today your buyout to return the equipment on this Copy Management Program is $ 400,828. Your Buyout to own is $ 482,195.77.

## Equipment Pricing

| | |
|------|------|
| Canon iR110 | $ 290,975 |
| Canon iR330 | $ 27,196 |
| Canon iR210 | $ 13,585 |
| Canon CLC 900 | $ 28,560 |
| Total | $360,316 |

David J. Noonan, Esq.
228 Triangle Street
Amherst, MA  01002
Tel: 413-549-5491
Fax: 413-549-5156
david.noonan@verizon.net

**EXHIBIT "E"**

September 20, 2004

By Email: mwalsh@ikon.com
& Express Mail

Mr. Michael Walsh, Esq.
Ikon Office Solutions Company, Inc.
70 Valley Stream Parkway
Malvern, PA 19355

Re: Human Resource Development Press, Inc.
    Demand For Relief Pursuant To
    M.G.L. Chapter 93A

Dear Mr. Walsh

Please be advised that I represent Human Resource Development Press, Inc., Inc. ("HRD PRESS") with respect to its claims against Ikon Office Solutions Company, Inc. and its wholly owned subsidiary IOSCapital ("IKON") as hereinafter set forth. This letter constitutes a written demand for relief pursuant to Massachusetts General Law (" M.G.L.") Chapter 93A, through which HRD PRESS is asserting certain specific claims against IKON.  Pursuant to M.G.L. Chapter 93A, IKON is required to make a tender of settlement, which is reasonable in light of both the facts and claims stated herein and in light of apposite law.

## FACTUAL ASSERTIONS UPON WHICH HRD PRESS'S CLAIMS ARE BASED

On or about May 20, 1998 HRD PRESS and IKON entered into a installment sales contract entitled, "Field Order Form / Security Agreement", for the purchase of two (2) commercial grade photo copiers, namely an Oce 3100 and an Oce 3165 ("First Equipment"). A copy of said Field Order Form / Security Agreement is attached hereto and marked as Exhibit "A". Exhibit "A" and every other document containing contractual terms relevant to this demand for relief

1

were drafted by IKON.

Pursuant to Exhibit "A" during the first 36 months of the contract term, HRD PRESS was obligated to pay $ 4,268 per month and $ 5,825 for the remaining 24 months of the contract term (jointly the "First Equipment Monthly Charges"). In exchange for said monthly payments, HRD PRESS was to receive, inter alia, free service/maintenance and supplies. IKON specifically represented to HRD PRESS that the First Equipment would effectively provide to HRD PRESS 250,000 copies per month. However, notwithstanding said representations and due to continuing mechanical deficiencies with the First Equipment, HRD PRESS was forced to upgrade to different and more expensive photo copiers.

On June 19, 2000 HRD PRESS entered into a second agreement with IKON ("Second Agreement") wherein, HRD PRESS "leased" [1] four (4) Canon photo copiers ("Second Equipment"). A copy of said Second Agreement is attached hereto and marked as Exhibit "B". Pursuant to the terms and conditions of the Second Agreement, HRD PRESS was obligated to pay $8,949 for the first 36 months of the term and $ 12,116 for the remaining 36 months of the term ("Second Equipment Monthly Charges").

Simultaneous with the delivery of the Second Equipment, HRD PRESS surrendered to IKON the First Equipment. In spite of the fact that the First Agreement was an installment sale contract and HRD PRESS held "ownership" rights to and in the First Equipment subject to IKON's security interest, IKON has never disclosed how it disposed of it's collateral nor has it credited HRD PRESS for any value IKON later received from the resale or other disposition of the First Equipment.

Prior to executing the Second Agreement, IKON specifically represented to HRD PRESS that it was receiving an "excellent deal" pursuant to the terms of the Second Agreement and that HRD PRESS was given a significant discount of the list price. In the fall of 2003 IKON confirmed that HRD PRESS was provided at least a 15% discount of the list price. HRD PRESS, after consulting with various other vendors and agents has determined that a traditional discount for a transaction of this size would range anywhere from 20 - 35 % off the list price The same industry consultants, after reviewing the HRD PRESS contract, concluded that not only did HRD PRESS not receive an "excellent deal" but that HRD PRESS did not even receive the more modest 15% discount IKON later represented that it had provided.

IKON also represented to HRD PRESS that it was not paying any portion of the service/maintenance and supplies costs for the First Equipment ( both representations "IKON MISREPRESNTATIONS"). Both of these IKON MISREPRESNTATIONS were material and false. HRD PRESS reasonably and

---

[1] HRD PRESS reserves the right to establish that said Second Agreement is not a "true lease" but rather a "disguised sale".

justifiably relied upon all of the IKON MISREPRESNTATIONS to its severe financial detriment. The maintenance portion of the charges under the First Agreement were in excess of $ 2,500 per month. Additionally, the Second Equipment Monthly Charges contained an undisclosed interest factor that was higher than 20%.

Even though pursuant to the terms of the Second Agreement, HRD PRESS was not to be charged for service/maintenance and supplies, IKON consistently sought to impose and collect unjustified fees and charges for service/maintenance and supplies ("Unjustified Charges"). Attached hereto and marked as Exhibit "C" is are copies of some but not all Unjustified Charges.

In November 2003, IKON provided HRD PRESS with a "financial summary" of what HRD PRESS was paying for through the Second Equipment Monthly Charges. A copy of said "financial summary" is attached hereto and marked as Exhibit "D". Exhibit D establishes that:

1) notwithstanding the fact that IKON took possession of the First Equipment, HRD PRESS continues to pay for the same even though it has no use of the same and received no credit for IKON'S liquidation of its collateral; and

2) the interest component which was built into the First Equipment Monthly Charges is continued to be assessed and in fact compounded through the 72 month period of the Second Equipment Monthly Charges; and

3) even assuming that at the time of the execution of the Second Agreement there remained 35 months of payments remaining under the terms of the First Agreement[2], after subtracting $ 2,500 per month for service/maintenance and supplies and subtracting a generous 18% interest on said remaining payments only approximately $ 80,000 of principle balance could have remained due and owing under the First Agreement; however, IKON has "rolled" into the Second Equipment Monthly Charges 36 months at $1,772.88 plus 36 months at $ 2749.12 for a total of in excess of $ 162,760.32 of payments for the alleged balance due for the First Equipment.

After consulting with the Massachusetts' Attorney General's Office ("AG's Office"), HRD PRESS has confirmed that neither IOS Capital nor Ikon Office Solutions Company, Inc. has registered with the AG's Office so as to allow IKON to impose interest charges in excess of the 20 % legal limit.

## SPECIFIC UNFAIR AND DECEPTIVE TRADE PRACTICES UPON WHICH HRD PRESS'S CLAIMS ARE BASED

---

[2] HRD PRESS asserts that upon the surrender of the First Equipment, no payments remained due and owing pursuant to the First Agreement.

IKON in its business relationship with HRD PRESS has engaged in a pattern and practice of misrepresentation, fraud and deceit, breach of contract and unfair and deceptive trade practices. Some but not all of these unfair and deceptive trade practices are listed below:

1) In order to induce HRD PRESS to execute the Second Agreement, IKON intentionally made the material and false representation to HRD PRESS that IKON was providing HRD PRESS with a significant discount off the list price; and

2) In order to induce HRD PRESS to execute the Second Agreement, IKON intentionally made the material and false representation to HRD PRESS that IKON was not imposing service/maintenance or supplies charges for the First Equipment through the Second Equipment Monthly Charges; and

3) IKON did not liquidate its collateral interests in the First Equipment in a commercially reasonable manner nor credit HRD PRESS for the value of the First Equipment that it surrendered; and

4) IKON by retaining possession of the First Equipment and not liquidating the same through a commercial reasonable means, kept the First Equipment in full and complete satisfaction of any remaining obligations under the First Agreement but yet continued to seek and collect payment for the same through the Second Equipment Monthly Charges; and

5) IKON has collected interest payments from HRD PRESS in excess of the legal limit provided by law rendering all such payments usurious; and

6) IKON has engaged in a consistent practice of seeking and collecting Unjustified Charges; and


(The above paragraphs 1-6 are hereinafter "IKON'S UNFAIR & DECEPTIVE TRADE PRACTICES")

HRD PRESS specifically reserves the right to amend and augment the above referenced list of IKON 'S UNFAIR & DECEPTIVE TRADE PRACTICES if and when it discovers other facts indicating that IKON committed other wrongful acts.


<u>HRD PRESS'S DAMAGES</u>

As a result of the above referenced unfair and /or deceptive trade practices HRD PRESS has suffered several different and distinct kinds of damage.

A) HRD PRESS has paid IKON payments for the Second Equipment in amounts which are substantially higher than that which HRD PRESS should have paid if the promised significant price discounts had been granted; and

B) HRD PRESS, despite IKON's specific representations to the contrary, has through the Second Equipment Monthly Charges paid IKON payments for

service and/or maintenance charges for the First Equipment;

C) HRD PRESS, through the Second Equipment Monthly Charges, has paid to IKON payments for the First Equipment even though all financial obligations for the First Equipment have been satisfied and/or waived by IKON's retention of its collateral, namely the First Equipment; and

D) HRD PRESS, through the Second Equipment Monthly Charges, has paid to IKON interest payments for both the First Equipment and the Second Equipment that is in excess of the legal limit; and

E) Due to IKON 'S UNFAIR & DECEPTIVE TRADE PRATICES, HRD PRESS has been forced to incur in excess of $18,000 of time and out of pocket expense in order to enforce its rights under apposite law.


HRD PRESS'S SPECIFIC DEMANDS FOR RELIEF TO IKON


HRD PRESS'S specific demands for relief are as follows:

1) That IKON immediately pay and reimburse to HRD PRESS $88,565.76 representing all payments made on the First Equipment that were assessed and paid through the Second Equipment Monthly Charges; and

2) That IKON Immediately pay $18,000 to HRD PRESS for the time and out of pocket expenses, including its legal fees incurred, incurred in enforcing its rights under apposite law; and

3) That IKON, in order to provide HRD PRESS with the "significant" discount IKON represented HRD PRESS was receiving on the Second Equipment, immediately pay and reimburse to HRD PRESS $102,792.67 (30% of the $342,642.24[3] paid to IKON pursuant to the Second Equipment Monthly Charges); and

4) That IKON, in recognition of its violation of Massachusetts' usury laws, deem the Second Agreement void and accept HRD PRESS' surrender of the Second Equipment in full and complete satisfaction of any and all obligations under the Second Agreement.


Pursuant to M.G.L. Chapter 93 A, you have thirty (30) days in which to make a written tender of settlement to HRD PRESS. This tender offer must be reasonably responsive to its demands as set forth herein. You are further advised that in the event you do not make an reasonable and acceptable tender of settlement within the thirty (30) day period, I will commence suit on behalf on HRD PRESS in the United States District Court in Springfield Massachusetts and seek treble damages as well as attorney fees as provided for under M.G.L. Chapter 93A.

---

[3] HRD PRESS has not included in this figure any payments illegally collected for the First Equipment.

**PLEASE BE ADVISED THAT HRD PRESS RESERVES ANY AND ALL
RIGHTS UNDER APPOSITE LAW.**

Please direct any tender of settlement to my attention.

Regards,

David J. Noonan, Esq.

Cc: G. Carkhuff

6

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
HUMAN RESOURCES DEVELOPMENT
PRESS. INC.

**DEFENDANTS** IKON OFFICE SOLUTIONS
COMPANY, INC. &IOS CAPITAL, INC,
d/b/a/ IKON FINANCIAL SERVICES

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
DAVID J. NOONAN
228 TRIANGLE STREET
AMHERST. MA 01002

ATTORNEYS (IF KNOWN)
MIICHAEL WALSH
70 VLLEY STREAM PARKWAY
MALVERN, PA 19355

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒☒☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒X | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒X 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒X | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒X |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW 405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS — Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

FRAUD, VIOLATIONS OF USURY STATUTE, BREACH OF WARRANTY, FAILURE TO DISPOSE OF COLLATERAL IN COMMERCIALLY REASONABLE MANNER, CHAP 93 A et al.

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS **A CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $ 350,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE 3-13-05

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __HUMAN RESOURCE DEVELOPMENT PRESS, INC.__

__IKON OFFICE SOLUTIONS COMPANY, INC.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

___ I.  160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

___ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,       *Also complete AO 120 or AO 121
        740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

✓ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
       315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
       380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
        690, 810, 861-865, 870, 871, 875, 900.

___ V.  150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

_____ N/A _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                        YES ☐      NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

                                        YES ☐      NO ☒

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                        YES ☐      NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                        YES ☐      NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                        YES ☐      NO ☒

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division ☐        Central Division ☐        Western Division ☐

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division ☐        Central Division ☐        Western Division ☒

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

                                 N/A    YES ☐      NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __DAVID J. NOONAN, ESQ.__

ADDRESS _____228 TRIANGLE STREET, AMHERST, MA  01002_____

TELEPHONE NO. ____413-549-5491____