**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                                    )
HUMAN RESOURCE DEVELOPMENT  )
PRESS, INC.,                                        )
                                                    )
          Plaintiff,                                )
                                                    )
v.                                                  )          3:05-CV-30068-KPN
                                                    )
IKON OFFICE SOLUTIONS, INC.    )
& IOS CAPITAL, INC. d/b/a             )
IKON FINANCIAL SERVICES,          )
                                                    )
          Defendants.                          )
_____)

## CERTIFICATE OF SERVICE

The undersigned verifies that  PLAINTIFF'S OPPOSITION TO DEFENDANTS'

RULE 12(b)(6) MOTION TO DISMISS, MEMORANDUM OF LAW IN SUPPORT OF

PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

& MOTION PURSUANT TO LOCAL RULE 7.1(B) (4) FOR LEAVE TO FILE

MEMORANDUM IN EXCESS OF 20 PAGES was served upon counsel for the

Defendants, by mailing the same, by first class mail, postage prepaid to: Bradford S.

Babbitt, Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT 06103-3597 on the

27th of June, 2005.

Human Resource Development Press, Inc.
By Its: Counsel

/S/ David J. Noonan
David J. Noonan, Esq.
228 Triangle Street
Amherst, MA 01002
Tel: (413) 549-5491
Fax: (413) 549-5156
MA Bar # 373260

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

```
_____
                                )
HUMAN RESOURCE DEVELOPMENT      )
PRESS, INC.,                    )
                                )
            Plaintiff,          )
                                )
v.                              )          3:05-CV-30068-KPN
                                )
IKON OFFICE SOLUTIONS, INC.     )
& IOS CAPITAL, INC. d/b/a       )
IKON FINANCIAL SERVICES,        )
                                )
            Defendants.         )
_____)
```

## <u>CERTIFICATE OF SERVICE</u>

The undersigned verifies that  PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS, MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS & MOTION PURSUANT TO LOCAL RULE 7.1(B) (4) FOR LEAVE TO FILE MEMORANDUM IN EXCESS OF 20 PAGES was served upon counsel for the Defendants, by mailing the same, by first class mail, postage prepaid to: Bradford S. Babbitt, Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT 06103-3597 on the 27th of June, 2005.

Human Resource Development Press, Inc.
By Its: Counsel

<u>/S/ David J. Noonan</u>
David J. Noonan, Esq.
228 Triangle Street
Amherst, MA 01002
Tel: (413) 549-5491
Fax: (413) 549-5156
MA Bar # 373260

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____ )
)
HUMAN RESOURCE DEVELOPMENT )
PRESS, INC., )
     Plaintiff, )
)
v. )     3:05-CV-30068-KPN
)
IKON OFFICE SOLUTIONS, INC. )
& IOS CAPITAL, INC. d/b/a )
IKON FINANCIAL SERVICES, )
     Defendants. )
_____ )

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Now Comes, HUMAN RESOURCE DEVELOPMENT PRESS, INC., ('HRD") and

opposes the Defendants' IKON OFFICE SOLUTIONS, INC. & IOS CAPITAL, INC. d/b/a

IKON FINANCIAL SERVICES, Motion To Dismiss and relies upon the facts, law and

arguments set forth in HRD's Memorandum Of Law In Support Of Its Opposition To

Defendants' Motion To Dismiss.


Respectfully submitted this the 27th day of June, 2005

                    The Plaintiff, Human Resources Development
                    Press, Inc.
                    By It's Attorney,

                    /S/ David J. Noonan
                    David J. Noonan, Esq.
                    228 Triangle Street
                    Amherst, MA  01002
                    (413) 549-5491; (413) 549-5156 (fax)
                    BBO # 373260

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                         )
HUMAN RESOURCE DEVELOPMENT               )
PRESS, INC.,                             )
         Plaintiff,                      )
                                         )
v.                                       )        3:05-CV-30068-KPN
                                         )
IKON OFFICE SOLUTIONS, INC.              )
& IOS CAPITAL, INC. d/b/a                )
IKON FINANCIAL SERVICES,                 )
         Defendants.                     )
_____  )


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### I. INTRODUCTION

   The Defendants, Ikon Office Solutions, Inc. ("IKON OFFICE") & IOS Capital, Inc.[1]

d/b/a Ikon Financial Services ("IKON FINANCIAL") (collectively "IKON"), have filed a

Rule 12(b)(6) Motion to Dismiss all six counts of the Plaintiff's Complaint (the "Motion to

Dismiss"). The Plaintiff, Human Resource Development Press, Inc. ("HRD"), by and

through its counsel of record, hereby submits this Memorandum of Law In Support of its

Opposition to Defendants' Motion to Dismiss.

   Taking all of the factual allegations as true and making all reasonable inferences

in HRD's favor, there is a claim upon which relief may be granted as to all six counts of

the Complaint.  Wherefore, HRD respectfully requests that this Court enter an Order

---

[1]  Based upon the information contained in IKON's memorandum it appears that, IOS Capital, Inc.'s successor, IOS Capital, LLC, was merged into IKON OFFICE on March 30, 2004.  Therefore, the entity IOS Capital, Inc. d/b/a IKON Financial Services no longer exists. HRD reserves the right to amend its complaint and substitute any necessary and proper defendant.

1

Denying IKON's Motion to Dismiss.

## II. <u>SUMMARY OF FACTUAL ALLEGATIONS AND CLAIMS FOR RELIEF MADE IN THE COMPLAINT</u>

HRD creates, owns and publishes assessment tests, human resource training resources and various training and development materials.  (Complaint, ¶ 6).  IKON OFFICE, among other things, provides its customers with copier equipment.  (Complaint, ¶ 7).   IKON FINANCIAL was in the business of purchasing and servicing finance contracts for equipment sold and/or leased by IKON OFFICE to third parties.  (Complaint, ¶ 7).  The Complaint stems from two contracts for photocopiers executed by the parties.

In May and June of 1998, HRD and IKON executed two documents[2] ("First Agreement") whereby IKON provided HRD with two (2) commercial grade copiers - an Oce 3100 and Oce 3165 - (the "First Equipment") and IKON was granted a security interest in the First Equipment.  (Complaint, ¶¶ 8-9).  A copy of said First Agreement is attached hereto to HRD's complaint and marked as Exhibit "A".

The contract term of the First Agreement was for sixty (60) months.  (Complaint, ¶ 10).  Pursuant to the First Agreement, HRD agreed to pay FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) per month for the first thirty-six (36) months of the contract term and FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) for the remaining twenty-four (24) months of the contract term (jointly, the "First Equipment Monthly Charges"). (Complaint, ¶ 11).  The First

---

[2]The documents are called Field Order Form/Security Agreement and Copy Management Program.

2

Equipment Monthly Charges included service/maintenance and supplies.  (Complaint, ¶ 12).

The First Equipment failed to meet HRD's copying needs, thus it entered into a subsequent contract with IKON for different equipment.  Accordingly, the parties entered into a second contract[3] on or about June 19, 2000 ("Second Agreement") whereby IKON agreed to provide HRD with four (4) Canon copiers ("Second Equipment").  (Complaint, ¶ 18).   A copy of said Second Agreement is attached to HRD's Complaint and marked as Exhibit "B".

The contract term of the Second Agreement was for seventy-two (72) months.  (Complaint, ¶ 20).  HRD agreed to pay EIGHT THOUSAND NINE HUNDRED FORTY-NINE DOLLARS ($8,949.00) for the first thirty-six (36) months of the contract term and TWELVE THOUSAND ONE HUNDRED SIXTEEN DOLLARS ($12,116.00) for each of the remaining thirty-six (36) months of the contract term ("Second Equipment Monthly Charges").  (Complaint, ¶ 21).  Simultaneous with the delivery of the Second Equipment, HRD surrendered the First Equipment to IKON.  (Complaint, ¶ 22).

HRD's six-count Complaint is for (I) fraud and misrepresentation, (ii) violation of the criminal usury statute, (iii) breach of the warranty for a particular purpose, (iv) failure to dispose of collateral in a commercially reasonable manner, (v) breach of the covenant of goof faith and fair dealing, and (vi) violation of Massachusetts General Laws ch. 93A ("Chapter 93A").  What follows is a summary of the six counts.

## A.    <u>Count I-Fraud And Misrepresentation</u>.

HRD alleges that IKON induced it into executing the Second Agreement by

---

[3]This contract is entitled Product Schedule Copy Management.

intentionally making the following materially false representations.

First, IKON represented to HRD that it was receiving an "excellent deal" pursuant to the terms of the Second Agreement and that it was given a significant discount off the list price. (Complaint, ¶¶ 27, 28). However, HRD has made payments to IKON for the Second Equipment in amounts that are substantially higher than that which HRD should have paid if the promised significant price discounts had been granted. (Complaint, ¶ 39).

Second, in the fall of 2003, IKON informed HRD that it was provided with a discount of at least 15% off the list price of the Second Agreement. (Complaint, ¶ 29). In 2004. industry consultants reviewed HRD's Second Agreement and concluded that HRD did not receive an "excellent deal" and that HRD received less than a 15% discount off the list price. (Complaint, ¶ 31). A traditional discount for transactions similar to the size of the Second Agreement ranges from 20-35% off the list price. (Complaint, ¶ 30).

Lastly, prior to executing the Second Agreement, IKON represented to HRD that it no longer would be paying any portion of the service/maintenance or supplies costs for the First Equipment. (Complaint, ¶ 32). Even though IKON represented to HRD it was not to be charged for service/maintenance and supplies for the First Equipment, IKON "rolled" into the charges for the Second Equipment fees and charges for service/maintenance and supplies for the First Equipment ("Unjustified Charges") (Complaint, ¶ 38).

4

**B.** <u>**Count II-Violation Of Massachusetts' Criminal Usury Laws Mass. Gen. Laws Ch. 271, § 49**</u>.

HRD alleges that IKON violated Mass. Gen. Laws ch. 271, § 49 because HRD, through the Second Equipment Monthly Charges, has paid to IKON interest payments for both the First and Second Equipment that is in excess of the legal limit.  (Complaint, ¶ 42).   When HRD entered into the Second Agreement, it still owed eleven (11) monthly payments of FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) and twenty-four (24) monthly payments of FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) under the First Agreement (Complaint, ¶ 26). Thus, even if IKON had the right, which HRD disputes, to collect the $139,800 for the alleged balance due on the First Equipment, IKON deceptively imposed charges of more than $162,760 for the same alleged balance due.

The payments remaining due on the First Agreement included an interest component that continued to be assessed and to be compounded in the payments due under the Second Agreement.  (Complaint, ¶ 37).  IKON, in order to collect said $162,760, has essentially "rolled" into the Second Equipment Monthly Charges required payments of ONE THOUSAND SEVEN HUNDRED SEVENTY-TWO DOLLARS and 88/100 ($1,772.88) per month for thirty-six (36) months <u>plus</u> required payments of TWO THOUSAND SEVEN HUNDRED AND FORTY NINE DOLLARS and 12/100 ($2,749.12) per month for another thirty-six (36) months for a total of ONE HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED AND SIXTY DOLLARS and 32/100 ($162,760.32) for the alleged balance due for the First Equipment.  (Complaint, ¶ 38).  That compounding results in an effective interest rate that far exceeds the 20% APR limit set forth in the

5

M.G.L. ch. 271, § 49.

**C.     Count III-Breach Of The Warranty For A Particular Purpose.**

HRD alleges that IKON breached the warranty for a particular purpose by falsely warranting that the First Equipment would meet its copying needs.  (Complaint, ¶ 59).  IKON represented to HRD that the First Equipment would provide a minimum of 250,000 copies per month and meet HRD's copying needs. (Complaint, ¶13).  The First Equipment was delivered to HRD on or about May 16, 1998.  (Complaint, ¶ 14).  HRD began experiencing mechanical problems with the First Equipment within the first couple of months. (Complaint, ¶ 15).

**D.     Count IV-Failure To Dispose Of Collateral In A Commercially Reasonable Manner.**

HRD alleges that IKON failed to dispose of the First Equipment in a commercially reasonable manner since it never credited HRD for any value IKON may have received from the resale or other disposition of the First Equipment which was returned when the Second Agreement was executed.  (Complaint, ¶¶ 22, 24).  By failing to account for or provide HRD with any value for the First Equipment, IKON has either failed to liquidate its collateral in a commercially reasonable manner or retained the collateral in satisfaction of any debt related to the same.  (Complaint, ¶ 63).  As a result of said failure, any financial obligation sought to be imposed upon HRD should be deemed satisfied.  (Complaint, ¶ 64).

**E.     Count V-Breach Of The Covenant Of Good Faith And Fair Dealing.**

HRD alleges that IKON has breached the covenant of good faith and fair dealing by seeking to impose and then collect charges for HRD's use of the First Equipment

and imposing and collecting service and maintenance fees for the First Equipment after the First Equipment had already been surrendered. (Complaint, ¶ 67).

## F.    <u>Count VI-Violation Of Mass. Gen. Laws Ch. 93A.</u>

HRD alleges that the aforementioned five (5) counts of the Complaint constitute unfair trade practices.  (Complaint, ¶ 45).

## III.  <u>STANDARD OF REVIEW</u>

A motion to dismiss permits dismissal of a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove ***no set of facts*** in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 78 S. Ct. 99, 102 (1957). (emphasis added).  This Court can only dismiss the counts in the Complaint "'if it ***clearly*** appears, according to the facts, that the plaintiff cannot recover on any viable theory.'"  <u>Langadinos v. American Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000) (citations omitted) (emphasis added).  In making this determination, the Court "must accept the well-pled facts of [the] . . . complaint as true and indulge every reasonable inference in his favor." <u>Id</u>.  As a result of applicable law, this Court must accept as true all 46 paragraphs of HRD's factual assertions in its complaint and provide HRD with the benefit of any doubt or inference concerning the same.

# IV.  ARGUMENT

## A.    COUNT I-FRAUD AND MISREPRESENTATION.

### 1.    The Fraud And Misrepresentation Claim Is Not Time Barred Since Suit Was Filed Less Than Three Years After HRD Knew Or Should Have Known About IKON's Misrepresentations.

IKON argues that the fraud and misrepresentation claim should be dismissed because it is time barred.  An action for fraudulent misrepresentation is an action in tort. Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991) (citation omitted).  Accordingly, an action for fraudulent misrepresentation may only be brought within three years after the cause of action accrues.  See Mass. Gen. Laws ch. 260, § 2A ("[A]ctions of tort . . . shall be commenced only within three years next after the cause of action accrues.").

An action in tort generally accrues when the plaintiff is injured.  Tagliente, 949 F.2d at 4.  However, the "discovery rule" provides that actions in both contract and tort may be tolled until such time as the plaintiff discovers the facts giving rise to the cause of action. Frank Cooke , Inc. v. Hurwitz, 10 Mass App. Ct. 99 (1980). Accordingly, the discovery rule tolls the "limitations period until a prospective plaintiff learns or should have learned that he has been injured by the defendant's conduct."  Clough v. Brown, 59 Mass. App. Ct. 405 (2003) (citations and quotations omitted).  "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action **are to be resolved by the jury.**'" Id. (emphasis added).

IKON, throughout pages 8 and 9 of its memorandum, argues that unless the falsity of its misrepresentations was "inherently unknowable" at the time they were

made, the applicable statue of limitations began in the year 2000. The term "inherently unknowable" which has been utilized by certain courts, suggests that a plaintiff has to possess oracle-like powers to divine the false nature of a misrepresentation at the moment of time it is made or lose the benefit of the three year period to assert a claim. However, the "inherently unknowable" standard is no different from and is used interchangeably with the 'knew or should have known' standard." Szymanski v. Boston Mutual Life Ins. Co., 56 Mass. App. Ct. 367, 371 (2002) (citations omitted).

IKON on page 8 of its memorandum argues that in the year 2000, HRD should have protected itself from IKON's false representations by obtaining contracts from competitors of IKON, review the same and then determine that IKON was lying to HRD. Putting aside the shameful lack of business morality that IKON's argument exposes, this is fortunately not the law.

In a fraud action, the plaintiff is not required to investigate the truth of assertions that are made to him.  The recipient of a fraudulent misrepresentation of fact is ordinarily justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation.  Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 467 (2003), citing Yorke v. Taylor, 332 Mass. 368, 374 (1955).

On the other hand, the plaintiff is not entitled to rely on a representation that he knows to be false or its falsity is obvious to him.  Id. at 468.  If a mere cursory glance would have disclosed the falsity of the representation, its falsity is regarded as obvious. Id. (citations omitted); Collins v. Huculak, 57 Mass. App. Ct. 387, 392 (2003) ("The

9

person claiming justifiable reliance is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination"). "'***[T]he question,*** whether the plaintiff exercised due diligence and was justified in placing confidence in the statement of the defendant or should have known from the beginning that [the statement was false],' ***is one of fact.***" Id. (citation omitted). (emphasis added)

A misrepresentation claim exists if (1) the defendant made a false statement of material fact, (2) with an intent to influence or induce the plaintiff's conduct, and (3) the plaintiff reasonably relied on the false statement to his detriment. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991). Here, HRD alleges that IKON fraudulently induced it into executing the Second Agreement by (1) falsely representing prior to entering into the Second Agreement that it was receiving an "excellent deal"; (2) falsely representing after executing the Second Agreement that HRD was still receiving an "excellent deal"; (3) falsely representing that HRD was given a significant discount off the list price; (4) falsely stating in the fall of 2003 that HRD was given a discount of 15% off the list price; and (5) falsely representing that HRD was not required to pay any portion of the service/maintenance or supply costs for the First Equipment after the Second Agreement was executed.

It was not until November 7, 2003, when IKON provided HRD with an "Executive Financial Summary" that HRD determined that it was paying for both the First Equipment and service and maintenance charges thereon via the Second Agreement (Complaint, ¶ 35). A copy of said "Financial Summary" is attached to HRD's Complaint

10

and marked as Exhibit "D".  The "Financial Summary" reveals that HRD continued to pay for the First Equipment notwithstanding the fact that IKON took possession of the First Equipment, HRD had not used or had possession of the First Equipment since June 2000, and HRD has received no credit for IKON's liquidation or other disposition of its collateral. Additionally, not until November 2003 did HRD   know that it was being charged for service and maintenance on the First Equipment despite IKON's specific representations to the contrary. Furthermore, it was not until HRD had received the "Financial Summary" that, in 2004, it had industry consultants reviewed the Second Agreement and learned that HRD was not receiving an "excellent deal" and that it received less than a 15% discount off the list price.  (Complaint, ¶ 31).

Therefore, the earliest in which HRD knew or could have reasonably known about IKON's various misrepresentations was November 2003. The Complaint was filed on March 15, 2005.   Accordingly, this Court must Deny IKON's motion to dismiss the fraud and misrepresentation claim since it is not time barred.

     **2.**     **The Fraud And Misrepresentation Claim Should Not Be Dismissed Because The False Statements Made By IKON Were Not Mere Opinions & Even If Deemed Opinions Lead HRD To Reasonably Believe That IKON Had Facts To Justify Said Opinions.**

In order to establish a claim of fraud, a plaintiff must show that the defendant made a false representation of a *material fact*.  Dunca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982) (emphasis added); Stolzoff v. Waste Systems International, Inc., 58 Mass. App. Ct. 747, 759 (2003) (statement must be one of fact, not opinion).  A fact is described as something "'susceptible of knowledge.'" Id. at 760.  The distinction between a statement of fact and one of opinion is often a hard one to make,

<u>McEneaney v. Chestnut Hill Realty Corp.</u>, 38 Mass. App. Ct. 573, 575 (1995) (citations omitted), and whether a statement is an expression of an opinion or a statement of fact should be left to the jury.  <u>Thompson v. United Companies Lending Corp.</u>, 699 So.2d 169, 173-174 (Ala. Civ. App. 1997) (citations omitted).  "'A representation is one of opinion if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment." <u>McEneaney, Jr.</u>, 38 Mass. App. Ct. at 575, *quoting* Restatement (Second) of Torts § 538A (1977).

IKON argues that the fraud and misrepresentation claim should be dismissed because statements such as "excellent deal" and "significant discount off the list price" convey the alleged speaker's subjective judgment or opinion about the quality of the deal and discount, not one of fact. HRD rejects IKON's suggestion that the misrepresentations it made were mere opinions or simply constituted "puffing". HRD has pleaded that IKON made the following specific misrepresentations before execution of the Second Agreement:

> A) that HRD was given an "excellent" deal; and
>
> B) that HRD was given a "significant discount off list price"; and
>
> C) that HRD would not be paying any service or maintenance charges for the First Equipment through the second Agreement.

HRD has also pleaded that IKON made the following specific misrepresentation after execution of the Second Agreement:

> D) that HRD received at least a 15% discount off list price.

12

Clearly misrepresentations C and D above are direct, concise unqualified statements of alleged fact. If the Court interprets misrepresentations A and B above, subject to the previously stated principle of providing HRD with the benefit of any doubt or inference concerning the same, it should conclude that theses are statements of fact and not mere opinions.

However, even if the Court were to conclude that these statements are opinions, they would be opinions that HRD had the right to rely upon because HRD justifiably believed IKON had facts to justify said opinions. This is because statements of opinion may be actionable where the speaker possesses superior knowledge concerning the subject matter to which the misrepresentations relate. Stolzoff, 58 Mass. App. Ct. at 760. A statement of opinion may also be actionable where the opinion is "'reasonably interpreted by the recipient to imply that the speaker knows facts that justify the opinion.'" Id. (citation omitted). "In some circumstances . . . a statement that in form is one of opinion may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it." McEneany, Jr., 38 Mass. App. Ct. at 575 (citations omitted); see also Arthur D. Little Intern., Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1204-1205 (D. Mass. 1996); see also American Life Ins. Co. v. Parra, 63 F. Supp. 2d 480 (D. Del. 1999) (where a party states a matter that might otherwise be only an opinion and does not state it as the mere expression of his or her own opinion but as an existing fact material to a transaction so that the other party may reasonably treat it as a fact and rely and act upon it as such, then the statement becomes an affirmation of

fact).

Here, IKON had superior knowledge as to pricing information and HRD reasonably believed that IKON knew facts to justify the representations it made relative to pricing. Accordingly, this Court must Deny IKON's motion to dismiss the fraud and misrepresentation claim since the alleged false statements made by IKON lead HRD to reasonably believe that IKON had facts to justify the opinion.

**B.     <u>COUNT II-VIOLATION OF THE USURY STATUTE.</u>**

IKON argues that the transactions involved in this case are lease transactions. HRD disputes this legal conclusion but for argument purposes only will deem the transactions as leases. IKON argues that the claim for violation of the criminal usury statute should be dismissed because Mass. Gen. Laws ch. 271, § 49[4] does not apply to equipment leases. IKON solely relies on the <u>Allegheny</u> case in making this argument.

---

[4]Massachusetts General Laws chapter 271, section 49 provides that:

(a)     Whoever in exchange for either a loan of money ***or other property*** knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment. For the purposes of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry. (emphasis added).

* * *

( c)     Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by a person to whom the loan was made.

14

*See* Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc., 21 Mass. App. Ct. 155 (1985).  In Allegheny, a seller entered into a three-year lease with a buyer for a piece of earth-moving equipment.  Id. at 156.  The plaintiff argued that the transaction was a true lease, not a loan, and therefore the criminal usury statute was inapplicable.  Id. at 160.  However, the Allegheny court did not fully discuss the merits of the issue of whether the contract was a true lease or a loan, did not construe the statutory language "… a loan of …other property…" and this case does not stand the proposition IKON would suggest. Id. at 163.

A plain reading of this unambiguous statute reveals that it does in fact apply to equipment leases.  *See* New England Medical Center Hospital, Inc. v. Commissioner of Revenue, 381 Mass. 748, 750 (1980) (An examination of the legislative history to derive the statute's meaning is unnecessary if a plain reading of the words within the statute reveals its meaning) (citations omitted).  The statute explicitly provides that "[w]hoever in exchange for . . . ***a loan of other property*** . . . knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury . . ." Mass. Gen. Laws. ch. 271, § 49 (emphasis added); *see also* Cannarozzi v. Fiumara, 371 F.3d 1, 4 (1st Cir. 2004) ("Whoever in exchange for either a loan of money ***or other property*** ...") (emphasis added).

**HRD argues that a lease of a chattel is a "…loan of other property…"**. A review of a few relevant definitions from the Black's Law Dictionary is instructive:

**Loan**, *n* 1. An act of lending; a grant of something for temporary use <thank you for the loan of your dress >. 2. A thing lent for the borrower's temporary use.

**Loan,** *vb.* LEND.

**Lend**, *vb.* 1. To allow the temporary use of (something), sometimes in exchange for compensation, on condition that the thing or its equivalent be returned.

**Lease***, n.* 5. A temporary conveyance of personal property in exchange for consideration.

**Lease**, *vb.* 1. To grant the temporary possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration . . . 2. To take a lease of; to hold by a lease. . .

**Property,** n. the unrestricted and exclusive right to a thing.

All of these basic legal definitions when applied to the words in the statute ***"a loan of …or other property"*** lead to the clear conclusion that the statute is meant to apply to something other than just a loan of money. (emphasis added).

The parties" transaction in its simplest form was as follows: IKON allowed HDR to use a thing (copiers), for a temporary period of time in exchange for the payment of money.

In order to defeat the application of this statute to the present transactions IKON must explain away the existence of the words ***"a loan of …or other property"*** contained in Mass. Gen. Laws ch. 271, § 49.

"A basic tenet of statutory construction requires that a statute 'be construed 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous.'" Wolfe v. Gormally, Jr., 440 Mass. 699, 704 (2004), *citing* Bankers Life &

Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998), *quoting* 2A N.Singer,

Sutherland Statutory Construction §46.06 (5th ed. 1992).  Therefore, if the criminal usury

statute is only applicable to loans of money, as IKON suggests, then the legislature

would not have placed the words "or other properly" within the statute.

Words and phrases shall be construed according to their plain meaning and

common usage.  *See* M.G.L. c. 4, § 6, Third; Glass v. City of Lynn, 49 Mass. App. Ct.

352, 354 (2000), *citing* M.G.L. c. 4, § 6, Third and Singer, Statutes and Statutory

Construction § 46:01 (6th ed. 2000); U.S. v. N.E. Coal and Coke Co., 318 F.2d 138, 142

(1st Cir. 1963) (citations omitted) (statutory words are presumed to have been used in

their ordinary sense).

Does IKON in making its argument actually mean it is unfettered by any

application of common law, regulation or statute and can charge any amount of interest

it chooses not matter how high the % rate ? It is a fair and reasonable reading of the

statute that an equipment lease is a "loan of property" and subject to the statute. If only

loans of money could be usurious under the statute, why would the drafters have put in

the words "loan of . . other property" when only five words earlier it had incorporated the

words " ...a loan of money" ?

It would be contrary to public policy to find that the usury statute only applies to

loans of money and not leases of personal property. In a time where the line between a

commercial lease and a disguised sale is thin and subject to detailed factual

determinations, to hold that this statute does not apply to leases of personal property

would exempt untold numbers of commercial transactions each year from the important

public policy tool of regulating what amount of interest is fair and would also eliminate an effective tool against organized crime.

Accordingly, this Court must Deny IKON's Motion to Dismiss the usury claim since the parties' transactions were sale and not lease transactions (See, pages 19-23 herein) and even if deemed to be lease transactions the usury laws apply to " **a loan of** money or **other property**…" which clearly applies to lease transactions. (emphasis added).

C.    **COUNT III-BREACH OF WARRANTY FOR A PARTICULAR PURPOSE.**

IKON argues that the breach of warranty for a particular purpose claim should be dismissed because it is time barred. IKON argues that the transaction in question is a lease transaction and that pursuant to Mass. Gen. Laws ch. 106, § 2A-506(2) HRD's cause of action accrued on the later of the date when the default occurs or when the act or omission on which it is based is or should have been discovered. HRD asserts that the transaction was not a lease transaction however its acknowledges the applicable statute of limitations for sales transactions pursuant to Mass. Gen. Laws ch. 106, § 2-275 began to accrue on its discovery of the breach of warranty claim on or about June 2000 when it entered into the Second Agreement.

After a review of applicable law, including principles of equitable estoppel relating to IKON's promises from March through August 2004 to resolve the parties' dispute, HRD concedes that Count III of its complaint should be dismissed due to the application of Mass. Gen. Laws ch. 106, § 2-275 rather than Mass. Gen. Laws ch. 106, § 2A-

506(2). As a result HRD will file a voluntary dismissal as to Count III.

### D.    COUNT IV-FAILURE TO DISPOSE OF COLLATERAL IN A COMMERCIALLY REASONABLE MANNER.

HRD alleged in its Complaint that by failing to account for or provide HRD with any value for the First Equipment, IKON has either failed to liquidate its collateral in a commercially reasonable manner or retained the collateral in satisfaction of any debt related to the same.  IKON argues that the failure to dispose of collateral in a commercially reasonable manner claim should be dismissed because Article 9 does not govern the parties' relationship in this case since a security agreement was not created. As previously stated HRD disputes and contests IKON's characterization of the parties' transaction as a "lease" and argues that Article 9 is applicable and controls the parties' rights and obligations.

The Massachusetts Uniform Commercial Code controls the issue of whether a personal property contract is a true lease or a security agreement.  Mass. Gen. Laws, ch. 106, § 1-201(37); Carlson v. Giachetti, 35 Mass. App. Ct. 57, 59 (1993); Rocky River Condo Corp. v. F.D.I.C., 855 F. Supp. 489, 492 (D. Mass. 1994).  Under Massachusetts law, it is well settled that, in determining whether a contract is a "true lease" or is intended for security, courts do not consider what description the parties have given to it, but what is its essential character.   Rocky River Condo Corp., 855 F. Supp. at 491. Moreover, "[i]n determining whether a transaction involves a 'true lease' or a disguised security interest, the court may consider factors outside the lease as well as the contents of the lease."  In re APB Online, Inc., 259 B.R. 812, 817 (Bkrtcy. S.D.N.Y.

19

2001).

The UCC provides an objective test that seeks to determine whether, regardless of what the parties call it, their agreement transfers to the lessee the use of the property for its remaining economic life.  Massachusetts UCC 1-201 (37) provides, in relevant part, as follows:

> Whether a transaction creates a lease or "security interest" is determined by the facts of each case; however, a transaction creates a "security interest" if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and:
>
> (a)     the original term of the lease is equal to or greater than the remaining economic life of the goods,
>
> (b)     the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
>
> (c)     the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
>
> (d)     the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

Mass. Gen. Laws ch. 106, § 1-201(37).

Accordingly, the statute sets forth a two-part test in determining whether a contract is a true lease or a security agreement.  The first prong of the test is to determine if the lease is terminable by the lessee.  *See, e.g.,* <u>Carlson</u>, 35 Mass. App. Ct. at 63.  This prong is satisfied here because the Copy Management Program, one of the two documents[5] which constitute the First Agreement, provides that "THIS AGREEMENT IS NON-CANCELABLE".  Additionally, IKON, on pages 3 and 4 of its

---

[5] HRD directs the Court to the language contained in Exhibit "A" of its complaint. Exhibit "A" is a document

memorandum, concedes that the First Agreement was non-cancelable.

The second prong is to determine if the parties anticipated that any significant value would remain in the leased property at the end of the lease term for return to the lessor.  The construction of the statute and case law demonstrate that if a lease is non-terminable, only one of the four provisions has to be present.  *See,* Massachusetts Legislation Codifying the Law of Personal Property Leasing: Article 2A of the Uniform Commercial Code, 81 Mass. L. Rev. 143, 145 (Dec. 1996) ("A security interest is expressly created in a non-terminable lease if any of the four criteria are found . . ."); *See also* <u>In re Hoskins</u>, 266 B.R. 154, 159 (Bankr. W.D. Missouri) (court must determine whether ***any*** of the four enumerated conditions set for in UCC 1-201(37) applies). (emphasis added).

IKON did not provide to HRD an "Executive Financial Summary" for the First Equipment as it did for the Second Equipment. Thus, until discovery is completed, we will have to examine the terms and conditions relating to the Second Agreement and analogize back to the First Agreement.

Although other sub-sections apply, the agreement, without adducing any additional facts, falls most easily into UCC § 1-201(37)(d) since HRD has an option to become the owners of the equipment for nominal additional consideration. The Financial Summary IKON gave to HRD on November 7, 2003 indicates that as of that date HRD's "buyout to return the equipment on this Copy Management Program is $400,828.  Your Buyout to own is $482,195.77."

The total cost to HRD under the Second Agreement was $ 758,340 ( 36 months

---

drafted solely by IKON which specifically states that the "debtor", i.e. HRD, is the sole owner of the "collateral".

at $ 8,949 each & 36 months at $ 12,116) ("Total Contract Cost"). On November 7,

2003, the date of the "Executive Financial Summary", HRD had 33 months remaining on

the term of the agreement. Those last 33 months were at a cost of $ 12,116 per month,

totaling $399,828. Through the "Executive Financial Summary" IKON discloses that if

HRD wants to return the equipment in November 2003, HRD must still pay the

remaining 33 months or $ 400,828[6]. However, if HRD wants to "purchase" the

equipment it only has to pay an additional $81, 367.77 ( $ 482,195.77 – $ 400,828)

("Option Price"). Thus, the Option Price was only 10.729% of the Total Contract Cost

($81,367.77 X 100 ÷ 758,340).

It is the established rule in Massachusetts that if the option price is less than

25% of the original price of the leased property, then the lease is intended for security.

*See* In re Access Equip., Inc., 62 B.R. 642, 646 (Bankr. D. Mass. 1986) ("[I]f the option

price amounts to 25% or more of the total list price, then the 'lease' is not one intended

for security."). Because the Option Price is clearly less than the above referenced

twenty- five (25) %, the Second Agreement and by analogy the First Agreement cannot

be characterized as a "lease" transaction.

Additional sub-sections of UCC § 1-201(37) most likely also apply. In order to

determine if sub-section (a) of UCC § 1-201(37) applies to this transaction this Court

must, as finder of fact, determine what the "remaining economic life" of the equipment

would be at the end of the original term of the agreement. IKON has consistently

rebuffed HRD's request to disclose what IKON did with the surrendered First

Equipment. Through discovery this Court will learn whether IKON sold said First

---

[6] HRD assume the de minimums discrepancy between the $ 400,828 and the $ 399,828 are early surrender or

Equipment to a third party and if so for what consideration. Alternatively, the Court may learn that the First Equipment was simply cannibalized and used for "spare parts". Either answer will allow this Court to determine if UCC § 1-201(37)(a) also applies to this transaction.

Accordingly, this Court must Deny IKON's motion to dismiss the failure to dispose of collateral in a commercially reasonable manner claim.

**E.    COUNT V-BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.**

**1.    HRD Has Successfully Asserted Facts To Establish A Viable Theory For This Cause Of Action.**

"[I]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385 (1976).  Comment a to Restatement (Second) Contract § 205 states that "[g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party."

"A breach of the implied covenant of good faith and fair dealing will only be found if there is: conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned *or* unfair leveraging of the contract terms to secure undue economic advantage.  Such bad faith is often evidenced by 'deceit or unfair subterfuge' on the part of the breaching party." Qestec, Inc. v. Krummenacker, 367 F.Supp.2d 89

transportation fees.

(D.Mass. 2005). (emphasis added).

In Count V, HRD alleges that IKON has breached the covenant of good faith and fair dealing by, inter alia, imposing and then collecting charges for 1) HRD's use of the First Equipment after it was surrendered and 2) service and maintenance fees for the same. HRD argues it was unconscionable, deceitful and unfair for IKON to continue charging for both the First Equipment (and related service charges for the same) that HRD did not have; especially in light of IKON's representations that HRD would not have to pay for the First Equipment after the Second Agreement was executed.

IKON claims that HRD agreed to continue making the payments as part of the Second Agreement. However, there is no language within the relevant contracts to this effect. Paragraph 11 of the "Terms and Conditions" portion of the Copy Management Program agreement (First Agreement) provides that "[i]f the Customer defaults, IOS Capital can demand that the Customer pay the remaining balance of the Agreement and return the System to us at the Customer's expense." However, HRD did not default under the First Agreement. The First Equipment was returned and the Second Agreement was executed because the First Equipment was not meeting HRD's copying needs as IKON promised it would.

On page 1 of its memorandum, IKON globally defines "IKON" as referencing both of the defendants. As a result IKON's argument with respect to Count V is confusing and misleading and HRD requests clarification of the same and the right to respond to the same. It maybe that IKON is arguing that the breach of the covenant of good faith and fair dealing should be dismissed because the facts alleged fail to state a claim

against IOS Capital since it claims HRD did not allege any bad faith conduct that deprived it of the benefits of either the First or Second Agreement.

Count V specifically incorporated by reference paragraphs 1-46 of the Complaint. In paragraph 3 of the Complaint, IOS Capital is defined as "IKON FINANCIAL". In paragraph 7, HRD asserts that IKON FINANCIAL is in the business of taking assignments from Ikon Office Solutions, Inc. of sales and/or lease contracts, such as its contracts with HRD. Count V specifically seeks to reform both the First Agreement and the Second Agreement consistent with the covenant of good faith and fair dealing. Because IKON charged, inter alia, HRD for the First Equipment through the Second Agreement both contracts are now inseparable.

### 2. IOS CAPITAL Was In Fact A Party To The Agreements.

If it is IKON's argument that IOS Capital was not somehow in privity of contract with HRD, then IKON must explain why in describing the First Agreement, it has supplied this Court, as part of Exhibit 1 to its own memorandum, with the document entitled "IOS CAPITAL Variable Lease Payments Addendum".

Even assuming *arguendo* that IKON was not a party to the First and Second Agreements as it argues, IOS Capital either actually assumed said contracts or by operation of law they have assumed said contracts since IOS Capital, Inc.'s successor, IOS Capital LLC, was merged into IKON Office Solutions, Inc. on March 30, 2004. Since IKON assumed the First and Second Agreements, it also assumed any liabilities under said agreements.  *See* Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc., 313 F.3d 616, 618 (1st Cir. 2002) (citations omitted).

25

Additionally, if it is IKON's argument that IOS Capital did not take an assignment of the First Agreement from Ikon Office Solutions, Inc. then HRD reserves the right to add a new additional Count against IOS Capital for conversion of all the monies HRD paid to IOS Capital and/or for failure of consideration.

A determination of whether IKON's conduct was in violation of the covenant of good faith and fair dealing should be decided by the trier of facts. For all the reasons set forth, this Court should be the arbitrator of these facts, not the Defendants.

Accordingly, this Court must Deny IKON's motion to dismiss the count for breach of the covenant of good faith and fair dealing.

**F.     COUNT VI-VIOLATION OF CHAPTER 93A.**

**1.     The Chapter 93A Claim Is Not Time Barred.**

Here, the underlying action on which HRD basis its 93A claim are fraud and misrepresentation, violations of usury laws, failure to dispose of collateral in a commercially reasonable manner and breach of the covenant of good faith and fair dealing. IKON argues that the Chapter 93A claim should be dismissed because it is time barred. Throughout this memorandum HRD has rebutted IKON's various assertions that the above referenced claims are time barred. HRD's prior arguments are hereby incorporated by reference with respect to IKON's arguments concerning Count VI.

Actions under Chapter 93A may only be commenced within four years after the cause of action accrues.  Mass. Gen. Laws ch. 260, § 5A.  The accrual date of a Chapter 93A claim is "'established by the same principles that govern the determination

26

of the underlying actions.'"  Kozikowski v. Toll Bros., Inc., 246 F. Supp.2d 93, 98 (D.

Mass. 2003) (citation omitted).

A Chapter 93A claim based on fraud accrues when the plaintiff knew or

reasonably should have known about the alleged fraud.  *See* Geo. Knight & Co., Inc.,

170 F.3d 210, 213 (1999).  As discussed above, the fraudulent representation claim

began to accrue no earlier than November 7, 2003 when HRD first knew or reasonably

should have known about the alleged fraud.

Accordingly, this Court must Deny IKON's motion to dismiss the Chapter 93A

claims since it is not time barred.

**2.    HRD Has Successfully Alleged Facts That May Support A Claim
Under Chapter 93A.**

IKON argues that the Chapter 93A claim should be dismissed because HRD

bases its Complaint on flawed usury, fraud, Article 9, and good faith and fair dealing

claims.

In order to succeed on a Chapter 93A claim, the plaintiff must prove that the

defendant, while engaged in "trade or commerce", engaged in "[u]nfair methods of

competition and unfair or deceptive acts or practices" and that as a result, the plaintiff

suffered a loss of money or property.   Mass. Gen. Laws ch. 93A, § 2(a); *See* Szalla v.

Locke, 421 Mass. 448, 450-451 (1995).  A claim under Chapter 93A does not have to

be premised on a violation of an independent common law or statutory duty, so long as

the conduct complained of falls "'within at least the penumbra of some common-law,

statutory, or other established concept of unfairness,'" or is "immoral, unethical,

oppressive or unscrupulous'".  PMP Associates, Inc. v. Globe Newspaper Co., 366

27

Mass. 593, 595-96 (1975) (citations omitted).

An act is "deceptive" under Chapter 93A ""if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."" Tagliente, 949 F.2d at 7 (citations omitted).  Here, HRD would not have entered into the Second Agreement but for IKON's fraudulent representations.   Massachusetts courts have consistently held that "conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice . . ." Anthony's Pier Four, Inc., 411 Mass. 451, 474 (1991) (citation and internal quotation marks omitted).  As IKON itself admits in its memorandum, facts establishing viable claims of fraud, misrepresentation, or breach of good faith and fair dealing can state a Chapter 93A claim.  See Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 747 (2002); Anthonys Pier Four, Inc., 411 Mass. at 476.  Additionally, a violation of the criminal usury statute is per se an "unfair or deceptive practice."  In re Tavares, 298 B.R. 195, 202 (Bkrtcy. D. Mass. 2003).

Accordingly, this Court must Deny IKON's motion to dismiss the Chapter 93A claim because HRD has successfully alleged facts that may support a claim under Chapter 93A.

## V. **CONCLUSION**

For the foregoing reasons, this Court must Deny IKON's Motion to Dismiss since HRD has stated claims upon which relief may be granted as to all five counts in the Complaint upon which it intends to proceed.

Respectfully submitted this the 27th day of June , 2005


HUMAN RESOURCE
DEVELOPMENT PRESS, INC.

/S/ David J. Noonan
David J. Noonan, Esq.
228 Triangle Street
Amherst, MA 01002
Tel. No.: (413) 549-5491
Fax No.: (413) 549-5156
e-mail: david.noonan@verizon.net
B.B.O. No. 373260