UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUMAN RESOURCE DEVELOPMENT PRESS, INC.<br>Plaintiff<br>v.<br><br>IKON OFFICE SOLUTIONS, INC.<br>& IOS CAPITAL, INC. d/b/a<br>IKON FINANCIAL SERVICES<br>Defendants. | 3:05-CV-30068-KPN |

## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

The defendants, IKON Office Solutions, Inc. and IOS Capital, Inc. (collectively "IKON"), respectfully submit this reply brief in support of their pending motion to dismiss. As demonstrated below, the plaintiff, Human Resource Development Press, Inc. ("HRD"), attempts to evade dismissal by misapplying law, relying on facts not found in its complaint and ignoring caselaw that undermines its claims. The motion should, therefore, be granted.

### I. COUNT 1 IS TIME-BARRED

In its opposition, HRD claims that IKON committed fraud by making the following five statements to induce HRD to execute the 2000 Lease in June 2000:

1. "falsely representing prior to entering into the [2000 Lease] that it was receiving an 'excellent deal;'"

2. "falsely representing after executing the [2000 Lease] that HRD was still receiving an 'excellent deal;'"

3. "falsely representing that HRD was given a significant discount off the list price;"

4. "falsely stating in the fall of 2003 that HRD was given a discount of 15% off the list price;" and

HART1-1267837-1

> 5. "falsely representing that HRD was not required to pay any portion of the service/maintenance or supply costs for the First Equipment after the [2000 Lease] was executed."

(Pl. Opposition, at 10.)

Statements 2 and 4 on this list occurred after HRD had executed the 2000 Lease. Because HRD could not have relied on these statements in executing the 2000 Lease, these statements could not have fraudulently induced HRD to enter that lease. HRD's fraud count cannot be based on these statements as a matter of law.

Statements 1 and 3, the "excellent deal" and "significant discount" statements, are subjective opinions, not facts that could support a fraud claim. These statements convey the speaker's own judgment about the quality or value of the deal and discount. *See McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 575 (1995) (statements of "quality, value, authenticity, or other matters of judgment" are statements of opinion, not fact). In response, HRD merely asks for "the benefit of any doubt or inference." (Opposition, at 12-13.) This standard of review, however, only requires the Court to accept that these statements were actually made, not that these statements of opinion can be deemed actionable statements of fact.

HRD also argues that the "excellent deal" and "significant discount" statements can support a fraud claim because they led HRD to believe that IKON had facts to justify these opinions. (Opposition, at 13.) An opinion may support a fraud claim "if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it." *McEneany*, 38 Mass. App. Ct. at 575. Here, HRD claims that IKON's "superior knowledge as to pricing information" constituted an implication that facts justified the opinion and that it reasonably believed that IKON possessed facts to justify the representations. (Opposition, at 14.) HRD fails, however, to identify what

facts it believed IKON had to justify the "excellent deal" or "significant discount" opinions. Moreover, the opinions on which HRD attempts to base its claim were capable of verification by HRD, making its alleged reliance unreasonable.

Perhaps most importantly, every party to every transaction will evaluate the value of that transaction differently, based on their subjective point of view. As such, there exist no facts that could ever objectively justify or disprove IKON's alleged representation that the 2000 Lease constituted an "excellent deal" and a "significant discount." For that very reason, objective, verifiable facts that contradict an opinion must exist in order for that opinion to support a fraud claim. For example, in *McEneany*, the court found that a realtor's opinion that a condominium unit was "quiet" could support a fraud claim because the realtor had an office at the condominium complex and had been involved in selling other units. 38 Mass. App. Ct. at 575-76. These facts suggested to the purchaser that the realtor knew whether the unit was quiet because she was on-site and had sold other units. *Id.*

The First Circuit recently discussed this principle and provided the following two examples of opinions that supported fraud claims because they suggested that the speaker had facts to support those opinions:

- A corporation told its investors that a particular project was "a great success" and "proceeding smoothing." The corporation expressed these opinions, which it knew were false, to prevent the investors from pulling out the project.

- A car dealer told a potential buyer that a car was in "good condition" when he knew that it was not.

See *Rodi v. Southern N.E. School of Law*, 389 F.3d 5, 14 (1st Cir. 2004). And in *Rodi*, the dean of an unaccredited law school wrote a letter to an applicant that said that the school was "highly confident" that the ABA would grant the school provisional accreditation. *Id.* The plaintiff alleged that the dean, however, knew when he wrote the letter that the school had several

3

disqualifying deficiencies that it probably could not fix. The court found that the "highly confident" opinion could support a fraud claim because the dean knew problems existed at the time he wrote the letter. *Id.*

All of these cases involved opinions that could have been either verified or disproved by objective facts. As such, these representations were not subjective – they were lies. In this case, however, there is no dispute that HRD received a discount from IKON in the 2000 Lease: HRD admits that. (Complaint, ¶ 31.) The dispute is about the quality of that discount – which is a matter of opinion and cannot provide the basis for a fraud claim. Therefore, statements 1 and 3 cannot state a claim for fraud.

Only statement 5 – the allegation that IKON induced HRD into the 2000 Lease by "falsely representing that HRD was not required to pay any portion of the service/maintenance or supply costs for the First Equipment after the [2000 Lease] was executed" – could possibly support a fraud claim. That statement, however, is alleged to have occurred ***before*** HRD executed the lease in June 2000 – more than five years before HRD filed suit. Therefore, any claims arising from this statement are time-barred. Mass. Gen. Laws, ch. 260, § 2A (establishing three-year statute of limitations for fraud and other tort claims).

While HRD recites that a fraud claim accrues when the plaintiff knew or should have known that it has suffered harm as a result of the defendant's actions, (Opposition, at 8-9), HRD never addresses the date on which it ***should have known*** about the alleged fraudulent misrepresentations. "The person claiming justifiable reliance is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation." *Collins v. Huculak*, 57 Mass. App. Ct. 387, 392 (2003) (citing Restatement (Second) of Torts, § 541 cmt. a;

4

*Kuwaiti Danish Comp. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 468 (2003)). The substance of the representations on which HRD bases its claim, however, demonstrates that the veracity, or lack thereof, of the allegedly fraudulent statements could have been revealed through cursory examination or investigation. HRD may have and certainly could have compared the proposed 2000 Lease to other available leases from competitors of IKON. HRD could likewise have sought expert assistance regarding the value of the 2000 Lease, as it apparently did after the transaction. (*See* Complaint ¶ 31.) Thus, whether the 2000 Lease was actually an "excellent deal" and a "significant discount" was not "inherently unknowable" at the time those representations were allegedly made. *See Geo. Knight & Co., Inc. v. Watson Wyatt Co.*, 170 F.3d 210, 213 (1st Cir. 1999) (a claim of fraud is tolled only when the underlying facts were "inherently unknowable" at the time of the alleged injury). Having failed to even attempt to address the date on which HRD *should have known* of its alleged injury, HRD cannot avail itself of the "inherently unknowable" exception to the statutory three-year limitation on fraud claims.

## II. THE MASSACHUSETTS APPELLATE COURT HAS RULED THAT THE LAWS OF USURY DO NOT APPLY TO LEASES

HRD invites the Court to ignore relevant Appeals Court case law and, instead, to reach its own contrary conclusion as to whether the Massachusetts usury statute applies to equipment leases. (Opposition, at 14-18.) In *Allegeny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.*, 21 Mass. App. Ct. 155 (1986), the Massachusetts Appeals Court made clear that the usury statute does not apply to leases. *Id.* at 160. Although that court could not determine, in that case, whether the agreement at issue was a loan or a lease, the court's ruling leaves no room to argue that the usury statute applies to leases because it ***ordered*** that judgment enter for the plaintiff in the full amount of the payments, even those claimed to have been violation of the usury laws, if the trial court concluded that the transaction at issue was a lease and not a loan. *Id.* at 160-63.

Where the courts of the state in which this Court sits have clearly indicated how they would resolve a question of state law, this Court is not free to reach a different conclusion. HRD's invitation must, therefore, be declined and the Count 2 should be dismissed.

### III.   HRD HAS NO REMEDY UNDER ARTICLE 9

In moving to dismiss, IKON demonstrated that, for Article 9 to apply to the 1998 Lease, HRD must have granted to IOS Capital a security interest in the subject copies and to be able to grant such an interest HRD must first have possessed a property interest in those copiers. (Mem. at 13-14.) The terms of the 1998 Lease make clear that HRD had no property interest that in the copiers that it could have transferred to IOS Capital. Therefore, the 1998 Lease is not governed by Article 9 and no remedies under that Article are available to HRD.

In opposing IKON's motion, HRD engages in a torturous mathematical analysis to try to show that the 1998 Lease is a security interest, not a lease notwithstanding the clear, capitalized text in the 1998 Lease. First, this analysis does not support its argument because it is based on financial information for the 2000 Lease, not the 1998 Lease. Second, HRD misstates the law.

HRD claims that Massachusetts law is "well settled that, in determining whether a contract is a 'true lease' or is intended for security, course do not consider what description the parties have given to it, but what is its essential character." (Opposition, at 19 (citing *Rocky River Condo Corp. v. F.D.I.C.*, 855 F. Supp. 489, 491 (D. Mass. 1994).) Such a rule would indeed support HRD's claim by allowing the Court to ignore the plain and controlling terms of the 1998 Lease. The court in *Rocky River Condo Corp.*, however, never said that court's could ignore "what description the parties have given to" the transaction. That court actually said that courts should look to substance over form in determining the nature of the transaction. *Rocky River Condo Corp.*, 855 F. Supp. at 491. The terms of the agreement, to which all parties

agreed, constitute part of the substance of the transaction to which courts should and do look in determining whether Article 9 remedies are available to a lease holder. The text of the 1998 Lease make clear that HRD had no property interest that it could have given to IKON as a security interest.

HRD first tries to show that the 1998 Lease is a security interest because it gave HRD the option to purchase the 1998 Equipment at the end of the lease for nominal additional consideration. *See* Mass. Gen. Law ch. 106, § 1-201(37); (Opposition, at 21.) But HRD erroneously relies on financial information from the 2000 Lease, not the 1998 Lease, to support this argument. Moreover, it does not even discuss the statutory definition of nominal additional consideration but rather tries to use a 1986 Bankruptcy Court case to support its argument that $81,367.77 is nominal. (Opposition, at 22.) The statute defines additional consideration as nominal if it is "less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised." Mass. Gen. Law ch. 106, § 1-201(37). HRD simply cannot show that the 1998 Lease is a security interest because it had an option to purchase the equipment for nominal additional consideration without applying this definition.

HRD also argues that the 1998 Lease could be a security interest because its 5-year term may have been longer than the remaining economic life of the equipment. Again, HRD misstates the law by arguing that the Court "must, as finder of fact, determine what the 'remaining economic life" of the equipment would be at the end of the original term of the agreement." (Opposition, at 22.) And again, HRD ignores the applicable statutory definition. "Remaining economic life of the goods" is determined with reference to the facts and circumstances at the time the transaction is entered into, not at the end of the term. *See* Mass. Gen. Law ch. 106, § 1-201(37). Thus, the ultimate disposition of the copiers after HRD

voluntarily entered into the 2000 Lease is irrelevant to this analysis. Therefore, this argument fails to show that the 1998 Lease created a security interest.

## IV. NEITHER IKON NOR IOS CAPITAL VIOLATED THE COVENANT OF GOOD FAITH AND FAIR DEALING

IKON Office Solutions, Inc. was not a party to either the 1998 Lease or the 2000 Lease at the time they were executed. Therefore, that entity could not have breached the covenant of good faith and fair dealing. The leases show that HRD executed the agreements with IOS Capital, Inc., not IKON Office Solutions, Inc. Contrary to HRD's suggestion, IKON has never suggested that IOS Capital was not a party to the leases: indeed, IKON's opening brief states plainly that the 2000 Lease obligated HRD to pay rent to IOS Capital. (IKON Brief, at 16.)[1]

Turning to the merits of HRD's opposition, HRD now argues – contrary to its complaint – that IKON breached the covenant of good faith and fair dealing by telling HRD that it would not have to pay for the 1998 Lease equipment in the 2000 Lease and then incorporating those payments into the 2000 Lease anyway. (Opposition, at 24.) The Complaint, however, does not allege that IKON made such a statement. In fact, HRD's admits in its Complaint that it "continued to owe for the First Equipment" and "still owed" 35 monthly payments on the 1998 Lease when it entered the 2000 Lease. (Complaint, ¶¶ 25-26.) HRD cannot now change its story to fit to try to survive dismissal.

Equally fatal to HRD's claim is its failure to allege that IKON breached an express contractual term. The implied covenant of good faith and fair dealing punishes intentional bad faith breaches of contract. A breach, therefore, is a necessary element of a claim for violating the covenant of good faith and fair dealing in a commercial contract. *See Kroutik v. Momentix, Inc.*, 2003 WL 1962486, at *6 (Mass. Super. Ct. Apr. 2, 2003) (Van Gestel, J.) ("Without a breach of

---

[1] IKON Office agrees that it assumed IOS Capital's liabilities, if any, arising out of the 1998 and 2000 leases with HRD by way of merger with IOS Capital in March 2004.

the contract, there can be no claim for a breach of an implied covenant of good faith and fair dealing."); *see also Marx v. Globe Newspaper Co., Inc.*, 2002 WL 31662569, at *4-5 (Mass. Super. Ct. Nov. 26, 2002) (Gants, J.) (breach of the implied covenant of good faith and fair dealing arises in two categories – (1) knowingly violating express contract term to secure extracontractual benefits; (2) intentionally depriving an agent of a commission earned and due.)

HRD alleges that it was unfair for IKON to require HRD to pay the remaining obligations on the 1998 Lease after it surrendered the equipment. (Complaint, ¶ 67.) HRD, however, does not allege a breach of contract or articulate how IKON forced HRD to pay benefits to which IKON was not entitled. Indeed, HRD admits that it owed IKON the remaining amount due on the 1998 Lease. (Complaint, ¶¶ 25-26.) HRD cannot simultaneously admit that it owed IKON these payments under the 2000 Lease but nonetheless complain that IKON breached the implied covenant of good faith and fair dealing in recovering those payments. Therefore, Count V fails to state a claim for breach of the covenant of good faith and fair dealing.

## REQUEST FOR ORAL ARGUMENT

IKON respectfully requests oral argument on its motion to dismiss.

DEFENDANTS
IKON OFFICE SOLUTIONS, INC. and IOS CAPITAL, INC.

By _/s/ Bradford S. Babbitt_
Bradford S. Babbitt (BBO# 566390)
e-mail: bbabbitt@rc.com
Brett J. Boskiewicz (BBO# 656545)
e-mail: bboskiewicz@rc.com
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No.: (860) 275-8200
Fax No.: (860) 275-8299

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on July 18, 2005.

_____
Brett J. Boskiewicz