UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
HUMAN RESOURCE DEVELOPMENT  )
PRESS, INC.,                        )
                                    )
       Plaintiff,                   )
                                    )
v.                                  )  3:05-CV-30068-KPN
                                    )
IKON OFFICE SOLUTIONS, INC.         )
& IOS CAPITAL, INC.                 )
d/b/a IKON FINANCIAL SERVICES,      )
                                    )
       Defendants.                  )
_____ )

**PLAINTIFF'S RESPONSE BRIEF IN SUPPORT OF ITS OPPOSITION TO
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

The Plaintiff, Human Resource Development Press, Inc. ("HRD"), respectfully submits this Response to IKON Office Solutions, Inc. and IOS Capital, Inc.'s (collectively "IKON") Reply Brief in Support of Motion to Dismiss ("Reply Brief"). IKON's Motion to Dismiss should be denied because it does not appear *beyond doubt* that HRD can prove *no set of facts* in support of its claims which would entitle it to relief.

**I.     FRAUD AND MISREPRESENTATION.**

HRD asserts in its Complaint that, in order to induce it into executing the Second Agreement, IKON engaged in fraudulent misrepresentations by doing the following:

    1.    falsely representing prior to entering into the Second Agreement that HRD was receiving an "excellent deal";

    2.    falsely representing that HRD was given a significant discount off the list price;

  3. falsely representing that HRD was not required to pay any portion of the service/maintenance or supply costs for the First Equipment after the Second Agreement was executed.

In paragraphs 29, 50 and 51 of its Complaint, HRD has plead that as further evidence of IKON's fraud and misrepresentation prior to HRD's execution of the Second Agreement (misrepresentations nos. 1-3 above) and in an attempt to induce HRD to continue in the Second Agreement, IKON made further fraudulent misrepresentations by:

  4. falsely representing after executing the Second Agreement that HRD was still receiving an "excellent deal";

  5 falsely stating in the fall of 2003 that HRD was given a discount of 15% off the list price; and

  IKON argues in its Reply Brief that since statements no. 4 (falsely representing after executing the Second Agreement that HRD was still receiving an "excellent deal") and no. 5 (falsely stating in the fall of 2003 that HRD was given a discount of 15% off the list price) occurred after HRD executed the Second Agreement, HRD could not have relied on said statements in executing the Second Agreement. IKON misconstrues HRD's argument. Statements nos. 4 and 5 were made to induce HRD to continue under the Second Agreement and not seek to renegotiate or seek legal counsel concerning the same. The fact the HRD has plead additional facts to establish that IKON fraudulently induced HRD into continuing under the Second Agreement is not an argument that misrepresentations nos. 1-3 above do not support a claim for fraud and misrepresentation.

  IKON next argues that statements no. 1 (falsely representing prior to entering into the Second Agreement that it was receiving an "excellent deal") and no. 2 (falsely

2

representing that HRD was given a significant discount off the list price) do not support a fraud claim because the statements "excellent deal" and "significant discount" are subjective opinions, not facts that could support a fraud claim.

"'A representation is one of opinion if its expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment.'" McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995), *quoting* Restatement (Second) of Torts § 538A (1977). Statements of opinion may constitute a statement of fact and thus may be actionable if (1) the opinion is reasonably understood by the recipient as implying that the speaker knows facts to justify the opinion or at least that there are no facts that are incompatible with it, or (2) the speaker possesses superior knowledge concerning the subject matter to which the misrepresentations relate. Id. (citations omitted); In re Stolzoff, 58 Mass. App. Ct. 747, 760 (2003) (citations omitted); *see also* American Life Ins. Co. v. Parra, 63 F. Supp. 2d 480 (D.Del. 1999). Unless the statements of opinion are simply absurd, which is not case, both of the above legal criteria can be determined only through a determination by the finder of fact.

In the case at bar, it was reasonable for HRD to understand that the statements "excellent deal" and a "significant discount" implied that IKON knew facts to justify the opinion or at least that there were no facts incompatible with these statements. Additionally, IKON possessed superior knowledge concerning pricing information and HRD reasonably believed that IKON knew facts to justify the representations it made relative to pricing.

IKON also argues that HRD failed to identify what facts it believed IKON had to justify the "excellent deal" or "significant discount" opinions.  However, HRD is not required to plead with particularity what IKON knew when it made those statements; that is the purpose of discovery.  The court in <u>Rodi</u> found that "[t]he specificity requirement [of Fed. R. Civ. P. 9(b)] extends only to the particulars of the allegedly misleading statement itself. . .The other elements of fraud, such as intent and knowledge, may be averred in general terms."  <u>Rodi v. Southern New England School of Law</u>, 389 F.3d 5, 15 (2004) (citations omitted), *citing* Fed. R. Civ. P. 9(b).[1]

Here, HRD has stated with specificity what statements IKON made which are misleading.  HRD has averred in general terms that IKON had knowledge contrary to these statements.  HRD is not required to plead the exact identity of that knowledge. The finder of fact should determine what IKON knew or did not know when the misrepresentations were made to HRD.  IKON argues in its Reply Brief that "there exist no facts that could *ever* objectively justify or disprove IKON's alleged representation that the [Second Agreement] constituted an 'excellent deal' and a 'significant discount.'" (Reply Brief, page 3).  This is an absurd statement which seeks to pre-empt this Court's fact finding role. <u>It is hard to believe that IKON did not know</u>, based on other similar photocopier contracts it has entered into with other entities or through its knowledge of its competitors' pricing, that HRD was in fact not receiving an "excellent deal" nor getting a "significant discount".

Lastly, IKON argues that statement no. 3 (falsely representing that HRD was not required to pay any portion of the service/maintenance or supply costs for the First

---

[1] "In all averments of fraud . . ., the circumstances constitution fraud . . . shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

4

Equipment after the Second Agreement was executed) is barred by the statute of limitations since it occurred before the Second Agreement was executed in June 2000. *See* Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for fraud claims).

HRD has, on pages 10 and 11 of the HRD First Memorandum, previously argued the three-year statute of limitations has not expired because it was not until November 2003, when it received the Executive Financial Summary that it knew *or reasonably should have known* about the fraudulent misrepresentations.

IKON asserts that the alleged misrepresentation could have been revealed through cursory examination or investigation by comparing the proposed Second Agreement to other available leases from IKON's competitors or sought expert assistance regarding the value of the Second Agreement. However, these two suggestions put forth by IKON are not mere cursory examinations, but full blown investigations. *See* Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 467 (2003) (citation omitted) (the recipient of a fraudulent misrepresentation of fact is ordinarily justified in relying on its truth, although he might have ascertained the falsity of the representation had he made an investigation). "[T]he question, whether the plaintiff exercised due diligence and was justified in placing confidence in the statement of the defendant or should have known from the beginning that [the statement was false],' is one of fact." Collins v. Huculak, 57 Mass. App. Ct. 387, 392 (2003) (citations omitted).

**II.     THE MASSACHUSETTS' USURY LAWS.**

IKON has made no response to HRD's argument contained in pages 15-17 of HRD's First Memorandum that a plain reading of the unambiguous terms of the statute reveals that it does in fact apply to equipment leases.

In its Reply Brief, IKON continues to rely upon the <u>Allegheny</u> case for its contention that the Massachusetts' usury statute does not apply to equipment leases. *See* <u>Allegheny Int'l Credit Corp. v. Bio-Energy of Lincoln, Inc.</u>, 21 Mass. App. Ct. 155 (1985).  The <u>Allegheny</u> court did not fully discuss the merits of the issue of whether the contract at issue in that case was a true lease or a loan, it did not construe the statutory language of the phrase " . . . a loan of . . . other property . . .", and it does not stand for the proposition that IKON would suggest.  <u>Id</u>. at 163.


**III.    ARTICLE 9-FAILURE TO DISPOSE OF COLLATERAL IN A COMMERCIALLY REASONABLE MANNER.**

IKON argues that HRD has no remedy under Article 9 because the terms of the First Agreement make clear that HRD had no property interest in the copiers.  This argument has been previously specifically rebutted on pages 19 and 20 of the HRD First Memorandum.

IKON also argues that HRD's argument contained on pages 19- 23 of the HRD First Memorandum must fail because HRD erroneously relies on financial information from the Second Equipment, not the First Equipment, to support this argument. IKON does not dispute the math contained on pages 21 and 22. Because IKON cannot dispute this math it is reasonable for this Court to conclude that if the purchase price as

6

per the Second Agreement triggers the legal threshold established by <u>In re Access Equipment, Inc.</u>, 62 B.R. 642, 646 (D. Mass. 1986) then upon discovery, HRD may well establish that the purchase price for the First Equipment does the same. Thus, until discovery is completed, HRD of necessity must examine the terms and conditions relating to the Second Agreement and analogize back to the First Agreement.

     IKON next argues that HRD failed to discuss the statutory definition of "nominal additional consideration". The statute provides that "[a]dditional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised." Mass. Gen. Laws ch. 106, § 1-201 (37). However, HRD does in fact cite to a case that construes the statutory definition of "nominal additional consideration". In that case, the court held that if the option price amounts to less than 25% of the total list price, as is the case here, the lease is a security interest. <u>In re Access Equipment, Inc.</u>, 62 B.R. 642, 646 (D. Mass. 1986), *citing* J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code 881 (2d ed. 1980) (defining nominal consideration under the UCC).

     Here, IKON disclosed via the "Executive Financial Summary" on November 7, 2003, that as of that date, HRD's "buyout to return the equipment on this Copy Management Program is $400,828. Your Buyout to own is $482,195.77." If HRD wanted to "purchase" the equipment it only had to pay an additional $81,367.77 ($482,195.77-$400,828) ("Option Price"). The total cost to HRD under the Second Agreement was $758,340 (36 months at $8,949 each and 36 months at $12,116) ("Total Contract Cost"). Thus, the Option Price was only 10.729% of the Total Contract Cost. Since the Option Price is clearly less than the above-referenced 25%, the Second

Agreement, and by analogy the First Agreement, cannot be characterized as a "lease" transaction.

Lastly, IKON argues that HRD misstates the law when it asserts that the Court must determine what the remaining economic life of the equipment would be at the end of the original term of the agreement as opposed to at the time the transaction is entered into. However, either way, the determination of the value of the remaining economic life of the equipment is a factual determination that must be made by the finder of fact.

### IV.   COVENANT OF GOOD FAITH AND FAIR DEALING.

IKON argues that IKON Office Solutions, Inc. was not a party to the First or Second Agreement when said agreements were executed, therefore, that entity could not have breached the covenant of good faith and fair dealing. IKON Office Solutions, Inc. was in fact a party to the First Agreement. On May 28, 1998, IKON Office Solutions, Inc. signed the document entitled Copy Management Program (see, Exhibit "A" to Complaint). Also, even if this Court finds that IKON Office Solutions, Inc. was not an initial party to any of the agreements, it has since assumed responsibility for the agreements. If IKON Office Solutions, Inc. is not a contracting party, why has it received and retained well over $ 100,000 of HRD ?

IKON also argues that HRD now argues- contrary to its Complaint- that IKON breached the covenant of good faith and fair dealing by telling HRD that it would not have to pay for the First Equipment via payments for the Second Equipment and then

incorporating those payments into the Second Agreement. Contrary to IKON's contention, the Complaint does in fact allege those facts. *See* Complaint, ¶¶ 65-67.

IKON goes on to make the disingenuous contention that it could not have breached the covenant of good faith and fair dealing by telling HRD that it would not have to pay for the First Equipment and then charging the same via the Second Agreement, since HRD admits in paragraphs 25-26 of the Complaint that it continued to owe for the First Equipment when it executed the Second Agreement. The two paragraphs that IKON references of the Complaint are taken out of context. HRD was merely attempting to lay out the contractual terms of the relevant agreements. It is clear from the Complaint that HRD asserts that because of IKON's representations and its retention of the First Equipment that once the Second Agreement was executed, HRD was no longer responsible for making payments for the First Equipment. *See* Complaint, ¶¶ 32, 34, 36, 40, & 41.

IKON also attempts to argue that HRD failed to allege that IKON breached an express contractual term. However, HRD has alleged that IKON has breached the covenant of good faith and fair dealing by imposing and then collecting charges for 1) HRD's use of the First Equipment after it was surrendered, and 2) service and maintenance fees for the same after previously representing that the same would not be charged. The aforementioned are most definitely allegations of breaches of contract.

**V.   CONCLUSION**

For the foregoing reasons, IKON's Motion to Dismiss as to all claims should be Denied because it does not appear beyond doubt that HRD can prove no set of facts in

support of its claims which would entitle it to relief.  Conley v. Gibson, 78 S.Ct. 99, 102 (1957); Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000) (citations omitted).  This Court's present task is not to decide whether HRD will ultimately prevail, but whether it is entitled to undertake discovery in furtherance of the pleaded claims.  *See* Rodi, 389 F.3d at 13 (citation omitted).

     Nonetheless, to the extent that this Court determines that additional facts need to be pleaded, HRD reserves its right to amend its Complaint.

Respectfully submitted this the 1st day of August, 2005.

                                  HUMAN RESOURCE
                                  DEVELOPMENT PRESS, INC.

                                  /S/ David J. Noonan
                                  David J. Noonan, Esq.
                                  228 Triangle Street
                                  Amherst, MA  01002
                                  Tel: (413)  549-5491
                                  Fax:(413)  549-5156
                                  Email: david.noonan@verizon.net
                                  B.B.O. NO. 373260

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HUMAN RESOURCE DEVELOPMENT PRESS, INC., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )   3:05-CV-30068-KPN ) |
| IKON OFFICE SOLUTIONS, INC. & IOS CAPITAL, INC. d/b/a IKON FINANCIAL SERVICES, | ) ) ) ) ) |
| Defendants. | ) ) |

## **CERTIFICATE OF SERVICE**

The undersigned verifies that Human Resource Development Press, Inc.'s RESPONSE BRIEF IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS was served upon counsel for the Defendants, by mailing the same, by first class mail, postage prepaid to: Bradford S. Babbitt, Robinson & Cole LLP, 280 Trumbull Street, Hartford, CT 06103-3597 on the 1st of August, 2005.

        Human Resource Development Press, Inc.
        By Its: Counsel

        /S/ David J. Noonan
        David J. Noonan, Esq.
        228 Triangle Street
        Amherst, MA 01002
        Tel: (413) 549-5491
        Fax: (413) 549-5156
        MA Bar # 373260

Case 3:05-cv-30068-KPN    Document 17    Filed 08/01/2005    Page 12 of 12