UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUMAN RESOURCE DEVELOPMENT PRESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> IKON OFFICE SOLUTIONS, INC., & IOS CAPITAL, INC., d/b/a/ IKON FINANCIAL SERVICES, <br><br> Defendants. | 3:05-CV-30068-KPN |

**RESPONSE TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

Human Resource Development Press, Inc.'s ("HRD") Motion for Leave to File a Second Amended Complaint ("HRD's Motion") should be granted. Pursuant to an appropriate reading of Fed. R. Civ. P. 15(a), "leave [to amend] shall be freely given when justice so requires." Contrary to IKON's assertions, the proposed amendments are clearly not "futile," "made in bad faith," or "the product of undue delay or a dilatory tactic on the part of the movant." In fact, the amendments were made pursuant to this Court's briefing schedule governing timeliness of amendments to pleadings. IKON's assertion that HRD's proposed amendments are subject to a "more stringent" requirement than the otherwise "liberal amendment standard" is unfounded and has no basis in law. *See*,

1

<u>Defendant's Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint</u> p. 2-3.

### A. HRD's MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT SHOULD BE "FREELY GIVEN" PURSUANT TO THE LIBERAL STANDARD OF Fed. R. Civ. P. 15(a).

In its opposition, IKON claims that HRD's motion to amend is somehow subject to a more stringent standard of review, and must be supported by "substantial and convincing evidence in support of its amended claims." IKON makes a partial quotation of the legal standard in <u>Lumbermens Mut. Cas. Co. v. Grinnell Corp.</u> in support of its argument. *See*, <u>Defendant's Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint</u> p. 2-3.  However, a full recitation of the standard illustrates the error in IKON's assertions: "[t]he liberal standard for amendment becomes more stringent, however, after the opposing party files a motion for summary judgment. In that event, the plaintiff is required to provide 'substantial and convincing evidence' in support of its amended claims."  477 F.Supp. 327, 334 (D.Mass. 2007) *citing* <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir.1994).

The critical element missing from IKON's argument is that HRD **did not** file its motion to amend after IKON filed its motion for summary judgment.  Both motions were docketed on the very same day, July 10, 2007, the tracking order deadline for motions to amend pleadings.  Therefore, HRD's motion to amend was not filed "after the opposing party files a motion for summary judgment," and

2

the Court should assess HRD's motion to amend its complaint under the liberal standard articulated in Fed. R. Civ. P. 15(a).

      **B.**    **THE COURT SHOULD ALLOW HRD's MOTION TO AMEND THE PLEADING ON GROUNDS THAT THE MOTION WAS FILED WITHIN THE COURT'S OWN SCHEDULING ORDER FOR AMENDMENTS TO THE PLEADING.**

Under Fed. R. Civ. P. 15(a) a proposed amendment should be "freely granted' subject to a few stated qualifications. The Court can deny the amendment when it would be "futile, made in bad faith, the product of undue delay, or a dilatory tactic on the part of the movant." *See,* Patoski v. Jackson, 477 F.Supp.2d 361, 362 (D.Mass. 2007), *See also,* Acosta-Mestre v. Hilton Intern. of Puerto Rico, Inc., 156 F.3d 49, 51 (1st Cir. 1998) (citing "undue delay" and "undue prejudice" as reasons supporting the denial of amendment.) In its briefing schedule, this Court established [DATE] as the date for parties to file motions to amend the pleadings. HRD filed its motion on July 10, 2007 according to the parameters of the Court's schedule. To argue that HRD's motion was "made in bad faith," "a dilatory tactic" or the product of "undue delay" has no basis in fact or law.

Nor was IKON unduly prejudiced by HRD's motion to amend the pleadings. IKON elected to file its motion for summary judgment on the same date as the deadline for amendments to pleadings. This was certainly IKON's prerogative, but this fact alone does not mean that IKON was prejudiced in its

3

receipt of HRD's motion to amend the same day that its motion for summary judgment was filed.

The cases relied upon by IKON in its motion entail fact scenarios much different from the facts at issue in this case.  None of the cases cited by IKON explicitly deal with cases in which the party seeking amendment filed its motion to amend according to the Court's briefing schedule.  The cases cited generally deal with plaintiffs who seek to add additional parties or additional counts that would require the court to re-open substantial discovery, or amendments which are subject to the more stringent "substantial evidence" standard articulated in Lumbermens Mut. Cas. Co. v. Grinnell Corp., or motions which were the product of extreme delay.  See, Hutchins v. Zoll Medical Corp., 430 F.Supp.2d 24 (D.Mass. 2006) (applying the "substantial evidence" standard); Resnick v. Copyright Clearance Center, Inc., 422 F.Supp.2d 252 (D.Mass 2006)(amendment which sought to add a state claim three years after the corresponding federal claim was dismissed constituted "undue delay."); Acosta-Mestre v. Hilton Int'l of P.R., 156 F.3d 49 (1st Cir. 1998)(denying plaintiff's motion to amend to add a new party when such an amendment would delay discovery by four months and trial by twelve months.); Lumbermens Mut. Cas. Co. v. Grinnell Corp., 477 F.Supp.2d 327, 334 (D.Mass. 2007) (denying motion to add new counts according to the "substantial evidence" standard.)

The facts in this case are, if anything, more similar to the facts in Corey v. Look, 641 F.2d 32 (1st Cir. 1981).  In Corey, the Court permitted the plaintiff to amend its complaint notwithstanding a fifteen month delay from the

4

amendment and the opposition's motion to dismiss. The Court found that such a delay was not the product of undue delay, nor was the defendant unduly prejudiced by the amendment because the substance of the plaintiff's amendments were stemmed from conducting discovery. Id. at 38. In this case, the delay was of a shorter duration than the delay in Corey (and considerably less than the three year delay in Resnick, the case relied upon by IKON.) Also, much of HRD's amendments stem from information gathered through conducting discovery which ended only 30 days earlier.[1] However, even Corey can be distinguished from the case at hand because there is no evidence in Corey that the proposed amendments were filed pursuant to the court's briefing schedule.

### C.    RESPONSE TO IKON ARGUMENT THAT THE PROPOSED AMENDMENTS TO COUNT IV ARE FUTILE

HRD has alleged in its Amended Complaint that while IKON has asserted that both the First Agreement and the Second Agreement were lease agreements, HRD has asserted that both were substantively purchase and sale agreements and not lease agreements, (Am. Complaint ¶ 25 & 26 ). Pursuant to Count IV, HRD has plead in the alternative and asserted that if IKON is correct and both the First and Second Agreements were leases then IKON has failed to comply with Mass. Gen. Laws ch. 106 § 2A , et seq.; or alternatively if both agreements were purchase agreements then IKON failed to dispose of the First Equipment in a commercially reasonable manner, (Am. Complaint ¶ 64-66 ).

---

[1] HRD notes that pursuant to an agreement by IKON' counsel written follow-up responses to questions posed to one of IKON's Rule 30 (b)(6) deponent are still outstanding.

The factual issue of whether the First Agreement was a lease or purchase and sale agreement has been determined and all issues concerning the same have been foreclosed due to IKON's failure to timely respond to HRD's Request for Admissions nos. 22- 53 copy of which was attached to and marked as Exhibit "3" to HRD's Memorandum in Support of Opposition to Motion for Summary Judgment. The failure of a party to respond to the opposing party's Request for Admissions operates as a constructive admission of each request.  *See,* Fed. R. Civ. Pro. 36(a) (request not answered within thirty days of receipt is deemed admitted.) Any matter admitted is considered "conclusively established." Fed. R. Civ. Pro. 36(b).  *See,* Farr Man & Co., Inc. v. M/V Rozita 903 F.2d 871, 876 (1st Cir. 1990). Also see, Duncan v. Santaniello v. Duncan, 1996 WL 121730 (D.Mass) (holding that "the use of admissions to 'conclusively establish' such facts as are not disputed is precisely the reason that Rule 36 was adopted.") In particular through requests for admission No. 52, HRD has established that the First Equipment could have been purchased by HRD for less than 25% of the total of all of the first equipment monthly charges. See also Aff. of G. Carkhuff In Support of HRD's Opposition to Motion for Summary Judgment ¶ 29.

Separate and apart from the legal effect of IKON's failure to respond to HRD's 53 requests to admit facts, HRD through the affidavit of Gregory Carkhuff, HRD has established that:

> 1) in July 2000, more than 2 ½ years before the expiration of the First Agreement the First Equipment was virtually worthless, (G. Carkhuff Aff. ¶ 24 ); and

6

> 2) IKON itself established that at the end of the lease the Oce 3 respectively would have respectively a "residual value" of only $11,820 and $6,330, (G. Carkhuff Aff. ¶ 25 ); and
>
> 3) IKON offered to sell the Second Equipment to HRD pursuant to the Second Agreement and the First Agreement and the Second are substantially identical, (G. Carkhuff Aff. ¶ 29 ).

IKON's own actions of destroying the Oce 3100 and selling the Oce 3165 for only for only $4500, coupled with its own determination of nominal residual value are facts that must establish that HRD could have purchased the first equipment for less than the 25% standard established by *In re Access Equip., Inc.,* 62 B.R. 642, 646 (Bankr. D. Mass. 1986). Additionally, these same facts establish that the "economic useful life of the First Equipment was less than 60 months, i.e., its term" (see, Memorandum and Order, dated January 12, 2006, P. 15)

IKON through its Executive Financial Summary dated November 7, 2003 (Exhibit "D. HRD Am. Complaint) established that HRD could purchase the Second Equipment, (G. Carkhuff Aff. ¶ 29 ). The total cost to HRD under the Second Agreement was $ 758,340 (36 months at $ 8,949 each & 36 months at $ 12,116) ("Total Contract Cost"). On November 7, 2003, the date of the "Executive Financial Summary", HRD had 33 months remaining on the term of the agreement. Those last 33 months were at a cost of $ 12,116 per month, totaling $399,828. Through the "Executive Financial Summary" IKON discloses that if

HRD wants to return the equipment in November 2003, HRD must still pay the remaining 33 months or $ 400,828[2]. However, if HRD wants to "purchase" the equipment it only has to pay an additional $81, 367.77 ( $ 482,195.77 – $ 400,828) ("Option Price"). Thus, the Option Price was only 10.729% of the Total Contract Cost   ($81,367.77 X 100  ÷ 758,340).

The Massachusetts Uniform Commercial Code controls the issue of whether a personal property contract is a true lease or a security agreement. Mass. Gen. Laws, ch. 106, § 1-201(37); *Carlson v. Giachetti*, 35 Mass. App. Ct. 57, 59 (1993); *Rocky River Condo Corp. v. F.D.I.C.,* 855 F. Supp. 489, 492 (D. Mass. 1994).  Under Massachusetts law, it is well settled that, in determining whether a contract is a "true lease" or is intended for security, courts do not consider what description the parties have given to it, but what is its essential character.  *Rocky River Condo Corp.,* 855 F. Supp. at 491.  Moreover, "[i]n determining whether a transaction involves a 'true lease' or a disguised security interest, the court may consider factors outside the lease as well as the contents of the lease."  *In re APB Online, Inc.,* 259 B.R. 812, 817 (Bkrtcy. S.D.N.Y. 2001).

It is the established rule in Massachusetts that if the option price is less than 25% of the original price of the leased property, then the lease is intended for security.  *See In re Access Equip., Inc.,* 62 B.R. 642, 646 (Bankr. D. Mass. 1986) ("[I]f the option price amounts to 25% or more of the total list price, then the 'lease' is not one intended for security."). Because the Option Price is clearly

---

[2] HRD assume the de minimums discrepancy between the $ 400,828 and the $ 399,828 are early surrender or transportation fees.

less than the above referenced twenty- five (25) %, the Second Agreement and by analogy the First Agreement cannot be characterized as a "lease" transaction.

HRD has established the facts to support its argument that both the First Agreement and the Second Agreement or purchase and sale agreements and not leases. As a result, title to the Second Equipment should be determined to be held by HRD and title to the First Equipment should also be determined to have previously been held by HRD. IKON's cavalier destruction of the Oce 3100 and its conversion of the value of the Oce 3165, be it the $4,500 IKON received or a different market value, are both actionable pursuant to Count IV. As a result of this determination, IKON's argument that HRD's attempts to amend Count IV would be futile has no merit.

### D.        CONCLUSION

IKON has failed to establish that the Court should disregard the otherwise liberal application of Rule 15(a) in permitting amendments to pleadings. HRD's proposed amendments are not made in bad faith, is not a dilatory tactic, the product of undue delay, unduly prejudicial, or unduly burdensome. In fact, the amendments were proposed according to this Court's briefing schedule for amendments to pleadings. Finally, HRD's request to amend Count IV has substantial merit as its proposed amended claim has significant factual support. Accordingly, the Court should grant HRD's MOTION.

Respectfully submitted this the 9th day of August 2007.

                                          The Plaintiff, Human Resources
                                          Development   Press, Inc.
                                          By It's Attorney,

                                          <u>/S/ David J. Noonan</u>
                                          David J. Noonan, Esq.
                                          228 Triangle Street
                                          Amherst, MA  01002
                                          (413) 549-5491
                                          (413) 549-5156 (fax)
                                          BBO # 373260

## **CERTIFICATE OF SERVICE**

The undersigned verifies that Plaintiff's Motion Pursuant To Local Rule 7.1(B)(3) For Leave To File A Response To Defendant's Opposition was served by electronic mail notice upon the counsel and/or parties. The following is the list of attorneys who are currently on the list to receive e-mail notices and service for this case.

- **Bradford S. Babbitt**        **Brett Boskiewicz**

    <u>bbabbitt@rc.com</u>        bboskiewicz@rc.com

The following is the list of attorneys who are currently on the list to receive service and notices for this case by regular mail. **None**

                                            Human Resource Development Press, Inc.
                                            By Its: Counsel

                                            <u>s/s David J. Noonan, Esq.</u>