# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUMAN RESOURCE DEVELOPMENT PRESS INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    3:05-CV-30068-KPN |
| | : |
| IKON OFFICE SOLUTIONS, INC. & IOS CAPITAL, INC. d/b/a IKON FINANCIAL SERVICES, | : |
| | : |
| | : |
| Defendants. | : |

## JOINT PRETRIAL MEMORANDUM

**1.    STATEMENT OF EVIDENCE**

   **A.    Plaintiff**

   The Plaintiff's complaint stems from two contracts for photocopiers executed by the parties. In May and June of 1998, HRD and IKON executed two documents ("First Agreement") whereby IKON provided HRD with two (2) commercial grade copiers - an Oce 3100 and Oce 3165 - (the "First Equipment").

   The contract term of the First Agreement was for sixty (60) months. Pursuant to the First Agreement, HRD agreed to pay FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) per month for the first thirty-six (36) months of the contract term and FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) for the remaining twenty-four (24) months of the contract term (jointly, the "First Equipment Monthly Charges"). The First Equipment Monthly Charges included service/maintenance and supplies.

The First Equipment failed to meet HRD's copying needs and IKON's service technicians recommended that in order to obtain a high production photocopying capacity HRD would have to "upgrade" its photocopying/printing equipment.

IKON's equipment specialist, Jeffrey Snyder, contacted HRD and asked for the opportunity to demonstrate the effectiveness of photocopying/printing equipment made by Canon.  During HRD's first conversations with Jeffrey Snyder, he specifically represented to HRD that IKON would simply swap the First Equipment for the new equipment that was under consideration and that HRD would have no further payment obligations for the First Equipment and that the new equipment would be paid for through a new contract.

The same representations were made by Jeffrey Snyder to Robert Carkhuff  before HRD confirmed that it was interested in entertaining a specific proposal for the use of the Canon equipment. Finally, on June 14, 2000 Jeffrey Snyder and two associates presented IKON's written proposal for the Canon equipment entitled " Executive Summary". In the Executive Summary did not disclose that HRD would be paying for the First Equipment through the Second Agreement. Robert Carkhuff confirmed that the written proposal was for the contract that he and Jeffrey Snyder had previously discussed wherein Jeffrey Snyder had represented that HRD would have no further payment obligations for the First Equipment under the proposed new contract. While discussing the proposal, Robert Carkhuff specifically questioned Jeffrey Snyder as to why the monthly payments for the proposed agreement for the Canon equipment were so much more expensive than the monthly payments for the First Equipment. Instead of disclosing that the monthly payments for the proposed new contract would include payments for the balance due under the First Agreement, Jeffrey Snyder gave Robert Carkhuff four different reasons why the payments were so much higher.

On June 19, 2000 HRD executed a second agreement with IKON (the "Second Agreement") relating to photocopying/printing equipment manufactured by Canon. (the "Second Equipment")

The Plaintiff will seek to introduce evidence to establish that it reasonably relied on intentional misrepresentations of material fact and that in reliance upon said misrepresentations it executed the Second Agreement and has suffered damages as a result.

### B.     Defendant

IKON expects to offer evidence that shows that Jeffrey Snyder did not make any false statements to HRD.  Specifically, Snyder will testify that Robert Carkhuff did not ask Synder what would happen to the First Lease when HRD executed the Second Lease and that Snyder did not tell Robert Carkhuff that HRD would not have any further obligation for the First Equipment after it signed the Second Lease.

Snyder's testimony will detail the lengthy process that IKON and HRD went through to evaluate the Second Equipment, the benefits that the Second Equipment offered HRD's business operations, the discussions between HRD and IKON concerning the financial terms of the Second Lease, and the installation of the Second Equipment at HRD.  Al Maximino and Doug Thornton were involved in this process as well and may be called to testify about the process and their interactions with HRD.  Snyder will also discuss the Accounting Value Statement, including how and why he created that document and gave it to HRD.

IKON will also offer testimony from Glenn Robbins, its former account representative who was responsible for HRD's account during 2003 and early 2004.  Mr. Robbins will testify about IKON's meetings with HRD's Gregory Carkhuff in the fall of 2003 and his subsequent discussions with HRD during the following months concerning HRD's need and desire to

3

decrease its monthly payments on the Second Lease.  Robbins will testify that IKON gave HRD a document titled "Executive Summary" in November 2003, which detailed the components of the Second Lease's monthly payments.  This document clearly indicated that the Second Lease's payments included the remaining obligation on the First Lease.  Robbins will also testify that Gregory Carkhuff did not question this fact, express any surprise about it, or ask IKON to reduce or eliminate this portion of the payment.  Carkhuff inquired about eliminating the service and supply component and possibly refinancing the equipment costs and remaining obligation. Robbins will testify that IKON could not get HRD approved for refinancing at this time and that HRD refused to obtain financing on its own from a third party lender and therefore the discussions between IKON and HRD ceased in February 2004.

IKON also expects to offer evidence, through a representative from Danka, a document production equipment service company.  IKON expects that the Danka representative will testify that Danka has provided service to HRD for the Second Equipment from time to time during the period from May 2004, when HRD made its last payment on the Second Agreement, to the present.

**2.    STATEMENT OF FACTS**

The parties agree and stipulate to the following facts:

1.    HRD creates, owns, and publishes certain assessment tests, human resource training materials, and various other training and development materials.

2.    HRD has had a business relationship with IKON or its predecessors since at least 1987.  This relationship has involved at least three lease agreements – a 1996 lease agreement for an Oce 2600 document reproduction machine and the 1998 and 2000 lease agreements that are the subject of this lawsuit.

3.      IKON's business includes, among other things, leasing, renting, and selling document production equipment and services.

4.      The Second Agreement contract was between HRD and IOS Capital, Inc., IKON Office Solutions, Inc.'s former subsidiary and finance company.  IOS Capital, Inc. sold the majority of its lease portfolio and operations in an asset sale to General Electric Capital Corporation in 2004 (and later sold the remaining lease portfolio).  IOS Capital, Inc.'s successor, IOS Capital LLC was merged into IKON Office Solutions, Inc. on or about March 30, 2004

5.      On or about May 20, 1998, HRD and IKON entered into a written agreement concerning HRD's use of two document reproduction machines (the "First Agreement ") – an Oce 3100 and an Oce 3165 (collectively, the "First Equipment").

6.      In early 2000, document production technology evolved and Canon Inc. introduced its ImageRunner 110 digital printing system.

7.      The ImageRunner 110 was a new digital document production system that offered near offset press quality printing and high speed production capacity.

8.      An IKON service technician told HRD about the new technology and suggested that it look into the benefits that the ImageRunner could offer HRD's business.

9.      HRD contacted its IKON account representative and began a several-month process of evaluating the ImageRunner product line.

10.     This evaluation process included several meetings between IKON and HRD personnel to assess HRD's business needs, demonstrate the ImageRunner technology, and inspect and assess HRD's facilities to determine installation logistics such as electric service, network requirements, and physical space requirements.  Jeffrey Snyder was one of IKON's representatives in discussing the terms of the proposed new agreement.

11.    HRD was pleased with the technology and eventually decided to implement a Canon ImageRunner 110, ImageRunner 330, ImageRunner 210, and a CLC 900 (collectively, the "Second Equipment") into its business operations.

12.    On or about June 14, 2000, IKON's Jeff Snyder, Doug Thornton, and Al Maximino met with HRD's President, Robert Carkhuff, to present the terms of a proposed agreement and discuss the logistics of installing the Second Equipment. This meeting detailed the delivery and installation process, the removal of the First Equipment, training that IKON would give HRD's staff, services that IKON would provide to minimize the production downtime during installation, and the financial terms of the proposed agreement.

13.    On or about June 19, 2000, Snyder, Thornton, and Maximino met with Robert Carkhuff again to finalize the proposed agreement. During this meeting, Robert Carkhuff executed a written agreement concerning HRD's use of the Second Equipment (the "Second Agreement ").

14.    Prior to executing the Second Agreement, Robert Carkhuff and IKON both knew that approximately $200,000 remained due on the First Agreement.

15.    The Second Agreement  was a 72-month agreement that required HRD to pay $8,949.00 per month for the first thirty-six months and $12,116.00 per month for the final thirty-six months.

16.    The Second Agreement 's monthly payments included, inter alia, charges for use of the Second Equipment, charges for services and supplies for the Second Equipment, and charges to satisfy the remaining $119,996.00 that HRD owed for the equipment charges on the First Agreement.

6

17.     In July 2000, HRD asked Jeff Snyder to provide HRD with the costs of the Second Equipment for insurance and/or accounting purposes.  In response to this request, Jeff Snyder prepared an Accounting Value Statement for the Second Equipment of that equipment and gave it to HRD in July 2000.

18.     IKON installed the Second Equipment at HRD in July 2000.

19.     IKON removed the First Equipment from HRD's facilities in or about July 2000.

20.     HRD contacted IKON in the fall of 2003 and informed IKON that it had been having financial problems for the past three years and had lost over $700,000 during that time.

21.     HRD told IKON's Glenn Robbins that HRD was evaluating the business finances to determine whether to continue the business, liquidate, or file for bankruptcy. HRD asked to meet with IKON to discuss ways to lower HRD's monthly payment obligation.

22.     Robbins met with Don Collins and Greg Carkhuff on October 29, 2003.

23.     At the October 29, 2003 meeting between IKON and HRD, the parties discussed HRD's need to reduce its monthly payments.

24.     At the October 29, 2003 meeting, HRD asked Robbins for a written disclosure of what constituted all the charges included in the Second Agreement.  Robbins did not have that information but told HRD that he would get the figures and get back to them.

25.     IKON met with Collins and Greg Carkhuff again on November 7, 2003.  Robbins, Paul Lee, a Director of Finance, and Joe McGrath, a Business Development Manager, attended this meeting.

26.     Robbins prepared and presented a written financial summary dated November 7, 2003 that included the information that HRD had requested at the October 29th meeting.

7

27.     At the November 7, 2003 meeting, IKON agreed to reduce the service and supply component by approximately $1,300 per month and waive a late fee on a recent invoice. IKON's agreement to reduce the service and supply component was based in part on IKON's review of HRD's actual monthly usage history for the Second Equipment and a reduction in the minimum number of copies per month from 300,000 to 250,000; additional copies above 250,000 would be subject to an additional charge.  IKON also agreed to evaluate whether HRD could re-finance and extend the Second Lease for a longer period of time, which would reduce the monthly payment amount.

28.     After the November 7, 2003 meeting, Greg Carkhuff sent an e-mail to Paul Lee expressing his appreciation for the financial concessions that IKON had made and stating that he looked forward to receiving a proposal to re-finance the Second Lease.

29.     Greg Carkhuff informed IKON during late November or early December 2003 that HRD had obtained quotes for other document printing equipment from one of IKON's competitors and asked IKON to provide a quote for the same or a similar configuration of equipment.  Glenn Robbins attempted to put together such a quote, but at that time HRD did not qualify for a new lease agreement with IKON for the same or similar configuration of equipment that the competitor had quoted.  Glenn Robbins met with Greg Carkhuff on January 22, 2004 and informed him that HRD did not have the financial ability to qualify for a new lease with IKON for the same or similar configuration of equipment that the competitor had quoted and therefore IKON could not give HRD a quote for the equipment that the competitor had proposed.

30.     The discussions between IKON and HRD ended in February 2004 when Greg Carkhuff sent an e-mail to IKON that read:  "Unfortunately things are not working out the way we hoped with business or the restructuring.  I am therefore turning everything over to our

attorney David Noonan.  You should direct all your inquiries to him.  For everybody's reference, I am including contact information below."

31.    HRD made its monthly payments on the Second Lease until May 2004.   It has not made a payment since then.

32.    HRD still has possession of the Second Equipment.

33.    HRD's fraud allegations first surfaced in a demand letter that IKON received from HRD's attorney in September 2004.

34.    HRD's September 2004 demand letter accused IKON of telling HRD that the Second Lease would not include the service and supply component of the First Lease.  It did not claim that IKON told it that the Second Lease would not include any of the remaining obligation on the First Lease.  That allegation appeared for the first time when HRD filed this lawsuit in March 2005.

35.    IKON discussed the September 2004 demand letter with HRD's attorney by telephone but did not respond to that letter in writing.

**3.    CONTESTED ISSUES OF FACT**

1.    Before HRD executed the Second Agreement, did Robert Carkhuff ask IKON what IKON would do with the First Equipment if HRD entered into a new agreement for new equipment?

2.    Before HRD executed the Second Agreement, did Robert Carkhuff ask IKON what IKON would do with the First Agreement if HRD entered into a new agreement for new equipment?

3.      Before HRD executed the Second Agreement, did Robert Carkhuff ask Jeffrey Snyder whether HRD would have any financial obligations under the First Agreement after HRD executed the Second Agreement?

4.      Did Jeffrey Snyder tell Robert Carkhuff that HRD would not have any further payment obligations for the First Equipment after HRD executed the Second Agreement?

5.      Would HRD have refused to enter the Second Agreement if it had known that the Second Agreement included the remaining payment obligations on the First Equipment?

6.      If HRD did in fact rely on any false statement made by IKON when it decided to enter the Second Agreement transaction, was HRD's reliance on such a statement was reasonable under the circumstances?

7.      Did HRD incur any financial damages as a result of its reliance on any false statement made by IKON?

8.      Could HRD have known in July 2000 that the Second Lease could have included the remaining obligation due on the First Equipment?

**4.      JURISDICTIONAL QUESTIONS**

None.

**5.      QUESTIONS RAISED BY PENDING MOTIONS**

Does Federal Rule of Civil Procedure 37(c)(1) preclude HRD from offering any evidence at trial concerning damages?  (See IKON's Motion in Limine to Preclude Evidence of Damages, Oct. 16, 2007.)

The parties plan to file other motions in limine on October 19, 2007.

6.    **ISSUES OF LAW**

The parties' evidentiary issues, including legal authority, are set forth in their respective motions in limine.

IKON filed a motion in limine on October 16, 2007 seeking to preclude HRD from offering any evidence at trial concerning damages.  This motion sets forth the legal issue of whether Federal Rule of Civil Procedure 37(c)(1) precludes HRD from offering any evidence at trial concerning damages.

HRD opposes this motion.

HRD has proposed a jury instruction claiming that its damages include costs, expenses, and legal fees that it will incur in defending the lawsuit that General Electric Capital has filed against it and  relies upon *Harrison V. Textron, Inc.*, 367 Mass. 540, 555, 328 N.E.2d 838, 846 (1975).   HRD claims it has already incurred certain costs, expenses and legal fees in defending this civil action but also seeks the right to introduce evidence as to what its reasonably calculated future expenses will be.

IKON has objected to this request because such damages are speculative and not within the realm of reasonable certainty.  *See Pierce v. Clark*, 66 Mass. App. Ct. 912, 914 (2003) ("While it is true that a plaintiff need not prove damages with mathematical certainty, 'damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty.")

7.    **REQUESTED AMENDMENTS TO THE PLEADINGS**

None except Plaintiff reserves the right to move to amend its pleadings to conform to the evidence.

**8.    ADDITIONAL MATTERS TO AID IN DISPOSITION OF THE CASE**

The parties are scheduled to mediate this matter with Judge Dein in Boston on October 24, 2007.

**9.    ESTIMATED LENGTH OF TRIAL**

The parties estimate that this jury trial will take two to three days, including jury selection.

**10.    WITNESSES**

**A.    Plaintiff**

HRD may call the following witnesses as fact and/or rebuttal witnesses:

Robert Carkhuff resides in Amherst, Massachusetts is the former chief operating officer of

1.    HRD and present Publisher of HRD and will testify as to, inter alia, HRD's experience in utilizing the First Equipment and Second Equipment and his involvement in negotiations and interactions with IKON concerning the First Agreement and Second Agreement.

2.    Gregory Carkhuff resides in Amherst, Massachusetts is the chief operating officer of HRD and will testify as to, inter alia, HRD's and his involvement in negotiations and interactions with IKON concerning the First Agreement and Second Agreement.

3.    Joseph Bach resides in South Hadley, Massachusetts is an employee of HRD who will testify as to his and HRDs experience in utilizing the first equipment and certain representations made to HRD concerning the first equipment.

4.    Don Collins resides in Westfield and will testify as to certain conversations between HRD and IKON in October and November 2003.

12

5.     Jeffrey Snyder, an employee of IKON,  was the primary person on behalf of IKON with whom HRD discussed the potential exchange of the First Equipment for the Second Equipment and the effect of said exchange on HRD' one s obligations pursuant to the First Agreement. Additionally, Jeffrey Snyder will testify concerning various documents produced by IKON and explain the words and numbers contained in said documents.

6.     HRD reserves the right to call additional rebuttal witnesses based on the testimony adduced through IKON's witnesses.

7.     HRD's proposed exhibits may be introduced through any of the above referenced witnesses.

**B.     Defendant**

IKON may call the following witnesses as fact or rebuttal witnesses:

1.     Jeffrey Snyder
   - 655 Winding Brook Drive
     Glastonbury, CT 06033
   - Mr. Snyder was a production printing specialist for IKON in 2000 and had specialized training and knowledge about the Second Equipment.  He will testify about his involvement and interactions with HRD during 2000 concerning the Second Equipment and the Second Lease.

2.     Glenn Robbins
   - 33 Marsh Hill Road
     Brimfield, MA 01010
   - Mr. Robbins was IKON's account representative for HRD during 2003 and early 2004.  He will testify about his interactions with HRD in that capacity during that time period.

3.     Al Maximino
   - 655 Winding Brook Drive
     Glastonbury, CT 06033
   - Mr. Maximino was a sales manager for IKON in 2000 and was involved in the Second Lease transaction.  He may testify about his involvement with the Second Lease transaction and his interactions with HRD during that transaction.

13

4.    Doug Thornton
- Westfield, MA
- Mr. Thornton was IKON's account representative for HRD during early to mid-2000 and was involved in the Second Lease transaction. He may testify about his involvement with that transaction and his interactions with HRD during the time period when he served as account representative for HRD.

5.    Kenneth Stearns
- 655 Winding Brook Drive Glastonbury, CT 06033
- Mr. Stearns was a service technician with IKON during the time period when HRD leased the First Equipment and Second Equipment. Mr. Stearns was involved with servicing this equipment for HRD. He may be called to testify about the service that IKON provided to HRD on the First Equipment and/or Second Equipment.

6.    David Connery
- 655 Winding Brook Drive Glastonbury, CT 06033
- Mr. Connery was a service technician with IKON during the time period when HRD leased the First Equipment and Second Equipment. Mr. Connery was involved with servicing this equipment for HRD. He may be called to testify about the service that IKON provided to HRD on the First Equipment and/or Second Equipment.

7.    Anthony Maturo
- 655 Winding Brook Drive Glastonbury, CT 06033
- Mr. Maturo is a Director of Financial Operations for IKON. Mr. Maturo may be called to testify about the terms of the First Lease or Second Lease, IKON's leasing procedures, general financial information, or other company information or procedures.

8.    A representative from Danka, Inc.

- IKON expects that a representative for Danka, Inc. will testify about HRD's use of the Second Equipment from May 2004 – present.

## 11.    **PROPOSED EXHIBITS**

The plaintiff's proposed exhibit list is attached at Tab A.

The defendant's proposed exhibit list is attached at Tab B.

**12.    AGREED UPON PROPOSED JURY INSTRUCTIONS**

The parties have begun but not completed the process of seeking to agree to proposed

jury instructions. The parties represent that said process will be completed prior to October 26,

2007 the date of the scheduled final pretrial conference.

PLAINTIFF,                                              DEFENDANT,
HUMAN RESOURCE DEVELOPMENT                               IKON OFFICE SOLUTIONS, INC.
PRESS INC.


By:   /S/ David J. Noonan                                By    /S/ Brett J. Boskiewicz
      David J. Noonan, Esq. (BBO#373260)                      Bradford S. Babbitt (BBO# 566390)
      e-mail: david.noonan@verizon.net                        e-mail: bbabbitt@rc.com
      Suite 1                                                 Brett J. Boskiewicz (BBO# 656545)
      228 Triangle Street                                     e-mail: bboskiewicz@rc.com
      Amherst, MA  01002                                      Robinson & Cole LLP
      Tel. No.:  413-549-5491                                 280 Trumbull Street
      Fax. No.:  413-549-5156                                 Hartford, CT  06103-3597
                                                              Tel. No.: (860) 275-8200
                                                              Fax No.: (860) 275-8299


October 19, 2007

**EXHIBIT A**

# PLAINTIFF'S EXHIBIT LIST

**Introduction Objected To**
**(Yes or No)**

1. IKON/HRD contract
   Dated 5-28-98

2. IKON/HRD contract (4 pages)
   Dated 6- 19-00

3. IKON/HRD "Product Schedule"
   Amendment dated 7-25-00 (3 pages)

4. Executive Financial Summary
   Dated 11-07-03

5. HRD Demand for Relief
   Dated 9-20-04

6. Lease Approval Form
   Dated 5-26-98, Bates # 00007

7. Pre-approved Credit Application & Payoff Form
   Dated 5-12-98, Bates # 00008

8. IOS Capital Payment History
   Dated 2-14-00, Bates # 00009

9. Lease Approval Form
   Dated 7-31-00, Bates # 00017

10. IKON Equipment Trade In Form
    Dated 6-19-00, Bates # 00019

**Introduction Objected To**
**(Yes or No)**

11. Executive Summary
    Dated 6-14-00, Bates # 00066, 67

12. Accounting Value Statement
    Dated 7-7-00, Bates # 00231

13. Addendum-A2 to IOS Lease #00787
    Marked "Confidential," Bates # 00239

14. Payoff Forms (4),
    Bates # 00 366, 368, 370, & 372

15. E-Mail from Kate Byers
    Dated 6-16-00, Bates # 00199

16. E-Mail from Douglas Thornton,
    Bates # 00213

17. Lease Approval Form
    Dated 5-26-98, Bates # 00074

18. Payoff Forms (5),
    Bates # 00 407, 408, 409, 410,411

19. Payoff Forms (6),
    Bates # 00 400, 401, 402, 403,404,405

20. Service & Maintenance Invoices (4),
    Bates # unknown

21. HRD Financial Summary,
    Bates #00121

2

**Introduction Objected To**
**(Yes or No)**

22. HRD Financial Summary,
    Bates #00238

23. E-Mail from Douglas Thornton
    Dated 5-5-00, Bates #00216

24. E-Mail from Mike Fusaro
    Dated 11-6-03, Bates # 00267, 00268

25. E-Mail from Kate Byers
    Dated 6-12-00, Bates # 00197, 198

26. Copy Management Coversheet,
    Bates # 00122

27. E-Mail from Jeff Snyder
    Dated 5-22-00, Bates # 00218

28. E-Mail from Mike Fusaro
    Dated 10-30-03, Bates #00267

29. HRD Summary of Employee Hours
    & Dollar Damages Incurred

30. E-Mail from Douglas Thornton
    Dated 5-5-00, Bates #00214

31. 31. E-Mail from Kate Byers
    Dated 6-16-00, Bates # 00200 or 00201

32. Deposition Transcripts of Depositions of Jeffrey Snyder,
    Glen Robbins, Anthony Maturo & Daniel G. Feldman
    and All Exhibits Thereto

33. Invoices of HRD Counsel

3

**Plaintiff Reserves the Right to Introduce Additional Documents for Rebuttal Purposes which are not listed above.**

**EXHIBIT B**

## **IKON Office Solutions, Inc.'s Proposed Exhibit List**

A.     The First Agreement

B.     The Second Agreement

C.     Accounting Value Statement (IOS 00231)

D.     Executive Summary (IOS 00066-68)

E.     Site History – HRD (IOS 00056-60)

F.     Emails between HRD and IKON  (IOS 00100-101)

G.     Emails between HRD and IKON  (IOS 00097-98)

H.     Email from HRD to IKON (IOS 00096)

I.     Equipment Sales Lead  (IOS 00143)


IKON may also use any exhibits identified by the plaintiff on its proposed exhibit list and/or any exhibits that the plaintiff introduces at trial.