**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| HUMAN RESOURCE DEVELOPMENT PRESS, INC., |
| Plaintiff, |
| v. |
| IKON OFFICE SOLUTIONS, INC., & IOS CAPITAL, INC., d/b/a/ IKON FINANCIAL SERVICES, |
| Defendants. |

3:05-CV-30068-KPN

**OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE
EVIDENCE OF PLAINTIFF'S DAMAGES**

**I.    Introduction**

The Plaintiff, Human Resource Development Press, Inc. ("HRD") hereby

opposes the Defendant, IKON Office Solutions, Inc's ("IKON") Motion to Preclude

Evidence of Plaintiff's Damages ("Motion").  IKON claims that the HRD failed to

disclose a computation of damages pursuant to Federal Rule of Civil Procedure

26(a)(1)(C) and that this failure warrants sanctions under 37(c)(1) precluding

HRD from introducing evidence as to any of its damages.   HRD admits that it did

not make the mandatory initial disclosures related to damages, but contends that

evidence relating to damages should not be precluded on the following grounds:

    1)    non-disclosure of damages related to HRD's claims that the dollars
        due pursuant to the First Agreement was fraudulently hidden and
        "rolled up" into the Second Agreement is harmless because IKON

1

was, for more than a two year period of time, on notice that such damages were being sought;

2)     non-disclosure is harmless because IKON did not conduct *any* discovery in this case and it is highly unlikely that it would have conducted discovery had HRD fully complied with Fed. R. Civ. P. 26(a);

3)     non-disclosure is harmless because 30 of the 33 proposed exhibits upon which HRD intends to rely upon at trial are documents that were prepared by IKON and have been in IKON's possession for several years and provided to HRD through discovery;

4)     if preclusion of evidence is deemed warranted only those damages theories that were not plead in the HRD's complaint, as amended, and exhaustively referenced in pleadings, discussed in oral argument and in settlement conferences should be precluded; and

5)     if non-disclosure is not deemed "harmless," the totality of the circumstances calls for the imposition of a sanction less drastic than complete preclusion of all of the HRD's damages claims.

## II.    <u>Background</u>

- On September 20, 2005, during oral argument on Defendant's Motion to Dismiss, Plaintiff detailed the fact that Plaintiff's Fraud Count (II) sought damages for the dollar amount that was due and owing under the First Agreement which was fraudulently "rolled into" the dollar amounts due under the Second Agreement. During the hearing it is discussed and thereafter disclosed that the Plaintiff will seek to amend its complaint in order to clarify, inter alia, this portion of its claims.

- On November 28, 2005, the Plaintiff files its amended complaint which contains detailed mathematical calculations of the Plaintiff's fraud claim, the specifics of which is set forth below.

- The Court 's Memorandum of Opinion dated January 12, 2006 discusses on page 4 that the Plaintiff claims it would have no further payment obligations for the First Equipment.

- The amended complaint filed by HRD, which is incorporated by reference, alleged several paragraphs that provided specific disclosure to IKON of the dollar amounts of damages which HRD sought. These paragraphs included, *inter alia*,:

11.   Pursuant to the First Agreement, HRD PRESS was obligated to pay FOUR THOUSAND TWO HUNDRED SIXTY-EIGHT DOLLARS ($4,268.00) per month for the first thirty-six (36) months of the contract term and FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) for the remaining twenty-four (24) months of the contract term (jointly the "First Equipment Monthly Charges"); and

20.   Prior to HRD PRESS entering into the Second Agreement, it still owed eleven (11) monthly payments of FOUR THOUSAND TWO HUNDRED SIXTYEIGHT DOLLARS ($4,268.00) and twenty-four (24) monthly payments of FIVE THOUSAND EIGHT HUNDRED TWENTY-FIVE DOLLARS ($5,825.00) under the First Agreement; and

21.   Pursuant to the Second Agreement, HRD PRESS was obligated to pay EIGHT THOUSAND NINE HUNDRED FORTY-NINE DOLLARS ($8,949.00) for each of the first thirty-six (36) months of the contract term and TWELVE THOUSAND ONE HUNDRED SIXTEEN DOLLARS ($12,116.00) for each of the remaining thirty-six (36) months of the contract term ("Second Equipment Monthly Charges"); and

41.   IKON has "rolled" into the Second Equipment Monthly Charges thirty-six (36) months of payments at ONE THOUSAND SEVEN HUNDRED SEVENTY TWO DOLLARS and 88/100 ($1,772.88) per

month plus thirty-six (36) months of payments at TWO THOUSAND
SEVEN HUNDRED FORTY NINE DOLLARS and 12/100
($2,749.12) per month for a total of ONE HUNDRED SIXTY-TWO
THOUSAND SEVEN HUNDRED AND SIXTY DOLLARS and
32/100 ($162,760.32) in unjustified payments for the alleged
balance due for the First Equipment; and

The bold print heading for Count II is entitled

## (FRAUD AND MISREPRESENTATION) (AS TO FIRST AGREEMENT PAYMENT OBLIGATIONS )

- The parties have during at least three settlement conferences in 2005, 2006 and 2007 discussed the very damages that were pled in paragraphs 11, 20, 21, 41 above as well as the amounts of the attorney's fees incurred by HRD. (See, Affidavit of David J. Noonan, Esq. In Support of Opposition to Defendant's Motion In Limine To Preclude Evidence of Plaintiff's Damages, "Noonan Affidavit")

- HRD served upon the Defendant "Initial Disclosures of the Plaintiff Human Resource Development Press, Inc. Pursuant to Federal Rule of Civil Procedure 26(a)" on February 22, 2006. See IKON Exhibit A. HRD inadvertently neglected to include computation of its damages as required by Fed. R. Civ. P. 26(a)(1)(C).  (See, Noonan Affidavit, explaining how the error was inadvert).

- HRD filed discovery requests and received discovery from IKON without objection from IKON notwithstanding Local Rules of the United States District Court for the District of Massachusetts 26.2 requiring

compliance with Fed. R. Civ. P. 26(a)(1) before a party may commence discovery.

- IKON filed a Motion for Summary Judgment against HRD on July 7, 2007 and made no mention of non-disclosure under 26(a)(1)(C) in its pleadings related thereto.

- On October 10, 2007, in the course of providing initial disclosures on behalf of HRD in a related case GE Capital Tech Information v. HRD, the attorney for HRD realized that he had not provided initial disclosures to IKON relating to initial disclosures of damages pursuant to Fed. R. Civ. P. 26(a)(1)(C) and files Supplemental Disclosures and emails them to attorney for IKON.  (See, Noonan Affidavit).

- On October 16, 2007, Noonan receives Motion in Limine from IKON which contains email dated June 29, 2007 as IKON Exhibit C.

- At no time prior to October 10, 2007 did Noonan realize that he had not fully complied with the requirements of 26(a)(1)(C).  (See, Noonan Affidavit).

III.    **Discussion**

   a.    **The Non-Disclosure of Computation of Damages in this Case is Harmless**

Federal Rule of Civil Procedure 26(a)(1)(C) imposes a duty upon a party to provide, as an initial disclosure:

   a computation of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or

5

other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

Pursuant to Fed. R. Civ. P. 37(c)(1), a party that "without substantial justification fails to disclose information required by Rule 26(a)…is not, *unless such failure is harmless*, permitted to use evidence at a trial…any information not so disclosed." (emphasis added.)  However, "in addition to or in lieu of" the sanction of preclusion, the court may impose "other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1).

I.    *Non-Disclosure is Harmless as to Damages Claims Plead and Discussed in Settlement Conferences*

As IKON correctly notes in its brief, the initial disclosure requirements are designed to "avoid ambush at trial."  Defendant's Motion in Limine to Preclude Evidence of Plaintiff's Damages p. 8 *citing Ortiz-Lopez v. Societal Espanola de Auriol Mutual y Beneficial de Puerto Rico*, 248 F.3d 29,35 (1st Cir. 2001).  In this case, IKON was on notice from the date that the complaint was filed that HRD was seeking damages for "($162,760.32) in unjustified payments for the alleged balance due for the First Equipment";  Plaintiff's Complaint at ¶ 41.  This is an issue that has been pleaded and discussed exhaustively over the course of the last two years.  (See, Noonan Affidavit ).  Discovery has run its course and both parties have briefed and argued IKON's motion for summary judgment. It is not until the eve of trial that IKON seeks to preclude evidence of HRD's damages.

For those damages claims that were plead and argued on more than one occasion and discussed in settlement conferences and written settlement offers,

there is no basis for precluding evidence.  The 1993 Advisory Committee notes

to Feed R. Civ. P 37(c):

> Limiting the automatic sanction to violations "without substantial
> justification," coupled with the exception for violations that are "harmless,"
> is needed to avoid unduly harsh penalties in a variety of situations: *e.g.,*
> the inadvertent omission from a Rule 26(a)(1)(A) *disclosure of the name of
> a potential witness known to all parties*; the failure to list as a trial witness
> a person so listed by another party; or the lack of knowledge of a pro se
> litigant of the requirement to make disclosures. (emphasis added.)[1]

The Committee Notes plainly discourage the preclusion of evidence when the

opposing party or parties knew of such evidence and would not be taken by

surprise through its admission.  *See also, Lund v Citizens Financial Group, Inc.*

F.Supp.2d 1999 WL 814341 D.N.H. (finding that inadvertent disclosure of

documents known to all parties was harmless.); 8A C. Wright, A. Miller & R.

Marcus, *Federal Practice and Procedure* § 2289.1 (2d ed.1994). This stance is

keeping within the overall policy in the First Circuit to deter "ambush at trial."

*Ortiz-Lopez v. Societal Espanola de Auriol Mutual y Beneficial y de Puerto Rico*,

248 F.3d 29,35 (1st Cir. 2001).  In this case, there is ample evidence to show that

since September 20th, 2005 IKON has been well aware of HRD's damage

theories concerning its fraud claim and its Chapter 93A claim.

Cases relied upon by IKON in which the court precluded evidence of

damages involved parties making "11th hour claims" in which they fail to make

previous disclosure that certain damages would be sought at trial.  *See, Nat'l Fire*

*Prot. Asps' v. Int'l Code Council Inc.*, 2006 U.S. Dist. LEXIS 14360, at *96

---

[1] Note that the Committee Notes make no specific reference to Rule 26(a)(1)(C) ("computation of damages") in this regard, but the vast majority of instances in which sanctions are imposed deal with the non-disclosure of witnesses.

(Dumas. Mar. 29, 2006) (plaintiff failed to disclose his theory of "corrective advertising damages" at any time before the close of discovery and court barred this "11th hour claim.");  *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.,* F.Supp.2d 2005 WL 977850 at * 1 (S.D.N.Y. April 28, 2005) (noting that "plaintiff's complaint did not put defendant on notice of this currency conversion claim.");  *Big Lots Stores, Inc. v. Luv N' Care*, 2007 WL 2668136, at *3-4 (S.D. Ohio Sep. 6, 2007) (holding that the court would entertain only those damages that had been "properly plead and/or disclosed to the other party during the discovery phase."); *Silong v. U.S.,*  2007 WL 2580543 at * 4, *6 (E.D. Cal. Sept. 5, 2007) (precluding evidence of emotional distress damages which had neither been plead, disclosed pursuant to Rule 26(a), or disclosed in discovery.); *Classic Cheesecake Co., Inc. v. JP Morgan Chase Bank,* 2007 WL 2897747 at * 1 (S.D. Ind. March 19, 2007) (precluding evidence of emotional distress where no compliance with Rule 26(a), no disclosure in response to specific discovery requests, and the only reference to emotional distress was in the party's summary judgment affidavit as against a party that had been dismissed from the action.)  Other cases cited by IKON involve parties who fail to make initial disclosures and then flatly refuse to comply with discovery requests related to those disclosures. *See, Multimatic, Inc. v. Faurecia Interior Systems, USA, Inc.,* 2007 WL 627874 at * 7 (E.D. Mich. Feb. 26, 2007) (precluding damages where party failed to "calculate its damages in its initial disclosures or in response to Multimatic's interrogatory.)

These cases are unlike the one at issue here where IKON has known for more than two years that HRD was seeking damages for the dollar obligations pursuant to the First Agreement which were "rolled into" the Second Agreement without HRD's knowledge or consent. In fact, no authority cited by IKON supports preclusion when the plaintiff's damages theories were properly plead and/or the plaintiff complied with all discovery requests.  Unlike the cases cited by IKON this is not a case where preclusion is appropriate under Rule 37(c)(1).  IKON had ample notice that HRD was seeking damages specifically for that dollar amount of the obligations pursuant to the First Agreement which was "rolled into" the Second Agreement without HRD's knowledge or consent. There is no "ambush" in these damages claims, and for that reason, the Defendant's Motion in Limine should be denied.

    *ii.*    *Non-Disclosure is Harmless Because IKON did not Conduct Discovery in this Case*

HRD made specific allegations in its amended complaint that HRD had suffered damages due to the fraud of the Defendant. The Plaintiff could not have been more specific when it stated in ¶ 41:

> IKON has "rolled" into the Second Equipment Monthly Charges thirty-six (36) months of payments at ONE THOUSAND SEVEN HUNDRED SEVENTY TWO DOLLARS and 88/100 ($1,772.88) per month plus thirty-six (36) months of payments at TWO THOUSAND SEVEN HUNDRED FORTY NINE DOLLARS and 12/100 ($2,749.12) per month for a total of ONE HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED AND SIXTY DOLLARS and 32/100 ($162,760.32) in unjustified payments for the alleged balance due for the First Equipment; and

HRD filed initial disclosures inadvertently neglecting to include the computation of damages provision.  (See, Noonan Affidavit).  Notwithstanding the information that was supplied, IKON neither submitted requests for production of documents, drafted requests for admissions and did not serve a single interrogatory. In the meantime, the parties have had several settlement conferences, HRD has submitted written settlement offers regarding the above described damages.

IKON filed its Motion for Summary Judgment on July 10, 2007 and made no written or oral argument concerning any deficiencies in HRD's damage disclosures but rather IKON argued issues related to the statutory limitations, HRD's reliance upon the fraudulent misrepresentations and issues related to HRD's UCC claims. IKON's claim, on the eve of trial, that it has been prejudiced by HRD's non-disclosure of damages computations related to its fraud claim in Chapter 93A claim for that dollar amount of the obligations pursuant to the First Agreement which was "rolled into" the Second Agreement without HRD's knowledge or consent is disingenuous.

It is clear that even if HRD initially complied with the requirements of 26(a)(1)(C) relating to computation of damages for those claims specifically referred to in its amended complaint, IKON would be in precisely the same position that it is today. IKON failed to conduct any discovery in this case and it is far-fetched to imagine that it would have done so if only HRD had computed its damages under Rule 26(a)(1)(3). IKON has never previously raised the claim

that it is somehow prejudiced because it does not understand how to compute HRD's damage claims.

While IKON's argument is admittedly stronger for those damages claims which were first referred to in HRD's Supplemental Disclosures, it has no foundation concerning those claims specifically referred to in the Plaintiff's amended complaint and which have been substantially briefed and argued an open court as well as discussed both orally and in writing in settlement conferences.

Secondly, IKON has not been harmed by its inability to conduct discovery on HRD's damages claims referred to in its amended complaint because, with the exception of two documents[2], all of the Exhibits that HRD intends to use at trial are documents drafted by IKON, possessed by IKON for more than 5 years and acquired from IKON in discovery. IKON has been in possession of each of these documents for at least twice as long a period of time as HRD has been in possession of them.  Therefore, IKON's inability to conduct discovery relative to the damages claims referred to in the plaintiff's complaint have not resulted in an "ambush at trial" and evidence related to these damages should not be precluded for that reason. *See, Ortiz-Lopez v. Sociedad Espanola de Auxilo Mutuo y Beneficia de Puerto Rico*, 248 F.3d 29,35 (1st Cir. 2001).

---

[2] Said exhibits are, HRD's invoices for legal fees,  the amount of which has been frequently discussed both orally and in writing and a "chalk" summary of hours which certain HRD employees have spent discovering and prosecuting its fraud claim.

**b.    If the Court Finds that Sanctions under Rule 37(c)(1) are Appropriate, it Should Impose Sanctions Less Drastic than Preclusion of <u>All</u> of HRD's Damages Claims.**

Federal Rule of Civil Procedure 37(c)(1) plainly permits the Court to award sanctions in the form of precluding a party from introducing evidence on matters it failed to disclose pursuant to Rule 26(a).  Notwithstanding, "the rule somewhat tempers this mandate by permitting courts to excuse failures to disclose to some degree (i.e. to impose other sanctions) "in lieu of this sanction."  *Klonoski v. Mahlab*, 156 F.3d 255 (1st Cir. 1998); Fed. R. Civ. P. 37(c)(1).

> Rule 37 is flexible.  The court is directed to make such orders "as are just" and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response.  The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective and plural. The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.

8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2284 p. 612 (2d ed.1994); *See also, Ortiz-Lopez v. Sociedad Espanola de Auxilo Mutuo y Beneficia de Puerto Rico*, 248 F.3d 29,3 (1st Cir. 2001) (noting that "[d]istrict courts have wide latitude to craft sanctions that best suit the situation at hand.")

Rule 37(c)(1) "authorizes" the full panoply of Rule 37(b)(2) sanctions short of contempt…although it seems that the Advisory Committee anticipated that these would usually stop short of litigation-ending sanctions."  *Id.* at § 2289.1 p. 706.  Courts appear to consider the degree of intentionality in crafting sanctions for a non-disclosure under Rule 26(a).  *See, e.g. Lund v Citizens Financial Group, Inc.* F.Supp.2d 1999 WL 814341 D.N.H. (finding that inadvertent disclosure of documents known to all parties was harmless.);  *Umberhower v. Copart Inc.* D. Kan 2004, 222 F.R.D. 672 (holding that preclusion not warranted

when, *inter alia*, "failure to disclose was the result of inadvertence."); *Lintz v. American Gen. Finance, Inc.*, 1999 WL 619045 at *6 (D.Kan. Aug. 2, 1999). *But see, Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2nd Cir. 2006) (holding that court needs no showing of willfulness to impose sanction.)  The 1993 Advisory Notes to Rule 37(c)(1) similarly show that the degree of intentionality is taken into consideration when implementing sanctions ("inadvertent omission from a 26(a)(1) disclosure of the name of a potential witness known to both parties" not grounds for preclusion.)  Here, the attorney for HRD did not intentionally flout the requirements of Rule 26(a) in neglecting to include the computation of damages. (*See*, Noonan Affidavit). The lack of willfulness should be taken into account if the Court is to craft a sanction in this case.

It also bears noting that the remedy sought by IKON in its Motion in Limine would effectively terminate HRD's case because it would be unable to introduce evidence as to *any* of its damages it incurred from IKON's fraud and misrepresentation.  Although Rule 37(c)(1) authorizes the full panoply of Rule 37(b)(2) sanctions "it seems that the Advisory Committee anticipated that these would usually stop short of litigation-ending sanctions."  8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2289.1 p. 706 (2d ed.1994). Moreover, as the Court noted in Seltzer v. IC Optics Ltd., 339 F.Supp.2d 601 (D.C.N.J. 2004), "exclusion is an extreme sanction not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order." (Emphasis added)

The District of Massachusetts has previously found that default judgment and dismissal of claims for non-disclosure pursuant to Rule 26(a) was "too severe a sanction in all the circumstances."  *See, Biltrite Corp. v. World Road Markings, Inc.,* 202 F.R.D. 359 (D.Mass., 2001).  In that case, the court permitted sanctions short of preclusion based on the defendant's "false and misleading responses" to Rule 26(a)(1) disclosures.  *Id.  But see, Nat'l Fire Prot. Ass'n v. Int'l Code Council, Inc.,* 2006 U.S. Dist. LEXIS 14360 at * 96 (D.Mass. Mar. 29, 2006) ("NFPA") (dismissing evidence of "corrective advertising expenses"  based on plaintiff's failure to disclose damages in its initial disclosures, discovery responses, or 30(b)(6) witness testimony.)[3]

If the Court is to award sanctions, it should take into consideration the Plaintiff's lack of willfullness and the total lack of prejudice to IKON with respect to knowing the damages relating to HRD's long-standing, primary and frequently disclosed fraud and Chapter 93A claims. HRD submitted new theories of damages for the first time on October 10, 2007.  These theories included:

1)    Lost profits on lost sales due to Plaintiff's expenditures of dollars for obligations pursuant to the First Agreement; and

2)    The  dollar value of lost time spent by the Plaintiff's Officers and Directors identifying and thereafter prosecuting  the fraud claims set forth in the Plaintiff's  amended complaint, and

---

[3] NFPA is plainly distinguishable from the case at hand where IKON seeks dismissal of ALL evidence of damages based on Rule 26(a) alone.

3)      Legal fees incurred and to be incurred in defending GE Capital's

claims and prosecuting the Plaintiff's counterclaims in Civil Action

No. 07-30152.

Supplemental Disclosures of the Plaintiff Human Resource Development Press,
Inc. Pursuant to Federal Rule of Civil Procedure 26(a).

There is a stronger case to be made for precluding the introduction of

evidence of damages related to these new theories.  However, the damages

claims specifically referred to in the Plaintiff's amended complaint and which

were briefed, frequently argued in open court and discussed in settlement

discussions should not be precluded.  IKON has long been on notice of these

claims for damages, had an opportunity to conduct discovery on those issues,

and had an opportunity to address those issues in summary judgment. Since the

amount of the damages sought were precisely disclosed in HRD's amended

complaint and frequently argued before this Court, there would be no harm to

IKON in HRD retaining those claims notwithstanding HRD's non-disclosure of the

computation of the same damages in a separate pleading pursuant to Rule

26(a)(1)(C). HRD respectfully requests that this Court find that this non-

disclosure was harmless or alternatively if the Court believes IKON did not have

knowledge of the dollar amount of damages HRD sought through its fraud and

Chapter 93A claims grant IKON an additional short period of time to conduct

discovery with respect to the same.

**IV.**    **Conclusion**

Wherefore the Plaintiff, Human Resource Development Press, Inc.,

requests that the Court deny the Defendant, IKON Office Solutions, Inc.'s Motion

in Limine to Preclude Evidence of Plaintiff's Damages.


THE PLAINTIFF
Human Resource Development Press, Inc.
By Its Counsel


/s/ David J. Noonan, Esq.
228 Triangle Street
Amherst, MA  01002
Tel: 413-549-5491
Fax: 413-549-5156
david.noonan@verizon.net
BBO# 373260


**CERTIFICATE OF SERVICE**

I, DAVID J. NOONAN, ESQ., hereby certify that on the 22 day of October, 2007 a

copy of the herein PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION IN

LIMINE TO PRECLUDE EVIDENCE OF PLAINTIFF'S DAMAGES was served by

electronic mail notice upon the counsel and/or parties listed below or served by

first class, regular mail, postage prepaid to all parties listed as receiving service

by mail.

The following is the list of attorneys who are currently on the list to receive e-mail
notices and service for this case.

IKON Counsel

- **Bradford S. Babbitt**          **Brett Boskiewicz**
  bbabbitt@rc.com              bboskiewicz@rc.com

/s/ David J. Noonan, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

HUMAN RESOURCE DEVELOPMENT
PRESS, INC.,

       Plaintiff,

v.                                                          3:05-CV-30068-KPN

IKON OFFICE SOLUTIONS, INC., &
IOS CAPITAL, INC., d/b/a/ IKON
FINANCIAL SERVICES,

       Defendants.

---

## AFFIDAVIT OF DAVID J. NOONAN, ESQ. IN SUPPORT OF OPPOSTION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OF PLAINTIFF'S DAMAGES

The undersigned deposes and says:

1.    My name is David J. Noonan, Esq. I am duly licensed to practice law in, inter alia, the Commonwealth of Massachusetts and I conduct the practice of law from 228 Triangle St., Amherst, Massachusetts.  I serve as counsel to the Plaintiff, Human Resource Development Press, Inc. ("HRD" and/or "Plaintiff") in the herein civil action and make this affidavit in support of the Plaintiff's Opposition to Defendant's Motion In Limine To Preclude Evidence of Plaintiff's Damages.

2.      During the school vacation in February 2006, my family and I visited my in-laws in Naples, Florida. I had started but did not complete the drafting of the Plaintiff's Initial Disclosures prior to leaving for vacation. I had verbally represented to counsel for the Defendant that said Initial Disclosures would be served by a date prior to my return from vacation. While I brought a paper copy of the draft Initial Disclosures with me in my briefcase, I did not bring with me on vacation my HRD files, which at that point in time consisted of two large expandable files. As a result the completion of the drafting of the Initial Disclosures was done without the benefit of having access to my HRD files.

3.      Said Initial Disclosures were drafted and e-mailed from a public library in Naples, Florida. Due to the fact I did not have the benefit of my HRD files, the Initial Disclosures did not contain a computation or explanation of Plaintiff's damages as I did not have access to the specific numbers concerning the payments due under the First Agreement and/or the Second Agreement as the same related to the Plaintiff's damage claims. It was my intention to supplement the Initial Disclosures upon my return from vacation.

4.      Upon my return from vacation I did not remember that the said Initial Disclosures did not contain a computation of damages and needed to be further supplemented.  I did not remember the need to supplement said Initial Disclosures until on or about October 10, 2007 when, having been prompted by a notice of the Court in the case of GE Capital Tech Information v. Human

2

Resource Development Press, Inc., Civil Action No. 07-30152 to make initial disclosures pursuant to Rule 26 in that civil action, I opened my electronic file containing the Plaintiff's initial disclosures dated February 22, 2006, and discovered that there was no section relating to damage claims. At that point in time I prepared and served upon counsel for the Defendant the Supplemental Disclosures of the Plaintiff pursuant to Rule 26 (a), ("Supplemental Disclosure").

5.     In June 2007, when counsel for the Defendant requested a copy of the previously served Plaintiff's Initial Disclosures, I simply attached to my e-mail responding to said request, the electronic file containing the Plaintiff's Initial Disclosures dated February 22, 2006. I did not at that time open and review the content of the attached file but merely relied upon the title to said electronic file and attached the same.

6.     In responding to counsel for the Defendant's e-mail dated June 29, 2007, I focused solely on what appeared to be an accusation that the Initial Disclosures had not been previously served upon counsel for the Defendant. Other than the fact that I responded to said e-mail on July 3 and had a holiday and immediately thereafter began a three day tour of various colleges with my daughter, I have no justification for, at that point in time, not responding to June 29, 2007 request for supplementation.

3

7.    At no time did I intend to "ambush" the Defendant by intentionally failing to disclose information concerning the Plaintiff's damages. In addition to the detailed references of said damages contained in the Plaintiff's numerous pleadings (for example see, ¶ 11, 20, 21, & 41 Plaintiff's Complaint, as amended), due to my numerous attempts to engage the Defendant in meaningful settlement discussions I have frequently referenced the Plaintiff's internal mathematical calculation of its damages concerning the amount of the dollars due under the First Agreement, which the Plaintiff alleges was wrongfully "rolled into" the Second Agreement. I have also, orally and in writing, periodically provided counsel for the Defendant with the then current amount of legal fees incurred by the Plaintiff, that the Plaintiff would seek pursuant to its Chapter 93A claim. The most written detailed written disclosure of the amount of said legal fees occurred on April 4, 2007 as part of a written settlement demand.

8.    Prior to filing the Supplemental Disclosure, the only mathematical calculations which have not been referenced in pleadings and frequently discussed with counsel for the Defendant are the Plaintiffs "lost profits on lost sales" and the dollar value of lost time spent by the Plaintiff's employees in discovering and prosecuting the Plaintiff's fraud claim.

Signed under the pains and penalties of perjury this the 22nd day of October, 2007.

David J. Noonan, Esq.